## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

---

**Sally Walsh,**

                Plaintiff,

      v.

**The Partnerships and**
**Unincorporated Association Identified on**
**Schedule "A"**

                Defendants.

Case No. 1:26-cv-06675

---

### MAGIC MATRIX REPLY IN SUPPORT OF ITS MOTION TO DISMISS

---

Dated: August 7, 2026

           Michael T. Griggs
           BOYLE FREDRICKSON S.C.
           840 N. Plankinton Ave.
           Milwaukee, WI  53203
           mtg@boylefred.com

           ***Attorney for Defendant 12***

## I. Introduction

The entirety of Plaintiff's jurisdictional case against Magic Matrix rests on a single test purchase orchestrated by Plaintiff's own agent. Under controlling Seventh Circuit and Supreme Court authority, a single test purchase is legally insufficient to confer specific personal jurisdiction over a non-resident defendant. Plaintiff's fallback arguments are equally insufficient. Rule 4(k)(2) is not an independent jurisdictional hook available to a plaintiff who has failed to demonstrate sufficient minimum contacts with the United States, and Plaintiff's joinder argument ignores the mandatory severance requirements that govern multi-defendant copyright actions. Magic Matrix's motion to dismiss should be granted.

## II. This Court lacks specific personal jurisdiction over Defendant

To establish specific personal jurisdiction over Magic Matrix, Plaintiff bears the burden of demonstrating that (1) Magic Matrix purposefully directed activities toward conducting business in Illinois, (2) Plaintiff's injury arises out of or relates to Magic Matrix's forum-related activities, and (3) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *See Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). Plaintiff has satisfied none of these requirements.

### A. Plaintiff bears the burden and Magic Matrix is not required to submit evidence or affidavits

Plaintiff mischaracterizes the law, implying that Magic Matrix is somehow required to submit evidence in support of its motion to dismiss. On the contrary, "once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Indeed, the Court required Plaintiff to submit evidence supporting her claim of personal jurisdiction, and Plaintiff

1

responded by submitting evidence of a single test purchase conducted by "an investigator acting at [Plaintiff's] direction." Vogt Decl. (Doc. 28-1), pg. 2, ¶ 4, which is the only evidence upon which Plaintiff relies for purposes of specific personal jurisdiction. As discussed below, a single test purchase orchestrated by Plaintiff cannot establish personal jurisdiction under controlling U.S. Supreme Court law.

**B.      Magic Matrix did not purposefully direct activities toward conducting business in Illinois**

A single, Plaintiff-orchestrated test purchase cannot establish purposefully directed activities. This single-transaction record is legally insufficient to establish that Magic Matrix purposefully availed itself of the Illinois market. The Supreme Court's decision in *Walden v. Fiore* is dispositive. The Supreme Court held unanimously that "the plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore,* 571 U.S. 277, 285 (2014). Due process requires that specific jurisdiction be based on contacts "that the *defendant himself creates* with the forum State," not on the plaintiff's decision to send agents there to purchase products. *Id*. When Plaintiff's agents ordered the Accused Product into Illinois for the specific purpose of creating jurisdictional contacts, those transactions were not the product of Magic Matrix's own purposeful direction of activity at Illinois. They were the product of Plaintiff's litigation strategy. Under *Walden*, these manufactured transactions cannot supply the constitutionally required connection between Magic Matrix and the forum.

Illinois district courts agree. In *Ouyeinc Ltd. v. Alucy*, the court recognized expressly that "[w]hen the court ruled on the original motion, plaintiff stated that the only sale to Illinois was made to plaintiff's investigator. Such a sale on its own is insufficient for purposes of personal jurisdiction." *Ouyeinc Ltd. v. Alucy*, 2021 WL 2633317, at *4 (N.D. Ill., 2021). The court further noted that "courts have repeatedly affirmed that a plaintiff cannot manufacture personal

jurisdiction through their own conduct." *Id., see also Haggerty Enterprises, Inc. v. Lipan Indus. Co., Ltd.,* 2001 WL 968592, at *4 (N.D. Ill. 2001) (establishing that jurisdiction cannot be established through plaintiff-orchestrated purchases and quoting *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County,* 480 U.S. 102, 112 (1987), "Placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State.").

Even if the single Illinois sale identified by Plaintiff was not an orchestrated test purchase, one sale, standing alone, does not automatically confer jurisdiction. The Seventh Circuit has cautioned that a single, isolated transaction may constitute precisely the kind of "random, fortuitous, or attenuated" contact that cannot support specific jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Critically, courts in this Circuit distinguish between out-of-state defendants who are sophisticated commercial operators deliberately targeting the Illinois market and those whose single Illinois transaction was incidental to broader business activity. *See, e.g., NBA Properties, Inc. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022) (finding a single Amazon sale sufficient where the defendant was a commercial operator running a business through an online marketplace platform deliberately offering its products to Illinois consumers).

For example, in *NBA Properties*, the claim was directed to counterfeit NBA merchandise that likely included Chicago Bulls merchandise that would implicitly be directed to Chicago Bulls fans in Illinois. Indeed, the Seventh Circuit found that the defendant "had structured its sales activity in such a manner as to invite orders from Illinois." *Id*., at 625. Here, Plaintiff has offered no evidence that Magic Matrix is a regular, systematic commercial operator targeting

3

Illinois, no evidence of a broader pattern of Illinois sales, no evidence of targeted Illinois advertising, and no evidence of operational infrastructure directed at this forum.

### C. Plaintiff's alleged injury does not arise out of or relate to Defendant's forum-related activities

Even if this Court were to credit the single, plaintiff-orchestrated transaction as constituting some degree of forum contact, Plaintiff must still demonstrate that her alleged injury arises out of or relates to those forum-state contacts. *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. 255, 262 (2017). There must be "an affiliation between the forum and the underlying controversy" and "[a] connection that is not just any defendant contact with the forum state, but one that directly relates to the claims at issue." *Id*.

Plaintiff has not made this showing. Her claims are predicated on nationwide infringement activity. The jurisdictional contacts Plaintiff has identified are an infinitesimally small fraction of Magic Matrix's total business and do not meaningfully connect Magic Matrix's allegedly infringing conduct to Illinois in particular, especially where the only allegedly infringing sale was orchestrated by Plaintiff. Under the Seventh Circuit's reasoning in *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014), mere sales to forum-state customers are insufficient to establish personal jurisdiction absent a specific showing that those Illinois-based contacts have a causal connection to the alleged infringement harm. Plaintiff has made no such showing here.

### D. The exercise of jurisdiction does not comport with traditional notions of fair play and substantial justice

Additionally, exercising jurisdiction over Magic Matrix on this record would offend traditional notions of fair play and substantial justice. Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction

4

would comport with "fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945). Thus, courts in "appropriate case[s]" may evaluate "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. *Burger King Corp.,* 471 U.S. at 477.

Even if a court finds that a single, automated online sale constitutes technical "minimum contacts" with the forum state, the constitutional inquiry does not end there. Under the Due Process Clause, the exercise of personal jurisdiction must also comport with "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 320. Where, as here, a plaintiff hales an out-of-state defendant into a distant forum over a single transaction of a consumer product worth roughly $20 to $30, the assertion of jurisdiction is fundamentally unreasonable and constitutionally impermissible.

The primary concern in any "fair play" analysis is the burden imposed on the defendant. Here, Magic Matrix is being forced to travel to a foreign jurisdiction and expend thousands of dollars in legal fees to defend against a claim centered on a single, $20–$30 t-shirt. The cost of defending this suit in this forum is disproportionate to the economic reality of the transaction by several orders of magnitude. Forcing Magic Matrix to incur substantial litigation expenses over a nominal consumer purchase is the very definition of a "severe burden" that makes defending the suit in Illinois highly unreasonable.

5

While a forum state generally has an interest in protecting its citizens from copyright infringement, that interest is virtually non-existent when the economic impact of the alleged infringement within the state are a single test purchase conducted by Plaintiff. Moreover, Plaintiff is not an Illinois citizen. As shown on her copyright registrations (Doc. 1-1), Walsh is a citizen of Australia. So, this is a lawsuit brought in Illinois by an Australian citizen against a Chinese company. Illinois plainly has no connection to this dispute or the parties involved. The judicial resources of this Court should not be marshaled to resolve a monetary dispute brought by a plaintiff who has no connection to Illinois. The state's interest in regulating commerce and protecting intellectual property is not served by facilitating disproportionate, coercive litigation against isolated, out-of-state actors.

Allowing a plaintiff to establish personal jurisdiction based on a single, low-value transaction would essentially grant copyright holders nationwide, unchecked jurisdiction over any online merchant in the country. Because e-commerce platforms are accessible everywhere, any small seller who ships a single t-shirt to a buyer would be subject to suit in any of the 50 states. This would weaponize the jurisdictional framework, allowing plaintiffs to leverage the threat of exorbitant travel and substantial legal defense fees to force disproportionate settlements in low-value disputes.

In summary, a single, automated transaction for a $20–$30 consumer item orchestrated by Plaintiff does not establish any contact with Illinois. Requiring a foreign company to answer for a single, Plaintiff-orchestrated transaction in Illinois violates any sensible standard of "fair play and substantial justice." Because the constitutional burdens on the defendant heavily outweigh any nominal interest of the plaintiff or the forum state, this Court should decline to exercise personal jurisdiction.

**E.      Rule 4(k)(2) does not supply an independent basis for jurisdiction over Magic Matrix and Plaintiff's reliance on it is misplaced.**

In a single paragraph in its opposition brief, Plaintiff argues that she has somehow established specific personal jurisdiction under Rule 4(k)(2) without any evidence whatsoever. To invoke Rule 4(k)(2), Plaintiff must demonstrate that Defendant purposefully directed its activities toward the United States. Plaintiff's entire jurisdictional evidentiary record rests on the broad, conclusory statement that Defendant maintains "substantial" nationwide contacts via a U.S.-facing storefront. Plaintiff Opposition Brief (Doc. 28), p. 6.

Plaintiff's "evidence" consists entirely of systemic features inherent to third-party e-commerce platforms rather than any deliberate, unilateral targeting of the United States by the Defendant. Operating a globally accessible storefront does not constitute purposeful availment under the Due Process Clause. Indeed, Magic Matrix's website provides the purchaser with the option to present the page in "English" and to pay with "USD," among other language and currency options. *See* Website (Doc. 28-1), pg. 10, Ex. B to Vogt Decl.

Under *Walden v. Fiore*, personal jurisdiction must arise out of contacts that the "defendant *himself*" creates with the forum. *Walden,* 571 U.S. at 284. A foreign seller utilizing a third-party platform cannot control and therefore have purposefully directed the platform's default layout, language, currency, or payment gateways. The fact that a storefront is viewable in English and prices items in USD, while also being viewable in other languages and accepting other currency, simply reflects the global reach of these websites. Making a product *available* to a market is constitutionally distinct from *targeting* a market.

Plaintiff offers the conclusory and unsupported argument that Magic Matrix's "aggregate U.S. contacts" establish specific personal jurisdiction. This argument fails both legally and logically. Under Rule 4(k)(2), the specific jurisdiction inquiry requires that the litigation "arise

out of or relate to" the defendant's contacts with the forum. Plaintiff offers no evidence, and makes no argument, that the unspecified "contacts" have anything to do with the Accused Products that are at issue here.[1] *See Flag Co. v. Maynard*, 376 F. Supp. 2d 849, 854 (N.D. Ill. 2005) ("Under Rule 4(k)(2), plaintiff must show that each defendant had minimum contacts with the United States as a whole, that the cause of action relates to these contacts, and that exercising jurisdiction over them would be reasonable."). Plaintiff cannot aggregate unspecified and unsupported "contacts" with the United States to establish jurisdiction over a specific copyright claim.

Plaintiff cannot shift the burden to Magic Matrix by asking Magic Matrix to identify some other state where it may be subject to jurisdiction. Plaintiff must first establish that Magic Matrix has sufficient minimum contacts with the United States as a whole, and those contacts must relate to this dispute, as Plaintiff has not alleged that Magic Matrix is subject to general personal jurisdiction in the United States. Plaintiff has completely failed to make the requisite showing.

Without evidence that Defendant targeted U.S. consumers through active marketing, local advertising, or a regular, non-isolated course of business specifically directed at the United States, a single automated transaction completed through a third-party intermediary is constitutionally insufficient to support specific personal jurisdiction.

**III.    Plaintiff has improperly joined 24 unrelated and independent defendants in a single action, and this Court should dismiss the claims against Magic Matrix**

Federal Rule of Civil Procedure 20(a)(2) permits joinder of multiple defendants only where: (1) the claims against them arise out of the same transaction, occurrence, or series of

---

[1] Plaintiff does not allege that Defendants are subject to general jurisdiction, rendering sales of non-accused products irrelevant.

transactions or occurrences; and (2) a question of law or fact common to all defendants will arise in the action. Both requirements must be satisfied. Fed. R. Civ. P. 20(a)(2). Although district courts possess substantial discretion in determining whether joinder is appropriate, Rule 20 does not permit unrelated defendants to be grouped together merely because they are alleged to have committed similar acts of infringement. *See UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018). Despite this, Plaintiff relies only upon "similar acts of infringement" to justify joinder of the unrelated defendants in this case. Plaintiff Brief (Doc. 28), pg. 9 ("Joinder is also independently supported by the common questions of law and fact this case presents as to Defendant and all others listed on Schedule A: whether each storefront's products infringe Plaintiff's registered copyrights, whether the copying was willful, and what remedies follow under the Copyright Act."). However, questions of infringement, willfulness, and damages are specific to each defendant – they are not based upon a common set of facts. Moreover, Plaintiff has alleged infringement of three different copyrighted works, only one of which is alleged with respect to Magic Matrix. Thus, Plaintiff is not even bringing the same copyright infringement claim against all defendants.

There is zero evidence in the record showing a shared distribution network among Magic Matrix and the other 23 defendants, any communication or administrative connection among the storefronts, or any overlapping financial accounts or shared business registries. Plaintiff points to the irrelevant fact that Magic Matrix uses different PayPal accounts to process orders. Use of a single PayPal account, or multiple PayPal accounts, does not establish that Magic Matrix has any relationship to any of the other 23 defendants. Indeed, Plaintiff purportedly has PayPal information for all 23 defendants. If any of Magic Matrix's eleven PayPal accounts were

9

connected in any way to any of the other defendants, Plaintiff surely would have presented such evidence.

Plaintiff also points to an image of the Accused Product, arguing that some of the other defendant websites use the same image as well as the same SKU. However, mere use of the same image is not evidence that Magic Matrix and any of the other defendants have any business relationship or any other type of a connection. Anyone can copy an image and SKU from a website and post it to another website. Use of the same image and SKU on a website does not demonstrate coordinated business operations for purposes of joinder. Moreover, merely sourcing the image from the same website does not establish a connection among the defendants. It merely establishes independent connections between the defendants and the supplier of the image. If ten people buy the same ice cream flavor from an ice cream stand, the fact that they bought the same flavor of ice cream does not mean that those people are in any way connected or related to one another. As discussed above, the most critical evidence is lacking – there are no overlapping PayPal accounts.

Without any evidence of concrete, horizontal links, the other 23 storefronts remain independent actors. Joining them in a single action violates Rule 20, prejudices Magic Matrix, and deprives the Court of its required filing fees.[2] Still further, only one of the three copyright registrations are at issue with respect to Magic Matrix. Any infringement claims arising from the other two copyright registrations plainly do not arise from the same transaction or occurrence. In attempting to argue that the instant case serves the interests of judicial economy, Plaintiff attempts to characterize her claims against the defendants as "identical suits." On the contrary,

---

[2] By filing this case as a single action, rather than 24 separate actions, Plaintiff has deprived the Court of $9,315 in filing fees.

the infringement claims involve different, unrelated companies, different products, and different copyrights. Judicial economy is not served by grouping together unrelated defendants to litigate unrelated copyright infringement claims based upon unrelated facts.

Finally, Plaintiff plays a game of semantics, arguing that "dismissal" is not a remedy for misjoinder, where Rule 21 states that the Court may "drop" a party for misjoinder. The Seventh Circuit has recognized that "[t]he remedy for misjoinder of otherwise proper claims is severance or dismissal without prejudice." *UWM Student Ass'n*, 888 F.3d at 863. Thus, dismissal of the complaint without prejudice with respect to Defendant 12 is an available and appropriate remedy.

## IV. Conclusion

For the foregoing reasons, Magic Matrix Technology Co. Ltd., on behalf of Defendant 12 with the aliases "urlininen.com," respectfully requests that the Court dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. In the alternative, because Plaintiff has improperly joined Magic Matrix with 23 other, unrelated defendants in a single action, the Court should sever and dismiss the claims against Magic Matrix pursuant to Rules 20 and 21.

Dated: August 7, 2026

s/Michael T. Griggs
Michael T. Griggs
BOYLE FREDRICKSON S.C.
840 N. Plankinton Ave.
Milwaukee, WI 53203
mtg@boylefred.com

***Attorney for Defendant 12***

11