**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Sally Walsh,

*Plaintiff*,

v.

The Partnerships and Unincorporated Association Identified on Schedule "A",

*Defendants*.

Case No. 1:26-cv-06675

**Judge Mary M. Rowland**

**DEFENDANTS AOMISS.COM, FUNIYA.COM, AND SHELERY.COM'S MOTION TO VACATE THE PRELIMINARY INJUNCTION OR, ALTERNATIVELY, TO MODIFY THE ASSET RESTRAINT, AND TO SEVER FOR MISJOINDER**

**THE LAW OFFICE OF X. LYU, PLLC**

Jian Wang, NYSBA No. 6315865
36-36 Prince St., Ste 309A
Flushing, New York 11354
(347) 966-1976
jwang@lyulawpllc.com

*Attorney for Defendants*
AOMISS.COM,
FUNIYA.COM,
SHELERY.COM

# TABLE OF CONTENTS

**Page**

**INTRODUCTION** ... 1

**FACTUAL AND PROCEDURAL BACKGROUND** ... 1

**LEGAL STANDARD** ... 3

**ARGUMENT** ... 3

I. THE PRELIMINARY INJUNCTION SHOULD BE VACATED OR, ALTERNATIVELY, ITS ASSET RESTRAINT SHOULD BE NARROWED... 3

A. Plaintiff Has Not Established a Defendant-Specific Likelihood of Irreparable Harm. ... 3

B. The Balance of Harms Does Not Support an Account-Wide, Continuously Increasing Asset Restraint... 7

C. The Public Interest Favors Targeted Copyright Enforcement, Not an Unsupported Blanket Freeze. ... 10

II. THE CLAIMS AGAINST DEFENDANTS SHOULD BE SEVERED... 11

A. Legal Standard ... 11

B. Plaintiff Fails to Allege Facts Sufficient to Establish Proper Joinder. ... 12

**CONCLUSION** ... 13

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AF Holdings, LLC v. Does 1–1058*,
752 F.3d 990 (D.C. Cir. 2014) .......... 12

*Alison Friend v. P'ships & Unincorporated Ass'ns Identified on Schedule A*,
No. 26 C 5581, Dkt. 103 (N.D. Ill. Oct. 22, 2026) .......... 8, 11

*Bose Corp. v. P'ships Identified on Schedule A*,
No. 26-cv-00011, Dkt. 115 (N.D. Ill. Aug. 14, 2026) .......... 8, 11

*Bose Corp. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*,
334 F.R.D. 511 (N.D. Ill. 2020) .......... 13

*Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*,
No. 13 C 07621, 2013 WL 12314399 (N.D. Ill. Oct. 31, 2013) .......... 7, 8

*DM Trans, LLC v. Scott*,
38 F.4th 608 (7th Cir. 2022) .......... 6

*eBay Inc. v. MercExchange, LLC*,
547 U.S. 388 (2006) .......... 4, 10

*Eli Lilly & Co. v. Nat. Answers, Inc.*,
233 F.3d 456 (7th Cir. 2000) .......... 4

*Ferring Pharm., Inc. v. Watson Pharm., Inc.*,
765 F.3d 205 (3d Cir. 2014) .......... 5

*Flava Works, Inc. v. Gunter*,
689 F.3d 754 (7th Cir. 2012) .......... 1

*Grupo Mexicano de Desarrollo v. Alliance Bond Fund*,
527 U.S. 308 (1999) .......... 7, 10

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*,
736 F.3d 1239 (9th Cir. 2013) .......... 5

*Ilustrata Servicos Design, Ltda. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*,
No. 21-cv-05993, 2021 WL 5396690 (N.D. Ill. Nov. 18, 2021) .......... 12

*Innovation Indus., LLC v. Partnerships Identified on Schedule A*,
807 F. Supp. 3d 844 (N.D. Ill. 2025) .......... 3

*Life Spine, Inc. v. Aegis Spine, Inc.*,
8 F.4th 531 (7th Cir. 2021) .......... 3, 5

*Mkt. Track, LLC v. Efficient Collaborative Retail Mktg., LLC*,
No. 14 C 4957, 2015 WL 3637740 (N.D. Ill. June 12, 2015) .......... 5

*Monster Energy Co. v. Wensheng*,
136 F. Supp. 3d 897 (N.D. Ill. 2015) ........ 8

*Orr v. Shicker*,
953 F.3d 490 (7th Cir. 2020) ........ 3

*Philip Morris USA Inc. v. Scott*,
561 U.S. 1301 (2010) ........ 4

*Roadget Business Pte. Ltd. v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto*,
735 F. Supp. 3d 981 (N.D. Ill. 2024) ........ 9, 12, 13

*Sampson v. Murray*,
415 U.S. 61 (1974) ........ 4

*Swarovski Aktiengesellschaft v. Bldg. No. 19, Inc.*,
704 F.3d 44 (1st Cir. 2013) ........ 5

*UWM Student Ass'n v. Lovell*,
888 F.3d 854 (7th Cir. 2018) ........ 12

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ........ 3, 4, 7, 10

**Statutes**

17 U.S.C. § 504 ........ 6, 10

**Other Authorities**

Federal Rule of Civil Procedure 20(a)(2) ........ 11

Federal Rule of Civil Procedure 21 ........ 1, 12

Federal Rule of Civil Procedure 54(b) ........ 1, 3

Federal Rule of Civil Procedure 65 ........ 1, 11

## INTRODUCTION

Defendants aomiss.com, funiya.com, and shelery.com (collectively, "Defendants") respectfully move under Federal Rules of Civil Procedure 54(b), 65, and 21 to vacate the preliminary injunction as applied to them and to sever the claims against them, together, from the claims against the other defendants. Alternatively, the Court should dissolve the account-wide asset restraint or reduce it to $121.59 in the aggregate, subject to adjustment upon a supported evidentiary showing.

The Company's manager, Xinyu Zou, identifies one U.S.-destination order for the accused SKU on each website. All were placed on March 26, 2026, within approximately twenty-three minutes, with matching recipient, contact, and IP information. Aggregate payments were $121.59; none was fulfilled or shipped. Zou Decl. ¶¶ 2, 5–17 & Exs. 1–4. These facts support a test-purchase inference, not a finding that Plaintiff commissioned the purchases.

Defendants have approximately $47,143 unavailable for withdrawal and a restriction capturing incoming operating receipts. *Id.* ¶¶ 18–21. Copyright infringement carries no presumption of irreparable harm. *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012). Even a justified product-specific injunction does not establish the necessity or amount of an account-wide freeze. This Court precedent supports narrowing financial restraints independently of the conduct injunction.

Severance is independently warranted. The Defendants share an owner and account, but they have no connection with any other defendant. Zou Decl. ¶¶ 2–3. Defendants seek one separate action for their related group, not separation from one another.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Sally Walsh commenced this copyright action on June 4, 2026. Dkt. 1. On

September 30, 2026, this Court entered a preliminary injunction in Plaintiff's favor. As a result, the Defendants' account was frozen.

Zou is the manager of Shenzhen Jijin Technology Co., Ltd. (the "Company"), which owns aomiss.com, funiya.com, shelery.com, and their connected PayPal account. The Company has no connection with the other defendants. Zou Decl. ¶¶ 2–4. Its Shoplazza records identify the accused product as "Women's Casual Dragonfly&Bird Printed Waistband Overall," Picture 1/S, SKU WJU174474-PT100S (the "Accused Product"). *Id.* ¶ 5. Exhibit 1 contains SKU-filtered historical searches, each displaying no start or end date and one matching order. *Id.* ¶ 6.

| **Website** | **Order** | **Item subtotal** | **Total paid** | **Status** |
|---|---|---|---|---|
| aomiss.com | AGY45865 | $32.99 | $41.63 | Paid; unfulfilled |
| funiya.com | VAT22505 | $32.99 | $39.98 | Paid; unfulfilled |
| shelery.com | MBZ02035 | $32.99 | $39.98 | Paid; unfulfilled |
| **Total** | **3 orders** | **$98.97** | **$121.59** | **No units shipped** |

Source: Zou Decl. ¶¶ 7–12 & Exs. 2–4.

The three orders contain $98.97 in combined item subtotals, $20.97 in shipping charges, and a $1.65 tariff, for $121.59 in aggregate payments. These are gross transaction amounts, not net profits. Zou Decl. ¶ 10. Zou's review found no other U.S.-destination order for the Accused Product, in Illinois or elsewhere. All three orders remained unfulfilled, and none of the units was shipped. *Id.* ¶¶ 11–12.

The order pages identify the same delivery recipient, contact information, intended Chicago address, and visitor IP address. Although Aomiss.com displays a different customer-account name, its delivery-recipient information matches. The identical SKU and variant were ordered within approximately twenty-three minutes. Zou Decl. ¶¶ 13–16 & Exs. 2–4. Defendants believe these were test purchases by one person. *Id.* ¶ 17.

Defendants have approximately $47,143 unavailable for withdrawal, daily accumulation of restricted receipts, and resulting pressure on working capital. *Id.* ¶¶ 18–21.

## LEGAL STANDARD

Rule 54(b) permits revision of an interlocutory order before final judgment. Courts consider the same factors for dissolving a preliminary injunction as those applied when granting or denying one in the first place. *Innovation Indus., LLC v. Partnerships Identified on Schedule A*, 807 F. Supp. 3d 844, 849 (N.D. Ill. 2025). "To obtain a preliminary injunction, a plaintiff must show that it is likely to succeed on the merits, and that traditional legal remedies would be inadequate, such that it would suffer irreparable harm without the injunction." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021). Once the plaintiff has made this showing, the Court balances "the harm of denying an injunction to the plaintiff against the harm to the defendant of granting one." *Id*. The Court also considers the public interest. *Id*.

"A plaintiff seeking a preliminary injunction must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted); *see also Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24 (citation omitted). It is "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Orr*, 953 F.3d at 501 (citation omitted).

## ARGUMENT

### I. THE PRELIMINARY INJUNCTION SHOULD BE VACATED OR, ALTERNATIVELY, ITS ASSET RESTRAINT SHOULD BE NARROWED

#### A. Plaintiff Has Not Established a Defendant-Specific Likelihood of Irreparable

**Harm.**

"Plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 24. "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). "Normally the mere payment of money is not considered irreparable …because money can usually be recovered from the person to whom it is paid." *Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1304 (2010) (citation omitted).

The possibility of irreparable harm alleged by Plaintiff is insufficient for a preliminary injunction. In support of its TRO application and the present Motion, Plaintiff relies on the conclusory allegation of irreparable harm. *See* Dkt.14 at 16-17. Plaintiff, however, fails to explain *how* it is likely to suffer such harm or present any *evidence* showing it is likely to suffer such harm absent a preliminary injunction against Defendants.

First, Plaintiff is not entitled to any presumption of irreparable harm. Although the Seventh Circuit historically recognized a presumption that copyright infringement may give rise to irreparable harm, *see Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000), that presumption has been substantially undermined by the Supreme Court's decision in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006). In *eBay*, the Supreme Court rejected categorical rules that automatically grant injunctive relief upon a finding of infringement and reaffirmed that courts must apply traditional equitable principles when considering injunctive relief. *Id.* at 392–93. Following *eBay*, several courts in this Circuit have declined to apply an automatic presumption of irreparable harm in copyright cases and instead require plaintiffs to demonstrate irreparable injury based on the specific facts of the case. *Mkt. Track, LLC v. Efficient Collaborative Retail Mktg.,*

*LLC*, No. 14 C 4957, 2015 WL 3637740, at *23 (N.D. Ill. June 12, 2015); *see also Swarovski Aktiengesellschaft v. Bldg. No. 19, Inc.*, 704 F.3d 44, 54 (1st Cir. 2013); *Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 216 (3d Cir. 2014); *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1248–49 (9th Cir. 2013).

Second, Plaintiff has not supplied the concrete evidence of market or reputational injury necessary to sustain the injunction against Defendants. Plaintiff's generalized assertions in support of preliminary relief do not explain how Defendants' conduct is likely to cause harm that cannot adequately be remedied through monetary relief. See Dkt. 14 at 16–17. Although "the loss of goodwill and reputation, if proven, can constitute irreparable harm," the qualification that such harm must be proven is essential. *Life Spine*, 8 F.4th at 546.

In *Life Spine,* the Seventh Circuit held that the district court erred by applying a presumption of irreparable harm. *Id*. at 545. The court nevertheless affirmed because the record independently supported findings of likely injury: the competing products targeted the same finite group of hospitals and surgeons, lost contracts could not readily be identified or quantified, and the competing product threatened the plaintiff's established marketing strategy and customer goodwill. *Id*. at 545–46. The court also recognized that losses involving identifiable customers or contracts may be quantifiable and compensable. *Id*. at 546. Thus, *Life Spine* requires an examination of the actual evidence supporting the claimed injury.

The evidence concerning Defendants presents a materially different record. Defendants' SKU-specific review identified three U.S.-destination orders for the Accused Product. That order reflected an item subtotal of $98.97 and a total payment of $121.59. The order remained unfulfilled, and no unit was shipped. Zou Decl. ¶¶ 5–12. Those records identify a discrete transaction with an ascertainable payment amount; they do not demonstrate a pattern of fulfilled sales displacing

Plaintiff's products or undermining Plaintiff's customer relationships.

The circumstances of the orders further limit their value as evidence of ordinary consumer demand. The orders placed through Aomiss.com, Funiya.com, and Shelery.com identified the same delivery recipient, contact information, intended Chicago address, and visitor IP address. They involved the same SKU and variant and were placed within approximately twenty-three minutes. Zou Decl. ¶¶ 13–16 & Exs. 2–4. Those common features support Defendants' belief that the orders were test purchases placed by one person. *Id.* ¶ 17. If, as Defendants believe, the orders were placed on Plaintiff's behalf to investigate alleged infringement, they would not themselves demonstrate that Defendants diverted purchases that otherwise would have been made from Plaintiff or an authorized licensee.

The relevant inquiry remains whether Plaintiff has shown likely future injury that monetary relief would not adequately remedy. Even assuming the listing and acceptance of the order support Plaintiff's infringement claim, those facts do not themselves establish lost goodwill, impaired licensing relationships, or an unquantifiable loss of market share. Plaintiff must identify a factual basis connecting Defendants' conduct to the threatened irreparable injury. As the Seventh Circuit has explained, "a future threat of irreparable harm must exist to warrant injunctive relief." *DM Trans, LLC v. Scott*, 38 F.4th 608, 621 (7th Cir. 2022). Where the claimed economic loss can reasonably be estimated, an award of damages may provide an adequate remedy. *Id.* at 620.

Plaintiff may pursue the monetary remedies available under the Copyright Act, including actual damages and attributable profits or, where the statutory requirements are satisfied, statutory damages. 17 U.S.C. § 504. The identified transaction amounts do not establish a ceiling on any eventual recovery. They do, however, underscore the need for Plaintiff to explain why the conduct reflected in this record threatens injury beyond what the available monetary remedies can

adequately address. General references to lost sales, goodwill, or market share do not supply that explanation.

Accordingly, Plaintiff has not established the likelihood of irreparable injury necessary to maintain the preliminary injunction against Defendants. The record identifies an alleged infringing listing and one paid but unfulfilled U.S.-destination order for the identified SKU, together with circumstances supporting the inference of a test purchase. It does not establish the kind of likely, inadequately compensable market or reputational injury. The Court should therefore vacate the preliminary injunction.

**B. The Balance of Harms Does Not Support an Account-Wide, Continuously Increasing Asset Restraint.**

The Court must compare the harm avoided by the particular relief with the harm that relief imposes. *Winter*, 555 U.S. at 24. Zou reports that approximately $47,143 is inaccessible and that new receipts continue to be restricted, impairing working capital and threatening continued operations. Zou Decl. ¶¶ 18–21. That reported amount is more than 387 times the $121.59 in gross payments for the three identified orders. The comparison does not establish a damages ceiling; it demonstrates why an uncapped restraint of the business's funds demands a specific equitable justification.

The authority to secure an equitable recovery is not authority to freeze every asset as security for a possible legal judgment. Courts are limited in their ability to restrain assets—rather than behavior—before judgment. *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 13 C 07621, 2013 WL 12314399, at *2 (N.D. Ill. Oct. 31, 2013). District courts "generally do not have the authority to preliminarily restrain assets where a plaintiff seeks a money judgment." *Id.* (citing *Grupo Mexicano de Desarrollo v. Alliance Bond Fund*, 527 U.S. 308, 331 (1999)). One exception to that general rule is where a plaintiff seeks an equitable

remedy—like a disgorgement of profits. *Id*. However, "the appropriate scope of prejudgment restraint must be limited only to what is reasonably necessary to secure the (future) equitable relief." *Id*. "[I]f the amount of the profits is known, then the asset freeze should apply on[ly] to that specific amount, and no more." *Id*. On the other hand, "[t]o exempt assets from an asset freeze, the burden is on the party seeking relief to present documentary proof that particular assets are not the proceeds of counterfeiting activities." *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015).

The court applied that distinction in *Bose Corp. v. P'ships Identified on Schedule A*, No. 26-cv-00011, Dkt. 115 (N.D. Ill. Aug. 14, 2026) (Rowland, J.). Although the court retained the conduct injunction, it explained that a restraint justified by disgorgement should reach the profits from the accused products and reduced the restraint to $6,082 based on supported net proceeds. *Id*. ("Given that the basis for Bose's asset restraint request is disgorgement of profits from the ChuangTuTu Products, Bose is only entitled to a restraint on profits from those products."). The same distinction between an injunction against infringing conduct and an asset restraint securing an equitable recovery applies here.

The order in *Alison Friend v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 26 C 5581, Dkt. 103 (N.D. Ill. Oct. 22, 2026), provides a close copyright analogy. The court rejected a $17,625.67 account-wide restraint where the identified transaction yielded $38.48, provisionally limited the restraint to $38.48, and permitted a later, supported request to increase it. *Id*. at 6–9, 13. It rejected uncertainty about profits as a sufficient reason to freeze the entire account indefinitely. *Id*. at 8. The decision supports a provisional, evidence-based cap subject to adjustment through focused discovery, rather than an automatic entitlement to restrain all current and future receipts.

Here, Defendants have addressed the evidentiary requirement by submitting the SKU search parameters, search histories showing one matching order per store, complete pages for the corresponding orders, and the manager's explanation of those records. Zou Decl. ¶¶ 4–12 & Exs. 1–4. The proposed cap preserves every dollar of the documented gross payments, including shipping charges and the tariff, without relying on unsupported deductions for estimated costs.

In *Roadget Business Pte. Ltd. v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto*, 735 F. Supp. 3d 981 (N.D. Ill. 2024), the court modified an existing freeze after receiving authenticated platform revenue data and evidence that unrelated receipts were increasing the restrained balance. *Id*. at 983–86. A cap based on gross revenue avoided disputed deductions for costs. Here, the order records authenticated by the manager support the same conservative approach. Platform confirmation should be sought if the completeness of those records or the scope of the restriction is disputed.

On this showing, the Court should dissolve the financial restraint or, alternatively, cap the amount restrained solely under this action at $121.59 in the aggregate across the common account and the three websites. The cap should not be multiplied by the number of website names. Defendants request release of the excess restrained solely because of this action and an end to the additional restraint of unrelated receipts beyond that aggregate cap. Plaintiff may seek a different amount upon presenting specific evidence of additional relevant transactions, profits, or another valid basis for restraint.

The limitations of the records favor a focused accounting rather than an indefinite blanket freeze. The searches concern one SKU and variant and do not purport to cover every potentially accused product or work. Plaintiff should identify any additional accused products and the periods

for which proceeds are claimed so that the corresponding records can be promptly produced. If dashboard labels or overlapping holds create uncertainty, PayPal should confirm the restriction attributable to this action. Any independent lawful restrictions must remain unaffected.

The proposed cap does not adjudicate damages. Section 504 distinguishes actual damages and attributable profits from potentially available statutory damages. 17 U.S.C. § 504(b)–(c). Statutory damages may exceed the identified receipts, but that possibility alone does not establish an equitable interest in the entire account. *Grupo Mexicano*, 527 U.S. at 333. A supported claim for profits can be protected without prejudging the amount of any final recovery.

Finally, the asserted hardship is not a claimed entitlement to continue infringing. It arises from the loss of access to working capital generated by transactions unrelated to the identified Accused Product. Zou Decl. ¶¶ 19–21. A conduct restraint limited to the accused product, preservation of relevant records, and a defined provisional fund can protect legitimate interests without disabling unrelated operations. Accordingly, even if the Court declines to dissolve the financial restraint entirely, it should promptly limit the restraint attributable to this action to $121.59 in the aggregate, release the excess, and permit any later adjustment only upon a supported showing.

### C. The Public Interest Favors Targeted Copyright Enforcement, Not an Unsupported Blanket Freeze.

The public has a substantial interest in protecting valid copyrights and encouraging creative work. Defendants do not ask the Court to discount that interest. But equitable relief must protect the asserted right without imposing avoidable restraints on unrelated commerce. *See eBay*, 547 U.S. at 391–93; *Winter*, 555 U.S. at 24. The proper inquiry concerns the particular injunction sought, including whether its financial provisions provide a supported protective benefit beyond that afforded by a targeted prohibition on infringement.

A freeze that continues to absorb receipts from unrelated transactions may pressure a business to settle simply to regain access to operating funds, impairing its ability to obtain an adjudication on the merits. *See* Zou Decl. ¶¶ 18–21. This concern addresses a foreseeable consequence of an overbroad restraint; it does not depend on a finding that Plaintiff acted in bad faith. The public interest favors effective copyright enforcement and fair access to adjudication. It does not favor maintaining an unsupported restraint merely because funds are available in an account.

The decisions in Friend and Bose illustrate how those interests can be accommodated. In Friend, the court retained the copyright injunction while reducing the asset restraint and directing severance. *Friend*, No. 26 C 5581, Dkt. 103 at 9, 13. Similarly, in *Bose*, the court retained the injunction against infringing conduct while limiting the financial restraint to supported proceeds from the accused products. *Bose*, No. 1:26-cv-00011, Dkt. 115 at 11.

Here, the Court should vacate relief lacking a defendant-specific equitable basis or, at minimum, eliminate the unsupported account-wide financial restriction. Any continued injunction must state its terms specifically and describe the restrained acts in reasonable detail. Fed. R. Civ. P. 65(d)(1)(B)–(C). Any release of funds should apply only to the restraint imposed in this action and leave independent lawful restrictions unaffected.

## II. THE CLAIMS AGAINST DEFENDANTS SHOULD BE SEVERED

### A. Legal Standard

Joinder of defendants is appropriate if "any right to relief is asserted against them … with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Courts enjoy "considerable flexibility" in deciding whether multiple defendants may be

joined in a single action. *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018); *see also* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.").

It is always "plaintiff's burden to show joinder is appropriate" in a litigation involving multiple defendants. *Roadget Bus. Pte. Ltd. v. Partnerships, & Unincorporated Associations Identified on Schedule A Hereto*, 735 F. Supp. 3d 981, 986 (N.D. Ill. 2024). The proper remedy for improper joinder of defendants "is severance or dismissal without prejudice." *UWM Student Ass'n*, 888 F.3d at 864 (citation omitted).

**B. Plaintiff Fails to Allege Facts Sufficient to Establish Proper Joinder.**

Plaintiff alleges that the defendants in this action operate in an organized manner and use collective efforts by selling products through e-commerce platforms such as Amazon.com, thereby purportedly forming a "collective enterprise." *See* Dkt. 1. But those allegations establish nothing more than separate, parallel instances of alleged infringement by different defendants; they do not show claims arising out of the same transaction, occurrence, or series of transactions or occurrences. *See AF Holdings, LLC v. Does 1–1058*, 752 F.3d 990, 998 (D.C. Cir. 2014) ("[C]ommitting the same type of violation in the same way does not link defendants together for the purpose of joinder.") (citation and internal quotation marks omitted); *see also Ilustrata Servicos Design, Ltda. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-cv-05993, 2021 WL 5396690, at *2 (N.D. Ill. Nov. 18, 2021) ("Courts in this District have held that plaintiffs cannot satisfy Rule 20's requirements by merely alleging that multiple defendants have infringed the same patent or trademark."). As this Court has correctly recognized, "[t]hough evidence against multiple defendants will come from Temu, the evidence itself—from the infringing product listings to the sales and profit data—will be largely unique to each defendant." *Roadget Bus.*, 735 F. Supp.

3d at 986. Plaintiff's conclusory assertion that all claims arise from the same or related transactions therefore carries no weight.

Indeed, there is no evidence that Plaintiff's claims against Defendants arise out of the same transaction, occurrence, or series of transactions or occurrences as its claims against any other defendant. To the contrary, Defendants testifies that they have no relationship with the other defendants and did not participate in any common transaction or coordinated conduct with them. Zou Decl. ¶¶ 2–3.

Nor does *Bose Corp. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 334 F.R.D. 511 (N.D. Ill. 2020), support joinder here. In *Bose*, the court permitted joinder where defendants were alleged to have sold counterfeit products bearing the plaintiff's marks, but the decision was expressly informed by the "practical considerations" that no defendant had appeared and that default judgment against all defendants was likely. *Id*. at 517. Those circumstances are not present here. Defendants have appeared and challenge both joinder and the propriety of injunctive relief. The practical rationale that informed *Bose* therefore has no application in this case.

Accordingly, Plaintiff has failed to establish that its claims against Defendants arise out of the same transaction, occurrence, or series of transactions or occurrences as its claims against the other defendants. Because Plaintiff relies only on conclusory allegations of parallel conduct, while the evidence relevant to Defendants is unique to their own storefront, supplier, and sales activity, joinder is improper under Rule 20 and Defendants should be dismissed from this action.

## CONCLUSION

Defendants request vacatur of the preliminary injunction as applied to them and release of restrictions imposed solely under this action. Alternatively, the Court should dissolve the account-

wide freeze or cap it at $121.59 in the aggregate, release the excess attributable to this case, and stop additional capture beyond that cap, subject to supported adjustment.

Defendants also request severance together into one action, a separate filing fee and group-specific pleading from Plaintiff, and transfer of the relevant record. Relief should preserve independent lawful holds, authorize no transfer to Plaintiff or counsel, and leave the merits unresolved. Defendants request such other and further relief as the Court deems just and proper.

Dated: November 2, 2026.

**THE LAW OFFICE OF X. LYU, PLLC**

By: /s/ *Jian Wang*
Jian Wang, NYSBA No. 6315865
36-36 Prince St., Ste 309A
Flushing New York 11354
(347) 966-1976
Jwang@lyulawpllc.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 2, 2026, the foregoing document was filed electronically with the Clerk of the Court for the United States District Court for the Northern District of Illinois using the Court's Electronic Case Filing System, which will send notification to all attorneys of record in this case.

I certify that all parties in this case are represented by counsel who are CM/ECF participants.

By: */s/ Jian Wang*
Jian Wang