**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SALLY WALSH,<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>Defendants. | Case No. 1:26-cv-06675<br><br>Judge Mary M. Rowland<br><br>Magistrate Judge Albert Berry, III |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT NOS. 7–9'S MOTION TO VACATE THE PRELIMINARY INJUNCTION, MODIFY THE ASSET RESTRAINT, AND SEVER [48], AND MOTION TO STAY**

Plaintiff Sally Walsh ("Plaintiff") opposes Defendant Nos. 7 aomiss.com, 8 funiya.com, and 9 shelery.com's Motion to vacate the preliminary injunction, cap the asset restraint at $121.59, and sever (the "Motion"). [48]. In a supporting Declaration [48-1], a manager attests that all three storefronts and their shared PayPal account belong to Shenzhen Jijin Technology Co., Ltd. (collectively, "Shenzhen Jijin"). Shenzhen Jijin does not contest that it copied Plaintiff's registered artwork onto a printed overall, offered it on three storefronts, and accepted payment for it from a Chicago buyer. It asks the Court to release more than $47,000 on the strength of a single-size order search and a manager's untested declaration that contradicts the same manager's sworn account in other cases.

The preliminary injunction should stand because Shenzhen Jijin identifies no changed circumstance, offers nothing on the merits, and ignores the irreparable-harm evidence on which this Court entered the injunction. The asset restraint should stand as well. Shenzhen Jijin bears the burden of showing, with documentary, transaction-level proof, that the infringing profits are less

than what is currently frozen, and it has not done so. Its declarant searched for one stock-keeping unit, the size-small variant of a listing offered in six sizes, and produced nothing from the PayPal account it wants released. That same declarant has sworn, in three cases over five months, that aomiss.com is operated by a Changsha household-goods store (Changsha is a city more than 500 miles from Shenzhen), that he manages a Shenzhen technology company that owns a different trio of websites, and now that the Shenzhen company owns aomiss.com. The websites themselves name three other operators. The proper course is the one courts in this District routinely follow: keep the restraint in place, let discovery into Shenzhen Jijin's sales proceed as part of ordinary fact discovery, and permit a renewed motion after the close of fact discovery.

Finally, severance is unwarranted. The claims against Shenzhen Jijin arise from the same series of occurrences, and present the same questions of law and fact, as the claims against its co-defendants. Further, unresolved questions continue to surround the extent of Shenzhen Jijin's operation, including its undisclosed ties to Defendant No. 6 yellowf.com, which sold an identical product under the same product code that Shenzhen Jijin's declarant searched, through a storefront that Shenzhen Jijin's counsel represented alongside funiya.com and shelery.com in another case.

## BACKGROUND

### A. Shenzhen Jijin Copied Plaintiff's Work and Accepted Payment to Ship to Illinois.

Plaintiff is a watercolor artist who licenses her work for fabrics, wallpapers, and other home and lifestyle products. [33-2] ¶¶ 3, 7. She owns U.S. Copyright Registration Nos. VA 2-376-032, VA 2-377-711, and VA 2-376-025. [1] ¶ 5. On aomiss.com, funiya.com, and shelery.com, Shenzhen Jijin offered a "Women's Casual Dragonfly&Bird Printed Waistband Overall" reproducing the kingfisher-and-dragonfly painting protected by VA 2-376-032, priced at $32.99 in six sizes, S through 3XL, with volume discounts for multiple-unit purchases. Vogt Decl. ¶ 3.

On March 26, 2026, each storefront accepted payment for the overall for delivery to Chicago. Vogt Decl. ¶ 4; [24-1] at 16, 18, 20; [48-1] ¶¶ 7–9, 13.

Shenzhen Jijin had notice of this case. Plaintiff emailed the preliminary-injunction motion to the storefronts on August 7, 2026, and the Court's August 12 minute order [42] on August 15. On August 18, the storefronts' support address, the same address listed on Shenzhen Jijin's PayPal account, acknowledged "receipt of your email and the court minute order" and stated that it was "arranging legal representation." Vogt Decl. ¶ 7. Shenzhen Jijin filed nothing. The Court entered the preliminary injunction on September 30, 2026. [43]; [44]. Shenzhen Jijin appeared on October 29 [47] and filed the present motion four days later [48].

**B. Shenzhen Jijin's Declarant Has Told Three Courts Three Different Stories.**

The motion rests on the declaration of Xinyu Zou. [48-1]. Mr. Zou has sworn to the ownership and operation of these storefronts before. In June 2026, he declared in a case in front of Judge Kocoras that he was the "owner/operator" of aomiss.com and that aomiss.com "is operated by Changsha Yuhua District Yitai Household Products Store." *Friend v. P'ships et al.*, No. 26-cv-05581, Dkt. 50 ¶¶ 1, 3 (N.D. Ill. June 12, 2026).[1] In July 2026, he declared in another case in the Western District of Pennsylvania that he is the general manager of Shenzhen Jijin, which owns and operates cofolife.com, funiya.com, and lacewave.com and maintained "the PayPal account" used for all three. *Plout v. Ren Shiju*, No. 2:26-cv-01134, Dkt. 53 ¶¶ 2–4, 7 (W.D. Pa. July 20, 2026). Here, he swears that Shenzhen Jijin owns aomiss.com, funiya.com, shelery.com, and "the connected PayPal account." [48-1] ¶ 2. In each case, Mr. Zou attested that the only U.S. order for the accused product was a test purchase made on the plaintiff's behalf. *Friend*, Dkt. 50 ¶¶ 30–36; *Plout*, Dkt. 53 ¶¶ 14–33; [48-1] ¶¶ 11, 17.

---

[1] Copies of the unpublished orders, and of the filings from other dockets, cited in this brief are attached as **Exhibit 1** in order of appearance.

The storefronts tell yet a different story. When Plaintiff captured them in March 2026, aomiss.com's Contact Us page identified its operator as "Mgoat Technology Limited" at a Hong Kong address it disclaimed as "not a returning address," while its Terms of Use identified a different operator, a household-goods store in Deyang, Sichuan Province. Vogt Decl. ¶ 5. The Terms of Use for funiya.com and shelery.com named "MICROS INNOVATION TECHNOLOGY LTD" of Manchester, England, again "not a returning address," and funiya.com listed a Chinese telephone number that matches the number on Shenzhen Jijin's PayPal account. *Id.* ¶¶ 5–6. That PayPal account, produced under this Court's expedited-discovery order [18], is registered to Shenzhen Jijin, lists four different addresses across two districts of Shenzhen, links a U.S. bank account at JPMorgan Chase, and carries an additional email address referencing yet another domain, "craboss.com." Id. ¶ 6. On this record, the true extent of Shenzhen Jijin's operation, including how many storefronts it runs and how much infringing merchandise it has sold, remains unknown, and so do its true identity and whereabouts.

## ARGUMENT

### I. The Preliminary Injunction Should Stand.

A party seeking to dissolve a preliminary injunction must first show "a significant change either in factual conditions or in law" that would make continued enforcement of the injunction inequitable, and "[t]he party seeking relief bears the burden of establishing that changed circumstances warrant relief." *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992)); *see* Fed. R. Civ. P. 60(b)(5). Reconsideration under Rule 54(b), which Shenzhen Jijin invokes, [48] at 5, 7, likewise requires "manifest errors of law or fact" or "newly discovered evidence." *Stussy, Inc. v. P'ships et al.*, No. 26 C 2870, Dkt. 103 at 4 (N.D. Ill. Nov. 12, 2026) (Kendall, C.J.) (citation omitted). Only a movant who clears that

threshold reaches the factors that govern dissolving a preliminary injunction, which are the same as those for granting one. *Antsy Labs, LLC v. Individuals et al.*, No. 21 C 3289, 2022 WL 17176498, at *2 (N.D. Ill. Nov. 23, 2022) (citing *Centurion Reinsurance Co. v. Singer*, 810 F.2d 140, 143 (7th Cir. 1987)).

Shenzhen Jijin does not clear it. The motion identifies no manifest error, no newly discovered evidence, and no change in fact or law since the Court entered the injunction. Last week, Judge Kendall denied a Schedule A defendant's similar motion to vacate that attacked irreparable harm on the theory that the only sale was a single litigation-driven purchase, because the defendant "relie[d] on the very conditions present when the Court entered the injunction as the basis for vacating it now." *Stussy*, Dkt. 103 at 2–3. So too here. Shenzhen Jijin acknowledged the preliminary-injunction motion on August 18, said it was "arranging legal representation," and then let the injunction issue unopposed six weeks later. Vogt Decl. ¶ 7; [44]. Every fact in the Zou declaration, from the three March 26 orders to the shared IP address and the unfulfilled status, sat in Shenzhen Jijin's own order system the entire time. [48-1] ¶¶ 7–17. Having let the injunction issue without objection, Shenzhen Jijin "cannot claim the evidence [Plaintiff] submitted then is insufficient now." *Stussy*, Dkt. 103 at 4.

Even if the Court reaches the injunction factors, the motion fails. Shenzhen Jijin challenges only irreparable harm. It does not contest that Plaintiff owns valid registrations or that it reproduces her painting. *See* [48] at 7–15. Plaintiff's likelihood of success is therefore unrebutted. Where success on the merits is all but certain, a plaintiff "need only show a minimal likelihood of irreparable harm" to warrant continued injunctive relief. *Antsy Labs*, 2022 WL 17176498, at *4. Plaintiff made that showing with evidence, not presumption. Shenzhen Jijin's survey of post-*eBay* authority on the presumption of irreparable harm, [48] at 8–9, therefore answers an argument

Plaintiff never made. Her declaration explains that she licenses her works for fabrics and lifestyle products, that infringing merchandise strips her of control over the quality of goods bearing her art, erodes the exclusivity on which her licensing depends, and damages goodwill in ways that cannot be measured in dollars. [33-2] ¶¶ 3, 7, 10–14; [33] at 15–16. The Seventh Circuit recognizes exactly that harm: "the loss of goodwill and reputation, if proven, can constitute irreparable harm." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 546 (7th Cir. 2021). Judge Kocoras found irreparable harm on a materially identical showing against aomiss.com itself. *Friend*, Dkt. 103 at 4–5 (Oct. 22, 2026). Shenzhen Jijin never engages that record. Its brief calls Plaintiff's showing "conclusory" and cites "Dkt. 14 at 16–17" twice, [48] at 8–9, but Docket Entry 14 is Plaintiff's two-page motion to exceed the page limit.

Nor does Shenzhen Jijin's test-purchase theory help. It argues that the Chicago orders "support a test-purchase inference," [48] at 5, and that, if placed on Plaintiff's behalf, "they would not themselves demonstrate that Defendants diverted purchases that otherwise would have been made from Plaintiff," *id.* at 10. The argument mistakes the injury. Plaintiff's harm does not turn on a diverted sale; it flows from the unauthorized sale of her art to the public at large, which strips her of control over the goods that bear it and erodes the exclusivity her licensing depends on. [33-2] ¶¶ 10–14. Who placed the order changes none of that. When another defendant raised the same theory against personal jurisdiction, this Court rejected it, explaining that the buyer's "motivations in purchasing the allegedly illegal item [were] in no way relevant." [41] (quoting *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 624 (7th Cir. 2022)). Shenzhen Jijin's own authority holds that "a future threat of irreparable harm must exist to warrant injunctive relief." *DM Trans, LLC v. Scott*, 38 F.4th 608, 621 (7th Cir. 2022); *see* [48] at 10. That threat exists here. A seller that has cycled

through at least five corporate names and multiple sets of storefronts in five months can relaunch the same overall tomorrow.

Nor has anything changed in the balance of harms or the public interest since the Court entered the injunction. Shenzhen Jijin's hardship argument concerns only the asset restraint, which this Court can address without dissolving the injunction, *Bose Corp. v. P'ships et al.*, No. 26-cv-00011, Dkt. 115 at 11 (N.D. Ill. Aug. 14, 2026) (Rowland, J.), and which, as shown below, Shenzhen Jijin has not justified modifying on this record. The public interest favors protecting copyrights against those who would appropriate them. *Friend*, Dkt. 103 at 5–6. Shenzhen Jijin's suggestion that the restraint pressures it to settle, [48] at 15, rests on nothing but its own unexplained balance, and its invocation of Rule 65(d), *id.*, identifies no term of the injunction it cannot understand. Because Plaintiff's success is unrebutted and her irreparable harm is established by evidence Shenzhen Jijin ignores, the Court should deny the request to vacate the preliminary injunction.

## II. Shenzhen Jijin Has Not Carried Its Burden to Modify the Asset Restraint, and the Court Should Stay That Request Until the Close of Fact Discovery.

### A. <u>The Burden Rests on Shenzhen Jijin to Prove That the Universe of Infringing Profits is Less than the Currently Restrained Amount.</u>

The Copyright Act entitles Plaintiff to an accounting and disgorgement of the infringer's profits as equitable remedies, and she "is required to present proof only of the infringer's gross revenue"; the infringer must prove its deductible expenses and any profits attributable to other factors. 17 U.S.C. § 504(b). An asset restraint secures that equitable remedy, which is why it falls outside the rule of *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 310 (1999), which concerned assets "in which no lien or equitable interest is claimed."

Once a restraint is in place, "[t]o exempt assets from an asset freeze, the burden is on the party seeking relief to present documentary proof that particular assets are not the proceeds" of the infringing activity. *Antsy Labs*, 2022 WL 17176498, at *2 (quoting *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015)). The defendant must "come up with something that shows the Court that the universe of potential [infringing] profits is less than what is currently frozen." *Johnson & Johnson v. Advanced Inventory Mgmt., Inc.*, No. 20-cv-3471, 2020 WL 8260381, at *5 (N.D. Ill. July 20, 2020). And "[w]here there is a commingling of gains, [the infringer] must abide the consequences, unless he can make a separation of the profits so as to assure to the injured party all that justly belongs to him." *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 406 (1940); *see also WMS Gaming Inc. v. WPC Prods. Ltd.*, 542 F.3d 601, 608 (7th Cir. 2008) ("[T]he burden is the infringer's to prove that his infringement had no cash value in sales made by him." (quoting *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206–07 (1942))).

Shenzhen Jijin's authorities confirm, rather than displace, that allocation. The *Friend* order on which it principally relies placed the burden on the plaintiff for one reason: the temporary restraint there had expired, "there [was] no current asset freeze in place," and the plaintiff was the moving party. *Friend*, Dkt. 103 at 7. Judge Kocoras expressly distinguished cases in which "the defendants had moved for modification of an existing asset freeze." *Id.* This is that case. Likewise, in *Bose*, this Court reduced a restraint only after the defendant proved net proceeds for all 2,881 units it sold, supported the figure with records, and still failed to substantiate its claimed costs. *Bose*, Dkt. 115 at 11 & n.6. Plaintiff does not dispute that a restraint secures only the profits from the infringing products; however, Shenzhen Jijin, which alone holds its sales records, has not shown what those profits are. *Deckers*, which Shenzhen Jijin quotes, limits a freeze to the profits

only "if the amount of the profits is known." [48] at 12 (quoting *Deckers Outdoor Corp. v. P'ships et al.*, No. 13 C 07621, 2013 WL 12314399, at *2 (N.D. Ill. Oct. 31, 2013)). Here, the amount is not known, and the only party in a position to know it has chosen not to say.

B. <u>The Zou Declaration Does Not Carry That Burden.</u>

The Zou declaration fails at the first step because it looks for only one item. Mr. Zou searched each storefront for a single stock-keeping unit, "WJU174474-PT100S," which corresponds to the "Picture 1/S" variant of the overall. [48-1] ¶¶ 5–6, 16; [48-2]. The listing was offered in six sizes. Vogt Decl. ¶ 3. The search therefore could not capture a sale of the same overall in sizes M, L, XL, 2XL, or 3XL, any other product bearing Plaintiff's three registered works, or any sale on cofolife.com, lacewave.com, or any other storefront whose receipts flow into the same PayPal account. *See Plout*, Dkt. 53 ¶¶ 3–4, 7. Shenzhen Jijin concedes the point, acknowledging that its "searches concern one SKU and variant and do not purport to cover every potentially accused product or work." [48] at 13. In *Antsy Labs*, Judge Pallmeyer declined to modify a freeze where the defendants gave no indication of how they "conducted [their] search, including the search parameters, or what the many 'Customer SKU' numbers referenced correspond to." 2022 WL 17176498, at *5 (quoting the plaintiffs' brief). Here, Shenzhen Jijin disclosed its search parameters, and they show the search was built to find exactly one order.

The declaration also omits the only records that matter. Shenzhen Jijin asks the Court to release funds from a PayPal account, yet it produced no PayPal transaction history, no statement from the account, and no breakdown of which storefronts generated the restrained balance. Its sole financial exhibit is a dashboard screenshot that labels $47,143.72 an "Available balance," shows another $2,308.57 "Not available yet," and reports $762.19 in recent sales across 18 customers. [48-6] at 2. Compare the showing in *Peanuts Worldwide*, where the court lifted the asset freeze

upon a $59.98 deposit covering the infringing sales, but only after the defendant supplied a declaration "from a corporate representative attesting to the numbers in a spreadsheet listing sales figures for *all the products* offered for sale by its Amazon seller account," with "pictures of the products to demonstrate that none of the other products it offered for sale infringed any of Plaintiff's trademarks or copyrights." *Peanuts Worldwide LLC v. Yingsheji Jiatingyongpinyouxiangongsi*, No. 21-cv-05863, Dkt. 69 at 4 (N.D. Ill. Jan. 24, 2022) (emphasis added). *Roadget*, on which Shenzhen Jijin also relies, [48] at 13, is no different: Judge Bucklo modified the freeze only on "a custodial declaration produced by counsel for Temu" that came "directly from the platform from which the sales data originates." *Roadget Bus. Pte. Ltd. v. Individuals et al.*, 735 F. Supp. 3d 981, 984 (N.D. Ill. 2024). Shenzhen Jijin offers nothing comparable. It does not say what generated the $47,143.72 it wants released, which storefronts and products those receipts came from, or why none bears Plaintiff's art. Until it separates infringing from non-infringing receipts, it cannot show that "the universe of potential [infringing] profits is less than what is currently frozen," *Johnson & Johnson*, 2020 WL 8260381, at *5, and any release would come at the expense of Plaintiff's equitable remedies.

Most fundamentally, the declarant is not credible on the very facts the motion asks the Court to accept. As shown above, Mr. Zou has given three courts three accounts of who owns these storefronts. And in every case, the only sale Mr. Zou can find is one he attributes to the plaintiff. Courts in this District "regularly decline to modify asset freeze orders in the face of ambiguous or unpersuasive evidence," including a defendant's claim "that the counterfeit product purchased by an investigator just happened to be the only one they ever sold." *Johnson & Johnson*, 2020 WL 8260381, at *3 (describing *Ent. One UK Ltd. v. 2012Shiliang*, 384 F. Supp. 3d 941, 954 (N.D. Ill. 2019)). The Court, therefore, should not release the restrained funds on this declaration.

### C. The Court Should Stay Any Modification Until the Close of Fact Discovery.

When a defendant's showing on a motion to modify an asset restraint is incomplete and contested, courts in this District keep the restraint in place and allow discovery before entertaining modification. In *Skechers*, Judge Valderrama denied a nearly identical motion, built on a single $45.97 sale, without prejudice and directed that the defendant "may refile its motion after the close of discovery." *Skechers U.S.A., Inc. II v. P'ships et al.*, No. 24-cv-07333, Dkt. 144 at 2 (N.D. Ill. Dec. 10, 2025). Judge Durkin held that the plaintiff was "entitled to collect limited and expedited discovery relevant to the issues" raised by a motion to modify, *Skechers U.S.A., Inc. II v. P'ships et al.*, No. 24-cv-04541, Dkt. 168 at 1 (N.D. Ill. Dec. 13, 2024), and Judge Daniel stayed a motion to vacate or modify a preliminary injunction "to allow the parties to obtain any discovery necessary to respond," *Skechers U.S.A., Inc. II v. P'ships et al.*, No. 24-cv-00596, Dkt. 93 at 1 (N.D. Ill. June 25, 2024). Judge Pallmeyer likewise denied modification without prejudice to a renewed motion supported by "more reliable records." *Antsy Labs*, 2022 WL 17176498, at *1, *5.

Plaintiff asks the Court to follow that path here. Discovery into Shenzhen Jijin's sales of products bearing Plaintiff's works, the storefronts and payment accounts it controls, and the sources of the restrained balance should proceed as part of ordinary fact discovery, and Shenzhen Jijin may renew its request at the close of fact discovery on a complete record. That sequence imposes no unfair burden. Shenzhen Jijin alone holds the records that would answer the question; "the ball is in Defendants' court." *Johnson & Johnson*, 2020 WL 8260381, at *5. Releasing the funds now, by contrast, would remove the only security for Plaintiff's equitable accounting against a foreign seller that has operated under at least five corporate names and links its PayPal account to a U.S. bank account through which the money could leave. Alternatively, if the Court is inclined to revisit the restraint before then, it should order Shenzhen Jijin to produce, within twenty-one

days, the transaction history of the PayPal account ending in 6227 and its order records for every variant of the overall on all three storefronts, and decide any renewed request on that record. *See Skechers*, No. 24-cv-04541, Dkt. 168 at 1.

Shenzhen Jijin cannot ask the Court to decide the amount of its profits while blocking the process that would reveal them. Under Rule 26(d)(1), no party may seek discovery before the Rule 26(f) conference, and Shenzhen Jijin's counsel has refused to hold one, insisting there is "no obligation to conduct a Rule 26(f) conference at this time" and inviting Plaintiff to "[f]ile a motion." Vogt Decl. ¶ 8. A litigant that seeks equitable relief from this Court must accept the obligations that come with it. Because Shenzhen Jijin has not carried its burden and the facts it alone controls remain undisclosed, the Court should stay the request to modify the asset restraint, or deny it without prejudice to renewal after the close of fact discovery, and direct the parties to hold their Rule 26(f) conference within fourteen days.

### III. Severance Is Unwarranted; At Most, the Court Should Defer It Pending Limited Discovery.

Rule 20 permits joinder where the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). It reaches defendants liable "severally" as well as jointly. Fed. R. Civ. P. 20(a)(2)(A). This Court applied Rule 20 to a different group of related defendants earlier in this case and found its requirements met. [41]. Shenzhen Jijin is a second such group: by its own account, one company operating three storefronts through one PayPal account, [48] at 5; [48-1] ¶ 2, and how far its network reaches beyond those three is unknown at this early stage. Shenzhen Jijin's description of the Complaint, which it says alleges an Amazon-based "collective enterprise," [48] at 16, does not match the Complaint in this case, which alleges neither. *See* [1] ¶ 7.

The claims against Shenzhen Jijin satisfy both requirements. First, the claims arise from the same series of occurrences as those against its co-defendants: each Defendant converged on the same artist, reproducing, publicly displaying, and distributing Plaintiff's copyrighted artwork without authorization on consumer goods through storefronts open to consumers in this District, [1] ¶¶ 4, 7; [24-1] at 2–51, and at least one unclaimed co-defendant (Defendant No. 6 yellowf.com) sold the identical product, as shown below. The claims also present common questions of law and fact, including whether Plaintiff owns valid registrations, whether the accused products reproduce her works, whether the infringement was willful, and what remedies apply under 17 U.S.C. §§ 502, 504, and 505.

The present record also ties Shenzhen Jijin to at least one co-defendant it has not yet acknowledged. Defendant No. 6 yellowf.com offered the same overall, under the same title, with the same photograph as aomiss.com and shelery.com, loaded from the same image file, on the same image server, as funiya.com and shelery.com, at the same $32.99 price, in the same six sizes, with the same volume-discount tiers. Vogt Decl. ¶¶ 3, 9. Its Terms of Use name the same operator, "MICROS INNOVATION TECHNOLOGY LTD" of Manchester, England, that appears on funiya.com and shelery.com, and it charged the same $39.98 for the same order. *Id.* ¶¶ 4–5, 9–10. Yellowf.com's receipt identifies the product as "WJU174474-PT100S," the identical internal code Mr. Zou searched in Shenzhen Jijin's own order system, and names as payee a Changsha business, in the same city where Mr. Zou told Judge Kocoras aomiss.com was operated. [24-1] at 14; [48-1] ¶¶ 5–6; *Friend*, Dkt. 50 ¶ 3. Mr. Zou's sworn statement that Shenzhen Jijin "has no connection with any other defendants," [48-1] ¶ 3, does not explain how an unrelated seller came to sell Shenzhen Jijin's product, under Shenzhen Jijin's stock code, from a storefront bearing the same operator name as two of Shenzhen Jijin's own. In *Le Feuvre*, Shenzhen Jijin's counsel here sought

admission, in a single motion, as counsel for yellowf.com, funiya.com, shelery.com, and four other storefronts. *Le Feuvre v. Liunian888*, No. 2:26-cv-01210, Dkt. 51 at 1 (W.D. Pa. July 13, 2026).

That pattern is what led this Court, in *Anderson Design Group*, to hold a misjoinder motion in abeyance. There, one counsel represented hundreds of purportedly unaffiliated Schedule A defendants and filed "nearly identical motions to dismiss for misjoinder" across cases; this Court found it "highly unlikely" that unaffiliated defendants "independently reached the same counsel and then aligned on a joint defense strategy," and ordered limited discovery into their relationships. *Anderson Design Grp., Inc. v. P'ships et al.*, No. 25-cv-11640, Dkt. 55 at 2–4 (N.D. Ill. Apr. 24, 2026) (Rowland, J.). The same counsel has now challenged injunctions and joinder on behalf of Shenzhen Jijin's storefronts in *Friend*, *Plout*, and this case, each time on a Zou declaration disclaiming any connection to other defendants, *Friend*, Dkt. 50 ¶¶ 7–11; *Plout*, Dkt. 53 ¶¶ 42–53; [48-1] ¶ 3, and moved to vacate the injunction and dismiss for misjoinder, again on a Zou declaration, on behalf of aomiss.com and three other storefronts in a fourth case, *Elizabeth's Studio LLC v. Mianyangjiajunjianzhujixieshebeizulinyouxiangongsi*, No. 2:26-cv-01259, Dkt. 46 at 1, 6, 18 (W.D. Pa. July 20, 2026). This record supports joinder; at a minimum, it warrants the limited discovery this Court ordered in *Anderson Design Group* before any severance.

Shenzhen Jijin's authorities do not hold otherwise. *AF Holdings* and *Ilustrata* reject joinder premised on nothing more than defendants "committing the same type of violation in the same way." [48] at 16 (quoting *AF Holdings, LLC v. Does 1–1058*, 752 F.3d 990, 998 (D.C. Cir. 2014)). Plaintiff relies on more: a shared product code, a shared operator name, a shared image file, and shared counsel. *Roadget*, which found the evidence there "largely unique to each defendant," 735 F. Supp. 3d at 986, kept together defendants run by the same person or listing the same address because "[t]hese connections are sufficient." *Id.* at 987 n.4. The connections between Shenzhen

Jijin and yellowf.com are of the same kind. Shenzhen Jijin's appearance, which it says distinguishes the 2020 *Bose* decision, [48] at 17, changes none of this. Plaintiff bears the burden on joinder, *Roadget*, 735 F. Supp. 3d at 986, and this record carries it at this stage.

Should the Court nonetheless sever the claims against Shenzhen Jijin, it should do so on terms that preserve the injunction. Severance is the better remedy for misjoinder precisely because dismissal would lift an existing injunction and restraint. *Bose*, Dkt. 115 at 13; *Roadget*, 735 F. Supp. 3d at 986–87. Any severed action should be a continuation of this one, deemed commenced on June 4, 2026, with the record transferred and the preliminary injunction, the asset restraint, and Plaintiff's bond remaining in full force, as Judge Kocoras ordered in severing aomiss.com in *Friend*. *Friend*, Dkt. 110 ¶¶ 1–3 (Nov. 10, 2026). Because the claims against Shenzhen Jijin satisfy both prongs of Rule 20, and the record already ties Shenzhen Jijin to a co-defendant whose relationship it has not disclosed, the Court should deny severance or defer it pending limited discovery.

## **CONCLUSION**

The injunction should remain in place, the restraint should remain intact until discovery reveals what Shenzhen Jijin has withheld, and joinder should stand. Plaintiff respectfully requests that the Court (1) deny Shenzhen Jijin's request to vacate the preliminary injunction; (2) stay the request to modify the asset restraint pending the close of fact discovery, or deny it without prejudice to renewal then, or, alternatively, order the twenty-one-day production described above; (3) direct the parties to hold their Rule 26(f) conference within fourteen days; and (4) deny the request to sever or, alternatively, hold it in abeyance pending limited discovery into its relationships with its co-defendants, and, if the Court severs, preserve the injunction and restraint in the severed action.

DATED: November 16, 2026

Respectfully submitted,

*/s/ Keith A. Vogt*
Keith A. Vogt
FL Bar No. 1036084/IL Bar No. 6207971
Keith A. Vogt PLLC
1820 NE 163rd Street, Suite #306
North Miami Beach, Florida 33162
Telephone: 312-971-6752
E-mail: keith@vogtip.com

***ATTORNEY FOR PLAINTIFF***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was electronically filed on November 16, 2026, with the Clerk of the Court using the CM/ECF system, which will automatically send an email notification of such filing to all registered attorneys of record.

/s/ Keith A. Vogt
Keith A. Vogt