# EXHIBIT 1

**EXHIBIT 1**
**UNPUBLISHED ORDERS AND FILINGS FROM OTHER DOCKETS CITED IN PLAINTIFF'S RESPONSE AND MOTION TO STAY**

*(in order of first citation)*

*Friend v. P'ships et al.*, No. 26-cv-05581, Dkt. 50 (N.D. Ill. June 12, 2026) (Declaration of Xinyu Zou)

*Plout v. Ren Shiju*, No. 2:26-cv-01134, Dkt. 53 (W.D. Pa. July 20, 2026) (Declaration of Xinyu Zou)

*Stussy, Inc. v. P'ships et al.*, No. 26-cv-02870, Dkt. 103 (N.D. Ill. Nov. 12, 2026) (Memorandum Opinion and Order)

*Friend v. P'ships et al.*, No. 26-cv-05581, Dkt. 103 (N.D. Ill. Oct. 22, 2026) (Order)

*Bose Corp. v. P'ships et al.*, No. 26-cv-00011, Dkt. 115 (N.D. Ill. Aug. 14, 2026) (Memorandum Opinion and Order)

*Peanuts Worldwide LLC v. Yingsheji Jiatingyongpinyouxiangongsi*, No. 21-cv-05863, Dkt. 69 (N.D. Ill. Jan. 24, 2022) (Order)

*Skechers U.S.A., Inc. II v. P'ships et al.*, No. 24-cv-07333, Dkt. 144 (N.D. Ill. Dec. 10, 2025) (Minute Entry)

*Skechers U.S.A., Inc. II v. P'ships et al.*, No. 24-cv-04541, Dkt. 168 (N.D. Ill. Dec. 13, 2024) (Minute Entry)

*Skechers U.S.A., Inc. II v. P'ships et al.*, No. 24-cv-00596, Dkt. 93 (N.D. Ill. June 25, 2024) (Minute Entry)

*Le Feuvre v. Liunian888*, No. 2:26-cv-01210, Dkt. 51 (W.D. Pa. July 13, 2026) (Motion for Admission Pro Hac Vice of Jian Wang)

*Anderson Design Grp., Inc. v. P'ships et al.*, No. 25-cv-11640, Dkt. 55 (N.D. Ill. Apr. 24, 2026) (Memorandum Opinion and Order)

*Elizabeth's Studio LLC v. Mianyangjiajunjianzhujixieshebeizulinyouxiangongsi*, No. 2:26-cv-01259, Dkt. 46 (W.D. Pa. July 20, 2026) (Motion to Vacate the Preliminary Injunction and to Dismiss)

*Friend v. P'ships et al.*, No. 26-cv-05581, Dkt. 110 (N.D. Ill. Nov. 10, 2026) (Order)

*Friend v. P'ships et al.*, No. 26-cv-05581, Dkt. 50 (N.D. Ill. June 12, 2026) (Declaration of Xinyu Zou)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALISON FRIEND,<br><br>*Plaintiff,*<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>*Defendants.* | Case No.: 26-cv-05581<br><br>**Judge Charles P. Kocoras**<br><br>**Magistrate Judge Beth W. Jantz** |

**DECLARATION OF XINYU ZOU IN SUPPORT OF AMOISS.COM'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

I, Xinyu Zou, declare as follows:

1. I am the owner/operator of Amoiss.com, also displayed as Aomiss on the website. I submit this declaration in support of Defendant No. 22 Amoiss.com's opposition to Plaintiff Alison Friend's motion for preliminary injunction.

2. I have personal knowledge of the facts stated in this declaration. Where the facts are based on business records, those records are maintained in the ordinary course of business. If called as a witness, I could and would testify competently to the facts stated herein.

3. Amoiss.com is operated by Changsha Yuhua District Yitai Household Products Store.

4. The operating entity and physical address are displayed on the Terms of Use page of the Amoiss.com website. A true and correct copy of the Terms of Use page is attached as **Exhibit 1**.

5. As shown in Exhibit 1, the website identifies the operating entity as "Changshayuhuaquyitaishenghuoyongpinguan," which corresponds to Changsha Yuhua District Yitai Household Products Store.

6. As shown in Exhibit 1, the website also identifies a physical address in China: No. 59-7, Shiyanhu, Jinping Community, Tiaoma Town, Yuhua District, Changsha City, Hunan Province, China. The website notes that this address is not a return address.

7. Amoiss.com is an independent online storefront. It is not owned, operated, managed, or controlled by any other defendant in this action.

8. Amoiss.com did not act together with any other defendant in this action to sell, advertise, market, source, manufacture, or distribute the product accused by Plaintiff.

9. Amoiss.com has no business relationship, partnership, joint venture, agency relationship, common ownership, common control, or coordinated sales arrangement with any other defendant in this action.

10. Amoiss.com did not participate in any common transaction, common occurrence, coordinated scheme, or collective conduct with any other defendant relating to the product accused by Plaintiff.

11. To my knowledge, no other defendant used the same manufacturing source, supplier, supply chain, inventory, sales channel, distribution channel, payment account, website storefront, or operating entity as Amoiss.com with respect to the product accused by Plaintiff.

12. Amoiss.com distributed the product accused by Plaintiff only through its own website storefront.

13. Amoiss.com did not distribute the accused product through Amazon, eBay, Temu, Walmart Marketplace, Etsy, TikTok Shop, or any other third-party marketplace in the United States.

14. Amoiss.com did not authorize any other defendant to sell the accused product on its behalf.

15. Amoiss.com did not sell the accused product on behalf of any other defendant.

16. Following this lawsuit, Amoiss.com's PayPal account was restricted or frozen. A true and correct copy of the PayPal notice is attached as **Exhibit 2**.

17. The PayPal notice identifies this lawsuit by case number and states that the account restriction was related to a pending matter requiring resolution through Plaintiff's counsel.

18. The PayPal account restriction has disrupted Amoiss.com's business operations beyond the accused product.

19. The PayPal account restriction affects Amoiss.com's ability to operate and process transactions for products unrelated to Plaintiff's allegations.

20. The product accused by Plaintiff was listed on Amoiss.com as "Pizza Lover Puppy Oil Painting Art Print Crew Neck Loose Blouse." A true and correct copy of the product-display record is attached as **Exhibit 3**.

21. After learning of this lawsuit and Plaintiff's allegations, Amoiss.com removed the accused product from its website.

22. The accused product is no longer available for purchase on Amoiss.com.

23. Amoiss.com has ceased selling the accused product.

24. Amoiss.com does not intend to resume selling the accused product.

25. Amoiss.com will not sell the accused product in the future.

26. Amoiss.com will not use any copyrighted work asserted by Plaintiff in this case in any product listing, image, video, advertisement, promotion, marketing material, or sale.

27. Amoiss.com will not use any photograph, image, or substantially similar photo alleged by Plaintiff to infringe Plaintiff's rights in any product listing, image, video, advertisement, promotion, marketing material, or sale.

28. Amoiss.com will not use Plaintiff's asserted intellectual property, including any asserted trademarks or copyrighted works, in connection with any future product listing or sale.

29. The commitments stated above are made voluntarily and under penalty of perjury.

30. Based on Amoiss.com's business records, there was only one U.S. sale of the accused product.

31. A true and correct copy of the sales record for the accused product is attached as **Exhibit 4**.

32. Exhibit 4 shows one order for the accused product.

33. Based on Amoiss.com's business records, that order was placed on or about April 8, 2026.

34. Based on Amoiss.com's business records, the sale amount for that order was USD $38.48.

35. To my knowledge, that single order was placed by or on behalf of Plaintiff's counsel for purposes of this litigation, including to establish alleged personal jurisdiction in Illinois.

36. Other than that one order, Amoiss.com has not sold the accused product to any customer in the United States.

37. Amoiss.com has not received any other U.S. orders for the accused product.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 12, 2026,

By: /s/ Xinyu Zou

*Plout v. Ren Shiju*, No. 2:26-cv-01134, Dkt. 53 (W.D. Pa. July 20, 2026)
(Declaration of Xinyu Zou)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JEAN PLOUT,<br><br>*Plaintiff,*<br><br>v.<br><br>REN SHIJU, et al.,<br><br>*Defendants.* | Case No. 2:26-cv-01134-CCW<br><br>**Judge Christy Criswell Wiegand** |

**DECLARATION OF XINYU ZOU IN SUPPORT OF DEFENDANTS' MOTION TO VACATE THE PRELIMINARY INJUNCTION AND TO DISMISS THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND MISJOINDER**

I, Xinyu Zou, declare as follows:

1. I am over eighteen years of age and competent to make this Declaration. I make this Declaration based on my personal knowledge and my review of business records maintained in the ordinary course of business. If called as a witness, I could and would testify truthfully to the matters stated herein.

2. I am an authorized representative of Shenzhen Jijin Technology Co., Ltd. (深圳市极尽科技有限公司) ("Jijin"). My position is general manager.

3. In my role, I am familiar with Jijin's e-commerce operations, including its ownership and operation of the websites cofolife.com, funiya.com, and lacewave.com, as well as the sales, order, payment, fulfillment, and shipping records associated with those websites.

4. Jijin owns and operates the following three websites named as Defendants in this action:

a. cofolife.com;

b. funiya.com; and

c. lacewave.com.

5. The three websites use Shoplazza as an e-commerce platform. I have access to and regularly review the Shoplazza administrative accounts and order records associated with the websites.

6. The screenshots attached to this Declaration are true and correct copies of records displayed in the Shoplazza administrative accounts for the three websites. Those records were made and maintained in the ordinary course of Jijin's business.

7. Jijin also maintained the PayPal account used to process payments associated with the three websites. Following entry of the Temporary Restraining Order in this action, the PayPal account was restrained or frozen.

8. A true and correct copy of the notice displayed by PayPal concerning the legal or regulatory order received in connection with this action is attached as **Exhibit 1**.

9. The PayPal notice identifies the legal proceeding as *Jean Plout v. Defendants et al.* and identifies Keith Vogt as the agency recipient and contact person, with the contact information associated with Plaintiff's counsel.

10. I reviewed the complete order histories maintained in the Shoplazza administrative accounts for the product listings and stock-keeping units accused in this action.

11. Jijin's records show no order for any of the Accused Products with a shipping address in Pennsylvania.

12. Jijin has never fulfilled, shipped, or delivered any of the Accused Products to Pennsylvania.

13. Jijin's records identify no purchaser of any Accused Product located in Pennsylvania.

14. The only order associated with the accused listing on cofolife.com concerned SKU **QY624-Light grey**.

15. The cofolife.com records show only one order for that SKU. The order was placed on April 1, 2026, in the amount of **$36.38**.

16. The cofolife.com order identified "Larry Carter" as the recipient and listed a delivery address at: 1111 W. 35th Street, 15th Floor, Chicago, Illinois 60609-1404.

17. The cofolife.com order was not fulfilled. The product was never shipped or delivered to the listed address or to any other address.

18. True and correct copies of the cofolife.com administrative records showing the sole order, its amount, recipient, delivery address, and unfulfilled status are attached as **Exhibit 2**.

19. The only order associated with the accused listing on funiya.com concerned SKU **WTS181497-WHI00S**.

20. The funiya.com records show only one order for that SKU. The order was placed on April 1, 2026, in the amount of **$18.36**.

21. The funiya.com order identified the same recipient, "Larry Carter," and the same delivery address at 1111 W. 35th Street, 15th Floor, Chicago, Illinois 60609-1404.

22. The funiya.com order was not fulfilled. The product was never shipped or delivered to the listed address or to any other address.

23. True and correct copies of the funiya.com administrative records showing the sole order, its amount, recipient, delivery address, and unfulfilled status are attached as **Exhibit 3**.

24. The only order associated with the accused listing on lacewave.com concerned SKU **White-S-A003128956**.

25. The lacewave.com records show only one order for that SKU. The order was placed on April 1, 2026, in the amount of **$25.98**.

26. The lacewave.com order identified the same recipient, "Larry Carter," and the same delivery address at 1111 W. 35th Street, 15th Floor, Chicago, Illinois 60609-1404.

27. The lacewave.com order was not fulfilled. The product was never shipped or delivered to the listed address or to any other address.

28. True and correct copies of the lacewave.com administrative records showing the sole order, its amount, recipient, delivery address, and unfulfilled status are attached as **Exhibit 4**.

29. The three orders described above were placed on the same date, within a short period of one another, using the same recipient name, the same contact information, and the same Illinois delivery address.

30. Each order was the only order ever placed through the corresponding Accused Product listing.

31. None of the three orders was fulfilled, shipped, or delivered.

32. Other than those three unfulfilled orders directed to the same Illinois address, Jijin's business records show no other order for any of the Accused Products in the United States.

33. Based on the identical recipient information, identical Illinois address, close timing of the three orders, the fact that each was the sole order for the corresponding listing, and the subsequent PayPal notice identifying Plaintiff's counsel, I believe the three orders were coordinated litigation test orders placed by or on behalf of Plaintiff or its counsel to create evidence of an Illinois transaction, rather than bona fide purchases by ordinary consumers.

34. No fact in Jijin's business records indicates that any of the orders was placed by a Pennsylvania resident or involved a Pennsylvania delivery address.

35. Jijin did not advertise, offer, sell, fulfill, ship, or deliver any of the Accused Products specifically to a customer in Pennsylvania.

36. I have reviewed the exhibit submitted by Plaintiff that purports to show an accused product offered through funiya.com and a checkout page containing a Pennsylvania shipping address. A true and correct copy of the exhibit submitted by Plaintiff is attached to this Declaration as **Exhibit 5**.

37. Exhibit 5 is not a record generated from the Shoplazza administrative account, order-management system, payment records, fulfillment records, or shipping records maintained by Jijin for funiya.com.

38. Exhibit 5 appears to show only a publicly accessible product page and a checkout page into which a person entered contact and shipping information. A person visiting the website can enter an address into the checkout page without completing a purchase, making payment, or causing an order to be created in the website's order-management system.

39. Exhibit 5 does not display a completed order number, payment confirmation, fulfillment record, shipping confirmation, tracking number, carrier record, proof of delivery, or any other information demonstrating that an accused product was actually sold, shipped, or delivered to Pennsylvania.

40. Because no corresponding Pennsylvania order exists in the website's actual business records, I believe Plaintiff's Exhibit 5 is not authentic evidence of a completed Pennsylvania sale or delivery. To the extent Plaintiff represents that the exhibit proves that an accused product was sold, shipped, or delivered to Pennsylvania, that representation is false.

41. Based on my review of Jijin's complete business records, I believe the purported Pennsylvania transaction shown in Plaintiff's exhibit was fabricated or simulated by entering a Pennsylvania address into the public checkout page without completing an actual purchase.

42. Although cofolife.com, funiya.com, and lacewave.com are commonly owned and operated by Jijin, Jijin and the three websites are independent of the other defendants named in this action.

43. Jijin does not own, operate, manage, or control any defendant named in this action other than cofolife.com, funiya.com, and lacewave.com.

44. No other defendant named in this action owns, operates, manages, or controls Jijin or the three moving websites.

45. Jijin has no partnership, joint venture, agency, employment, common-ownership, or common-control relationship with any of the other defendants named in this action.

46. Jijin and the three moving websites do not share any seller account, website account, PayPal account, bank account, business registration, employees, business records, inventory, warehouse, shipping account, customer list, or revenues with any other defendant named in this action.

47. Jijin independently selected the products offered through the three moving websites, established the prices for those products, maintained the product listings, and operated the websites.

48. Jijin did not enter into any agreement with another defendant concerning the manufacture, acquisition, sourcing, advertising, marketing, pricing, listing, sale, payment processing, shipment, or distribution of any Accused Product.

49. Jijin did not communicate or coordinate with another defendant concerning Plaintiff, Plaintiff's asserted artwork, the Accused Products, this lawsuit, or any alleged plan to infringe Plaintiff's rights.

50. The product listings, order records, customers, sales, revenues, website operations, and payment records associated with the three moving websites are separate from those of the other defendants.

51. Before learning of this lawsuit, I did not know the identities of most or all of the other defendants named in this action, and Jijin had no business relationship with them.

52. Any product listing or transaction attributable to cofolife.com, funiya.com, or lacewave.com was created and conducted by Jijin independently and was not undertaken jointly or in coordination with any other defendant named in this action.

53. Jijin and the three moving websites did not participate with any other defendant in a common transaction, coordinated course of conduct, shared business plan, collective enterprise, or common scheme relating to Plaintiff or the Accused Products.

54. I submit this Declaration in support of Defendants cofolife.com, funiya.com, and lacewave.com's Motion to Vacate the Preliminary Injunction and to Dismiss the Complaint for Lack of Personal Jurisdiction and Misjoinder.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 20, 2026.

By: Xinyu Zou

*Stussy, Inc. v. P'ships et al.*, No. 26-cv-02870, Dkt. 103 (N.D. Ill. Nov. 12, 2026) (Memorandum Opinion and Order)

**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STUSSY, INC.<br><br>*Plaintiff*,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A.<br><br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 26 C 2870<br><br>Chief Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

The parties have been embroiled in motions practice since Defendant Niokit appeared in this Schedule A case. There are four pending motions before the Court. Niokit moves to vacate the preliminary injunction (Dkt. 71) and for reconsideration of the Court's order granting expedited discovery. (Dkt. 75). Plaintiff Stussy, Inc. moves for attorney's fees (Dkt. 89) and to dismiss Niokit's counterclaims. (Dkt. 93). For the reasons below, the Court denies Niokit's Motion to Vacate the Preliminary Injunction (Dkt. 71), grants in part Niokit's Motion for Reconsideration of the Court's Order Granting Expedited Discovery (Dkt. 75), denies Stussy's Motion for Attorney's Fees (Dkt. 89), and grants in part Stussy's Motion to Dismiss Niokit's Counterclaims. (Dkt. 93).

## BACKGROUND

Stussy alleges to be the owner of many trademarks. (Dkt. 1, ¶¶ 12-13). Stussy filed its complaint against numerous defendants—all online sellers of products Stussy alleges infringe its trademarks. (Dkts. 1, 2). One of those Defendants is Niokit, an online seller who allegedly sells rugs—bearing an allegedly infringing image of an eight-ball logo—on Amazon. (Dkt. 2, ¶ 20); (Dkt. 19 at 64-66).

## DISCUSSION

### I. Injunction

The Court entered a temporary restraining order on March 24, 2026. (Dkt. 27). This was unopposed because Stussy sought it *ex parte*—as is the norm in every Schedule A case. Niokit appeared on March 30, 2026. (Dkt. 31); (*see also* Dkts. 32, 33). Stussy moved for a preliminary injunction the next day. (Dkt. 36). The Court held a hearing on April 7, 2026, over Stussy's motion for a preliminary injunction. (Dkt. 44). Niokit did not appear nor challenge the injunction during the hearing. (*Id.*) At no point prior to the hearing did Niokit challenge the injunction—despite filing a motion to dismiss and an answer to the complaint. (Dkts. 31, 34, 41). The Court granted Stussy's motion and entered the preliminary injunction on April 7, 2026. (Dkt. 45). Over two months later, Niokit filed a Motion to Vacate the Preliminary Injunction. (Dkt. 71).

In support of its Motion to Vacate the Preliminary Injunction, Niokit asserts that Stussy cannot show irreparable harm because Stussy's only evidence relating to Niokit was a single litigation-driven purchase. (*Id.* at 1-2). It contends that Stussy provided no evidence of trademark infringement, such as consumer confusion or lost goodwill, sales, customers, or market share. (*Id.* at 2). Niokit further claims that Stussy hinges its position on the Lanham Act's presumption of irreparable harm under 15 U.S.C. § 1116(a), but that this is insufficient. (*Id.*) Niokit's last two arguments are that the equities and the public interest warrant vacatur. (*Id.* at 3-4).

"Federal Rule of Civil Procedure 60(b)(5) permits a party to obtain relief from a judgment or order if, among other things, 'applying the judgment or order prospectively is no longer equitable.'" *Horne v. Flores*, 557 U.S. 433, 447 (2009) (brackets omitted) (quoting Fed. R. Civ. P. 60(b)(5)). "Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests, but the Rule provides a means by which a party can ask a court to modify

or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" *Id.* (quoting *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992)). "The party seeking relief bears the burden of establishing that changed circumstances warrant relief," "but once a party carries this burden, a court abuses its discretion when it refuses to modify an injunction . . . in light of such changes." *Id.* (cleaned up).

Niokit comes nowhere close to satisfying its burden. It presents no evidence. (Dkt. 71). It rests entirely on legal (and attorney) argument. (*Id.*) Indeed, Niokit's last two positions are sheer attorney argument. (*Id.*) Niokit also fails to cite the controlling standard or applicable law. (*Id.*) Far from detailing a "significant change either in factual conditions or in law," Niokit relies on the very conditions present when the Court entered the injunction as the basis for vacating it now. *Horne*, 557 U.S. at 447; (Dkt. 71) (relying on the fact that Stussy's basis for jurisdiction was its litigation-driven purchase of a single Niokit product). Niokit raises new arguments on reply, the Court declines to consider these because "arguments raised for the first time in a reply brief are waived." *Khanna v. Banks*, 2026 WL 2836748, at *9 n.7 (N.D. Ill. Sept. 22, 2026) (quoting *Williams v. Bd. of Educ. of City of Chi.*, 982 F.3d 495, 507 n.30 (7th Cir. 2020)); *Knowlton v. City of Wauwatosa*, 119 F.4th 507, 515 (7th Cir. 2024).[1] Niokit repeatedly stresses the position that Stussy cannot establish irreparable harm by invoking 15 U.S.C. § 1116(a) and that the "undisputed evidence rebuts the presumption" § 1116(a) provides. (Dkt. 86 at 7-13). Niokit's position is

[1] *See also United States v. Timothy Holmes*, 2026 WL 3181520, at *6 (N.D. Ill. Oct. 23, 2026) (declining to consider arguments raised for the first time on reply); *Gonzalez v. Vill. of Summit*, 2026 WL 2517227, at *4 n.1 (N.D. Ill. Aug. 26, 2026) ("waiting until the reply brief to raise" an argument results in waiver) (quoting *United States v. Garibay*, 621 F. App'x 843, 847 (7th Cir. 2015)); *Palacios v. City of Joliet*, 2026 WL 1855869, at *4 (N.D. Ill. June 29, 2026) (raising arguments for the first time on reply results in waiver); *Allen v. Casper*, 2026 WL 674309, at *5 (N.D. Ill. Mar. 10, 2026) (explaining that "a litigant may waive an issue or argument in many ways") (quotes omitted) (cleaned up); *Bakov v. Consol. World Travel, Inc.*, 2026 WL 810913, at *14 (N.D. Ill. Mar. 24, 2026) (failing to raise an argument results in waiver).

unfounded. It presents *no* evidence showing a "significant change either in factual conditions or in law." *Horne*, 557 U.S. at 447; (Dkt. 71). Compounding the issues, all of Niokit's arguments are untimely and irrelevant. The Court entered the injunction months ago, the time for Niokit to challenge the injunction was April. *Supra* at 1-2 Instead of challenging Stussy's motion, Niokit decided to move to dismiss and answer Stussy's complaint. *Id.* It cannot claim the evidence Stussy submitted then is insufficient now. As neither properly presented as a motion for reconsideration nor vacatur under Rule 60(b)(5), Niokit's Motion amounts to little more than a rehash of rejected attorney argument. (Dkt. 71). Wholly lacking support in both fact and law, Niokit's Motion to Vacate the Preliminary Injunction is denied. (*Id.*)

## II. Expedited Discovery

Niokit filed a motion asking the Court to reconsider its ruling granting expedited discovery and to stay any expedited discovery. (Dkt. 75). Niokit lists the standard for reconsideration under Federal Rule of Civil Procedure 54(b) but presents no argument concerning "manifest errors of law or fact or . . . newly discovered evidence." *Patrick v. Fuelling*, 2026 WL 2350141, at *3 (N.D. Ill. Aug. 13, 2026) (quoting *Eberhardt v. Walsh*, 122 F.4th 681, 688 (7th Cir. 2024)); (*see also* Dkt. 75 at 8-18). The Court therefore understands Niokit to be requesting reconsideration under its "'sweeping'" "discretion to reconsider an order under Rule 54(b)." *Koumjian v. Mudd*, 2024 WL 3983329, at *2 (7th Cir. Aug. 29, 2024) (quoting is *Galvan v. Norberg*, 678 F.3d 581, 587 n.3 (7th Cir. 2012)). Niokit also seeks a stay of discovery. (Dkt. 75 at 8-18). "The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). Niokit's arguments in support of a stay of discovery are, in substance, just grievances about Stussy's broad and abusive discovery. (Dkt. 75 at 8-18). Niokit raises the issue of protective orders and asks the Court to end Stussy's grant of expedited discovery

so that the parties can proceed under the proscriptions of Federal Rule of Civil Procedure 26. (Dkt. 75 at 8, 15-18). Properly understood, this is the actual substantive relief Niokit seeks—even if its motion title and legal standard sections are askew. The Court therefore proceeds to determine whether to end the expedited discovery and to impose a protective order.

Stussy represented to the Court that its request for expedited discovery was "limited to what is essential to prevent further irreparable harm," to "identify names and financial accounts Defendants use for their operations" because, without this information, "Stussy's asset restraint may have little meaningful effect." (Dkt 16 at 15). Stussy's request was limited to freezing Defendants' accounts. (*Id.*); (*see also* Dkt. 37). The Court' granted Stussy's request in view of these representations, and Stussy presented the Court with a proposed order that contained the following language:

> Stussy is authorized to issue expedited written discovery, pursuant to Federal Rules of Civil Procedure 33, 34 and 36, related to:
>
> a. the identities and locations of Defendants, their affiliates, officers, agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them, including all known contact information, including any and all associated e-mail addresses; and
>
> b. the nature of Defendants' operations and all associated sales, methods of payment for services and financial information, including, without limitation, identifying information associated with the Online Marketplaces and Defendants' financial accounts, as well as providing a full accounting of Defendants' sales and listing history related to their respective Online Marketplaces.
>
> Stussy is authorized to issue any such expedited discovery requests via e-mail. Defendants shall respond to any such discovery requests within three (3) business days of being served via e-mail.

(Dkt. 27, ¶ 6); (Dkt. 45, ¶ 6) (same scope in preliminary injunction order). Read literally, there is no question the scope of this language sweeps broader than what Stussy represented to the Court

it needed the expedited discovery for. The "nature of Defendants' operations" could engulf virtually everything about a company. Reading Stussy's discovery requests, it was seeking to do just that. (*See* Dkt. 76-1 *through* Dkt. 76-8). As just two examples, Interrogatory No. 5 seeks a full "listing of product identification numbers, item titles, and shipping state and country for each product sold to the United States" and Request for Production No. 10 seeks all documents and information "relating to [Niokit's] contracts with third parties to sell and ship Accused Products into the United States[.]" (Dkt. 76-3 at 7-8); (Dkt. 76-2 at 11-12). These requests far exceed what Stussy represented to the Court and what is necessary for securing as asset freeze here.

The Court granted Stussy's request for expedited discovery "limited" to its discrete request to ensure that it could secure the asset restraint—no more. The chain of events behind the scenes is troubling. Stussy represented that, "[s]ince entry of the TRO, third party platforms have identified financial accounts linked to the Seller Aliases which were offering for sale and/or selling Counterfeit Products." (Dkt. 37 at 4). Further confirming the limited purpose of the expedited discovery, Stussy represented that converting the TRO into a preliminary injunction remained necessary because "[w]ithout a preliminary injunction, Defendants are likely to transfer financial assets to offshore accounts, and frustrate Plaintiff's ability to pursue an accounting of profits." (*Id.*) If these statements are true, the need for expedited discovery ended. Yet, Stussy pressed on seeking it. Stussy cannot square these representations against its discovery conduct. It strikes the Court that Stussy misrepresented the purpose of the discovery, exploited the breadth of the order, and pursued full-scale merits discovery. This violates the Court's order.

"Trial courts retain broad discretion to limit and manage discovery under Rule 26 of the civil rules." *Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357, 365 (7th Cir. 2017) (cleaned up); *Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, 94 F.4th 588, 602 (7th Cir. 2024); Fed. R. Civ. P.

26(c)(1), (d)(1), (f). "[E]xpedited discovery is unusual, and the party seeking expedited discovery has the burden of establishing good cause for such a need." *Henderson v. Zam's Hope Cmty. Ctr.*, 2026 WL 3168633, at *1 (N.D. Ill. Oct. 22, 2026) (quotes omitted). "In deciding a motion for expedited discovery, courts consider: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery sought; (3) the purpose of requesting expedited discovery; (4) the burden on the opposing party to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Id.* (quotes omitted). Stussy misrepresented its basis for securing the expedited discovery order. It violated the order by seeking overly broad and abusive merits discovery from Niokit. It put undue burden on Niokit. All the while Niokit's assets remain frozen. There is no basis for any continued expedited discovery. *Id.*; (Dkt. 76).

The April 7, 2026, order is hereby amended by deleting paragraph 6 and ending all expedited discovery. (Dkt. 45). To the extent any aspect of the April 7, 2026, order conflicts with this Order, this Order controls. The parties are now proceeding under standard discovery practices pursuant to Federal Rule of Civil Procedure 26. The parties are ordered to hold their Rule 26(f) conference within two weeks of this Order. After the parties hold their Rule 26(f) conference, Niokit shall have the normal twenty-one days to respond to Stussy's requests (to the extent necessary), but not under an expedited basis. To the extent the Rule 30(b)(6) deposition has not been taken, it is hereby stricken to be rescheduled at a mutually agreeable date later in discovery. The parties are reminded that they must follow the Court's Standing Order and the Local Rules.[2] "This Court requires strict compliance with [its] local rules." *Khanna*, 2026 WL 2836748, at *15 (cleaned up). Any filings that fail to comply will be summarily stricken. Repeated failures to follow the Court's orders will subject the parties to sanctions. *See id.* ("Khanna is ordered to show cause

[2] *See* Chief Judge Kendall Standing Order (https://www.ilnd.uscourts.gov/judge_display.php?LastName=Kendall); Local Rules 26.1, 37.2

why he should not be sanctioned up to $75,000" and "is ordered to pay all of Banks' attorneys' fees, litigation costs, and associated expenses related to this lawsuit from December 19, 2023, until the present"); *Das v. Tata Consultancy Servs., Ltd.*, 2026 WL 2935334, at *5-9 (N.D. Ill. Sept. 30, 2026) (enforcing strict adherence and sanctioning party for filing frivolous motions); *Jones v. City of Evanston*, 2026 WL 2906406, at *3 (N.D. Ill. Sept. 28, 2026) (enforcing strict adherence to the Court's Standing Order and the Local Rules).

## III. Attorneys' Fees

Niokit filed a motion to dismiss for lack of personal jurisdiction on March 31, 2026. (Dkt. 34). It presented a "fundamental question of constitutional limits: whether a single, litigation-driven test purchase—engineered by [Stussy]—can satisfy the Due Process Clause's requirement of minimum contacts." (*Id.* at 5). The Court denied Niokit's motion. (Dkt. 69). "The Court [found] that NIOKIT's positions [were] virtually identical to those the Seventh Circuit considered and rejected in" *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 627 (7th Cir. 2022). (*Id.* at 10). Unable to escape the scope of *NBA*, the Court found the remainder of Niokit's constitutional challenges and additional arguments unpersuasive. (*See generally id.*). Stussy now seeks $8,213.50 in fees because it asserts that Niokit violated Federal Rule of Civil Procedure 11(b)(2) because "the exact arguments in [Niokit's] Motion were rejected by the Seventh Circuit in *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 624 (7th Cir. 2022), which [Niokit] did not cite or apply." (Dkt. 89 at 1). Niokit maintains that its positions were well researched, non-frivolous, and, while rejected by the Court, permissible attempts to extend, modify, or reverse existing or establish new law. (Dkt. 96).

"By presenting to the court a . . . written motion . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law

or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).

Niokit's motion encroaches on but does not violate Rule 11(b)(2). To be sure, Niokit took an aggressive and narrow read of Seventh Circuit precedent, but its positions were well-researched and non-frivolous. (Dkts. 34, 96). However, and a very large however at that, it is quite troubling that Niokit failed to raise *NBA* in its motion. "Lawyers are not entitled to ignore controlling, adverse precedent." *Jackson v. City of Peoria, Illinois*, 825 F.3d 328, 331 (7th Cir. 2016). Niokit points out that it addressed *NBA* in its response to Stussy's Rule 11 letter and its reply to Stussy's response. (*See* Dkts. 96, 96-1, 96-2). That sidesteps the issue. "While a party may argue in good faith for the inapplicability, modification, or reversal of existing authority, it nonetheless has a duty to acknowledge and grapple with such authority. Pretending the authority does not exist in hopes that the court will overlook it is never the appropriate course." *Wine & Canvas Dev., LLC v. Muylle*, 868 F.3d 534, 542 (7th Cir. 2017). Failing to raise *NBA* (and other adverse authorities) in its motion was a serious shortcoming for Niokit and the Court admonishes Niokit for this conduct. Despite this violation, Niokit ekes by without sanctions as its positions do not violate Rule 11.

For starters, despite Stussy's contentions to the contrary, there is nothing showing that Niokit filed its motion "for the improper purpose of driving up litigation fees." (Dkt. 89 at 1). "A paper 'interposed for any improper purpose' is sanctionable whether or not it is supported by the facts and the law[.]" *Khanna*, 2026 WL 2836748, at *18 (quoting *Eberhardt v. Walsh*, 122 F.4th 681, 686 (7th Cir. 2024)). Examples of improper purposes are to harass or needlessly drive-up litigation costs. *See generally id.* (discussing vindicative litigation). There is no evidence of that in the record. Niokit's positions challenged whether the Court possessed personal jurisdiction over it based solely on a single litigation driven purchase. (Dkt. 34). In the eyes of some, perhaps, this

may seem unfair; Niokit took this view, raising due process and constitutional challenges to the Court's jurisdiction. (*Id.*) While none of those positions prevailed, presenting an aggressive, narrow, or difficult legal position that the Court ultimate rejects is not *ipso facto* sanctionable under Rule 11. *Mazurek v. Metalcraft of Mayville, Inc.*, 110 F.4th 938, 946 (7th Cir. 2024).

The other thing setting Niokit beyond the bounds of Rule 11 is that its positions—while rejected under *NBA*—were not frivolous. Determining personal jurisdiction is not a bright line process. "[T]he Supreme Court has warned explicitly" that the Court "must avoid" "'talismanic jurisdictional formulas'" as they "are not an acceptable instrument in the toolbox of a court assessing personal jurisdiction." *Stussy, Inc. v. Partnerships & Unincorporated Associations Identified on Schedule A.*, 2026 WL 1536818, at *4 (N.D. Ill. June 1, 2026) (quoting *NBA*, 46 F.4th at 624-25). Indeed, "the facts of each case must always be weighed in determining whether personal jurisdiction would comport with fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 485-86 (1985) (cleaned up). Niokit sought to do just that, but ultimately failed to distinguish *NBA* (at least implicitly at first) or reframe the question as a stream of commerce issue. (Dkt. 34). Furthermore, the research and effort behind Niokit's positions provides additional buffer against sanctions. Had Niokit filed a rote, unsupported, motion lacking law or reasoning, sanctions surely would have followed. *See Mazurek*, 110 F.4th at 946; *see also Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 957 (7th Cir. 2020) (upholding sanctions against a party that took a position "disregarding what anyone having taken a first-year contracts class could identify as the pivotal legal issues"). It did not. Stussy's Motion for Attorney's Fees is denied. (Dkt. 89). The parties are admonished that the Court's ruling here is narrow. Continued failure to address adverse case law will not be tolerated.

## IV. Counterclaims

Niokit has three counterclaims. First, cancellation of U.S. Trademark Registration Nos. 6,885,821, 7,115,443, and 5,291,490 under 15 U.S.C. §§ 1064 and 1119 for ornamentality and failing to function as a trademark. (Dkt. 82 at 12-13). Second, cancellation of U.S. Trademark Registration Nos. 6,885,821, 7,115,443, and 5,291,490 under 15 U.S.C. §§ 1064 and 1119 for lacking distinctiveness. (*Id.* at 13-15). Third, unfair competition under Illinois common law and 815 ILCS 510/2. (*Id.* at 15-16). Stussy moves to dismiss Niokit's three counterclaims. (Dkt. 93).

Stussy first asserts that Niokit's counterclaims arise under the Declaratory Judgment Act and must be dismissed because that Act creates no independent cause of action. (*Id.* at 2-3). It next asserts that Counts I and II are duplicative. (*Id.* at 3-4). It continues that Niokit's allegations for Counts I and II are insufficient to state a claim because they lack "specific facts or allegations as to the specific trademark registrations listed or any of the specific goods covered by each registration." (*Id.* at 4); (*see also id.* at 4-7) (remainder of arguments contending that Niokit's allegations are conclusory, generalized, and implausible). Stussy also notes that Reg. No. 5,291,490 is incontestable and thus the claims against it must fail. (*Id.* at 4). Stussy's last arguments are that its actions are protected under the *Noerr-Pennington* doctrine and that Niokit failed to plead unfair competition under Illinois law. (*Id.* at 7-11). The Court addresses each in turn.

A motion to dismiss counterclaims is governed by the same standard as a motion to dismiss a complaint. *Cozzi Iron & Metal, Inc. v. U.S. Off. Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001). The Court accepts "all well-pleaded allegations in the counterclaim as true and draw[s] all reasonable inferences in favor of the counterclaim plaintiff." *Id.*; *Miao v. United Airlines, Inc.*, 164 F.4th 622, 623 (7th Cir. 2026). The counterclaim "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quotes omitted). "This means that the [counterclaim] must offer factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Farhan v. 2715 NMA LLC*, 161 F.4th 475, 482 (7th Cir. 2025) (cleaned up). The Court will "not presume the truth of legal conclusions and conclusory allegations." *Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472, 475 (7th Cir. 2024). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Orr v. Shicker*, 147 F.4th 734, 741 (7th Cir. 2025) (quotes omitted).

The Declaratory Judgment Act does not create an independent cause of action. The "operation of the Declaratory Judgment Act is procedural only." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). Because "the Declaratory Judgment Act is not an independent source of federal subject matter jurisdiction . . . the district court must possess an independent basis for jurisdiction." *GNB Battery Techs., Inc. v. Gould, Inc.*, 65 F.3d 615, 619 (7th Cir. 1995); *Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.*, 929 F.3d 865, 871 n.2 (7th Cir. 2019); *DeBartolo v. Healthsouth Corp.*, 569 F.3d 736, 741 (7th Cir. 2009); 28 U.S.C. § 2201. Stussy stresses this point. (Dkt. 93 at 2-3). It is irrelevant. Niokit does not bring a standalone claim under the Declaratory Judgment Act. (Dkt. 82). Niokit asserts three Counts: the first under 15 U.S.C. §§ 1064, 1119; the second under 15 U.S.C. §§ 1064, 1119; and the third under Illinois Common Law and 815 ILCS 510. (*Id.* at 12-16). To be sure Niokit seeks declaratory relief (*see, e.g.*, *id.* at 8-9, 17-18); but it "does not matter that [Niokit] seeks declaratory, rather than monetary, relief" because "[d]eclaratory relief 'presupposes the existence of a judicially remediable right' and thus cannot be pursued without a predicate right of action." *Alarm Detection*, 929 F.3d at 871 n.2. Niokit alleges standalone claims under federal statute. (Dkt. 82 at 12-16). This forecloses Stussy's arguments.

Stussy's next argument—that Niokit's Counts I and II are duplicative with Stussy's complaint—is a nonstarter. (Dkt. 93 at 3). Stussy asserts that Niokit's Counts are "duplicative" because "they request a declaratory judgment of non-infringement and unenforceability." (*Id.*) Not so. Niokit's counterclaims seek to cancel Stussy's trademarks. (Dkt. 82 at 12-15). Cancellation asks whether a right exists; infringement asks whether that right was violated. Those are distinct inquiries, under different bodies, for different reasons. While perhaps trademark cancellation and unenforceability share similar DNA, that is insufficient. Stussy's point is further belied by its mistaken belief that Niokit filed an action under the Declaratory Judgment Act. (*See* Dkt. 93 at 3-4). (Dkt. 82). Stussy's positions built on this erroneous pretense collapse.

The bulk of Stussy's next arguments attack the allegations of Niokit's counterclaims, including that Niokit's Counts I and II against Trademark Reg. No. 5,291,490 must fail because that trademark is incontestable. (Dkt. 93 at 4-7). Start with incontestability. An incontestable trademark enjoys statutory protections and presumptions. *See* 15 U.S.C. §§ 1064, 1065; 15 U.S.C. § 1115(b). These issues need not be addressed because Niokit fails to challenge Stussy's assertion that Trademark Reg. No. 5,291,490 is incontestable. (Dkt. 97 at 5, 9-11, 18). Niokit instead asserts that its incontestability has no effect on Trademark Registration Nos. 6,885,821 and 7,115,443. (*Id.*) The Court will not construct arguments for Niokit and deems any position regarding the viability of Niokit's Counts I and II against Trademark Reg. No. 5,291,490 waived. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument" raised in a motion to dismiss "results in waiver."); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss"); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("An unresponsive response is no response."). The Court takes no position on whether Trademark Reg.

No. 5,291,490 is incontestable. Counts I and II as to Trademark Reg. No. 5,291,490 are dismissed without prejudice.

Stussy asserts that the Court should dismiss Count I (failure to function as a trademark/ornamentality) and Count II (lack of distinctiveness) as to Trademark Registration Nos. 6,885,821 and 7,115,443 because Niokit fails to allege "plausible facts showing that the mark is merely ornamental and does not function as a source identifier." (Dkt. 93 at 5). Stussy contends that Niokit fails to allege "provide factual allegations identifying the specific marks or registrations, the specific goods covered by each registration, how [Stussy] uses the marks on various goods, or how each registered mark is perceived by consumers in connection with the relevant goods." (*Id.*) As to distinctiveness, Stussy asserts that Niokit "failed to present any facts as to the relevant purchasing public's understanding of [Stussy's] marks and [Stussy's] use." (*Id.* at 7).

Niokit counters that it plausibly alleged "concrete historical and marketplace facts" supporting its "failure-to-function theory," such as that the "billiard 8-ball imagery is a common ornamental and cultural motif that predates Stussy's asserted registrations." (Dkt. 97 at 13). It identified "Mattel's prior federal registration involving a black 8-ball design" and explained that the use of 8-ball imagery in fashion began "with the well-known eight-ball jacket around 1990." (*Id.*) Taking these allegations, along with its allegations of "widespread third-party ornamental use of 8-ball imagery on clothing, rugs, bags, accessories, home décor, and other consumer products," Niokit maintains that its allegations are sufficient to survive a motion to dismiss. (*Id.*) At last, Niokit notes that "[q]uestions concerning whether consumers perceive a designation as ornamentation or as a source identifier are inherently factual and ordinarily require development of an evidentiary record." (*Id.* at 11).

Trademarks are source identifiers. They can be "any word, name, symbol, or device, or any combination thereof that a person uses to identify and distinguish his or her goods from those manufactured or sold by others and to indicate the source of the goods." *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 145 (2023) (cleaned up). They exist on a spectrum. They "may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). "The latter three categories of marks, because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection." *Id.* "In contrast, generic marks," and those that "are merely descriptive of a product[,] are not inherently distinctive" and are thus "not registrable as trademarks." *Id.* at 768-69. "However, descriptive marks may acquire the distinctiveness which will allow them to be protected under the Act." *Id.* at 769. "The general rule regarding distinctiveness is clear: An identifying mark is distinctive and capable of being protected if it *either* (1) is inherently distinctive *or* (2) has acquired distinctiveness through secondary meaning." *Id.*

"It is also clear that eligibility for protection under § 43(a) depends on nonfunctionality." *Id.* "Discussing trademarks, and in general terms, a product feature is functional, and cannot serve as a trademark, if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32 (2001) (cleaned up). A "functional feature is one the exclusive use of which would put competitors at a significant non-reputation-related disadvantage." *Id.* (cleaned up).

There is no doubt that Niokit conflates and misstates several legal theories between its two Counts, resulting in confusing redundancies. (Dkt. 82, ¶¶ 28-80). Yet this does not warrant dismissal. "Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. Rule Civ. Proc. 8(a)(2); they do not countenance dismissal of

a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (cleaned up). Niokit's allegations satisfy this standard.

Niokit puts Stussy on fair notice that it seeks to cancel Trademark Reg. Nos. 6,885,821 and 7,115,443 because Niokit alleges that they are not trademarks but merely ornamental. (Dkt. 82, ¶¶ 28-80). Niokit also puts Stussy on fair notice that it seeks to cancel these trademarks alleging that they lack distinctiveness—i.e., they are generic or merely descriptive but lacking secondary meaning. (*Id.*) Stussy's assertion that "[t]o have adequately pled cancellation due to ornamentality, [Niokit] must have alleged specific, plausible facts showing that the mark is merely ornamental and does not function as a source identifier," is erroneous and otherwise fails because Niokit does just that. (Dkt. 93 at 5). For Count I, Niokit alleges that the trademarks "fail to function as trademarks because relevant consumers would perceive the designs as decorate billiard-ball motifs rather than as designations of Stussy as source." (Dkt. 82, ¶ 49). Niokit also alleges that "[t]he asserted registrations, as pleaded and enforced by Stussy in this case, improperly claim exclusive trademark rights in a common ornamental design motif." (*Id.*, ¶ 48); (*see also id.*, ¶ 34). Niokit provided historical and contemporary support for its allegations that Stussy's trademarks are ornamental. (*See, e.g.*, *id.*, ¶¶ 35-37); (*see also* Dkts. 82-1 *through* 82-2).

Stussy's positions concerning lack of distinctiveness—that Niokit's allegations are general, conclusory, and fail to show that "consumers would not perceive the specific version of Plaintiff's mark as source-identifying when applied to the relevant goods"—again miss the mark. (Dkt. 93 at 7). For Count II, Niokit alleges that the asserted marks constitute a "common design, symbol, or motif that consumers do not perceive as identifying a single commercial source" and are therefore

not protectable absent sufficient acquired distinctiveness." (Dkt. 82, ¶ 55). It continues that "the asserted 8-ball design is not inherently distinctive as a source identifier for Stussy." (*Id.*, ¶ 57); (*see also id.*, ¶¶ 56, 59); (Dkt. 82-1); (Dkt. 82-2).

No more is required at the pleading stage. On a motion to dismiss the "court instead asks only whether the [counterclaims'] factual allegations, if taken as true, state a claim to relief that is plausible on its face." *Berk v. Choy*, 607 U.S. 187, 193 (2026) (quotes omitted). Counterclaims "that satisf[y] this standard [are] well-pleaded and may proceed even if [they] strike[] a savvy judge that actual proof of the facts alleged is improbable." *Id.* (quotes omitted). "By design, this system of pleading makes it relatively easy for plaintiffs to subject defendants to discovery—even for claims that are likely to fail." *Id.* at 194. The remainder of Stussy's arguments—all based on irrelevant, non-binding, out-of-circuit law—fail. *Id.*

Stussy's last two arguments fixate on Niokit's third Count (unfair competition under Illinois common law and 815 ILCS 510/2). (Dkt. 93 at 8-11). Stussy asserts that the Court must dismiss Count III because it is barred by the *Noerr-Pennington* doctrine and fails to plausibly plead a claim of unfair competition. (*Id.*) The Court provides no opinion on the *Noerr-Pennington* doctrine because Niokit's allegations fail under Illinois law.

Niokit's third counterclaim is built on allegations that Stussy wrongfully filed a sham lawsuit against it. (Dkt. 82). "Under Illinois law, the only cause of action recognized for the wrongful filing of a lawsuit is one for malicious prosecution or abuse of process." *Havoco of Am., Ltd. v. Hollobow*, 702 F.2d 643, 647 (7th Cir. 1983) (citing *Lyddon v. Shaw,* 56 Ill.App.3d 815 (2d Dist. 1978)). Niokit "has not cited an Illinois case in which an unfair competition claim was successfully asserted on the basis that the defendant had improperly used litigation as a means of competition." *See Harris Custom Builders, Inc. v. Hoffmeyer*, 834 F. Supp. 256, 262 (N.D. Ill.

1993) (dismissing counterclaim for unfair competition based on allegations that plaintiff "wrongfully pursued an infringement action" against the defendant); *see also Knoll Pharms. Co. v. TEVA Pharms. USA, Inc.*, 2001 WL 1001117, at *2 (N.D. Ill. Aug. 24, 2001) (dismissing unfair competition counterclaim based solely on Plaintiffs' prosecution of an infringement lawsuit); *DreBest PTE Ltd. v. Ink & Rags LLC*, 2026 WL 2920956, at *6-8 (N.D. Ill. Sept. 29, 2026) (dismissing claims under similar circumstances); *Ybarra v. Centrust Bank, N.A.*, 2024 IL App (1st) 232072-U, ¶ 42 ("Illinois recognizes only two causes of action, malicious prosecution and abuse of process, for the wrongful filing of a lawsuit.").

Niokit asserts that common law unfair competition is an elusive, ill-defined cause of action that encompasses theories where one party interferes with another party with conduct that "shocks judicial sensibilities" and "violates standards of commercial morality." (Dkt. 97 at 17) (quoting *Int'l Star Registry of Illinois, Ltd. v. RGIFTS Ltd.*, 2025 WL 2766304, at *6 (N.D. Ill. Sept. 26, 2025)). Under this flexible standard, it maintains that its allegations survive dismissal. *Id.* The problem with this position is that, unlike in *Int'l Star Registry*, Niokit's unfair competition claims are based solely on Stussy's litigation. (Dkt. 82, ¶¶ 64-80). Even if Niokit alleges that the lawsuit is a sham and even if that qualifies as something that "shocks judicial sensibilities," none of this escapes the fact that "[u]nder Illinois law, the only cause of action recognized for the wrongful filing of a lawsuit is one for malicious prosecution or abuse of process." *Havoco*, 702 F.2d at 647; *Pantone v. Demos,* 59 Ill. App. 3d 328, 331 (1978); *Lyddon*, 56 Ill. App. 3d at 821-22; *Ybarra*, 2024 IL App (1st) 232072-U, ¶ 42. Niokit also fails to address how its claims survive under 815 ILCS 510/2 and thus has waived any argument. *Supra* at 3, n.1. Count III is dismissed without prejudice.

**CONCLUSION**

The Court denies Niokit's Motion to Vacate the Preliminary Injunction (Dkt. 71), grants in part Niokit's Motion for Reconsideration of the Court's Order Granting Expedited Discovery (Dkt. 75), denies Stussy's Motion for Attorney's Fees (Dkt. 89), and grants in part Stussy's Motion to Dismiss Niokit's Counterclaims. (Dkt. 93).

Virginia M. Kendall
United States District Judge

Date: November 12, 2026

*Friend v. P'ships et al.*, No. 26-cv-05581, Dkt. 103 (N.D. Ill. Oct. 22, 2026) (Order)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALISON FRIEND,<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,<br><br>Defendants. | ) | 26 C 5581<br><br>Judge Charles P. Kocoras |

**ORDER**

Plaintiff Alison Friend's motion for preliminary injunction against Defendant amoiss.com [28] is denied to the extent seeks an overbroad asset restraint but granted in all other respects. The asset restraint will be limited to $38.48. Plaintiff is instructed to submit a revised preliminary injunction order by October 30, 2026. The Court will sever the claims against Defendant amoiss.com into a separate action. In doing so, Plaintiff will be required to pay a new filing fee. The Court will transfer documents in this action to that new matter. Before issuing the severance order, however, the Court will wait to see if Plaintiff and Defendant can resolve this matter. By November 6, 2026, the parties shall file a joint status report on whether this matter can be resolved prior to the Court requiring the Clerk to open a new case. See Statement for details.

**STATEMENT**

## I. Background

Friend is an artist and the owner of thirteen federal copyright registrations that protect the creative content of her animal illustrations. Defendants, including amoiss.com, are foreign entities who allegedly sell or offer for sale products in connection with Friend's illustrations.



amoiss.com's Alleged Infringing Shirt




Friend's Copyrighted Artwork

Dkt. # 60-3, 68-3.

To protect her illustrations and copyrights, Friend filed this action against 34 defendants, including amoiss.com, alleging "each Defendant has violated Plaintiff's exclusive rights of reproduction, distribution, and public display under the Copyright Act." Dkt. # 1, ¶ 20; 17 U.S.C. §§ 106(1), (2), (3), (5).

The Court granted Friend's *ex parte* motion for a temporary restraining order ("TRO") on May 15, 2026. The TRO was extended through June 12, 2026, and Friend moved for preliminary injunction on May 28, 2026. On June 10, 2026, amoiss.com appeared and moved for leave to file an opposition to the motion for preliminary

injunction. The same day, the Court granted the motion for preliminary injunction against all but three defendants, including amoiss.com. On June 12, 2026, amoiss.com filed its response in opposition to the motion for preliminary injunction. Friend thereafter filed her reply on July 1, 2026.

## II. Legal Standard

A preliminary injunction is "an extraordinary remedy" that is "never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc*. 555 U.S. 7, 24 (2008). "To obtain a preliminary injunction, a plaintiff must show that it is likely to succeed on the merits, and that traditional legal remedies would be inadequate, such that it would suffer irreparable harm without the injunction." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021). "The two most important considerations are likelihood of success on the merits and irreparable harm." *Bevis v. City of Naperville*, 85 F.4th 1175, 1188 (7th Cir. 2023). Once the plaintiff has made this showing, the Court balances "the harm of denying an injunction to the plaintiff against the harm to the defendant of granting one." *Id.* The Court also considers the public interest. *Id*

## III. Discussion

### a. Preliminary Injunction

#### i. Likelihood of Success on the Merits

"To establish copyright infringement, one must prove two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007)

(internal quotations and citations omitted). Friend alleges she owns thirteen registered copyrights and that amoiss.com listed and sold infringing products. Friend provided pictures of her artwork and the alleged infringing shirt (see above). Amoiss.com does not address the likelihood of success on the merits in its opposition or dispute Friend's contentions as to this element. As such, the Court finds Friend has demonstrated likelihood of success of the merits.

**ii. Irreparable Harm**

Friend need only show a minimal likelihood of irreparable harm to warrant renewed injunctive relief. *See Antsy Labs, LLC v. Individuals, Corps., Ltd. Liab. Companies, P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, 2022 WL 17176498, at *4 (N.D. Ill. 2022). Although there is no presumption of irreparable harm, *see id.*, Friend has made an adequate showing.

Friend has demonstrated irreparable harm through the inability to control creative content protected by the copyright, devaluation of her works by associating them with inferior quality goods, and the questionable future ability to develop further artwork and markets for the works if the public develops an impression that infringement may be undertaken with impunity. Dkt. # 14, at 10–11; *see Antsy Labs, LLC*, 2022 WL 17176498 at *3 (finding irreparable harm where the plaintiff demonstrated harm to "goodwill, reputation, brand confidence, potential lost market share, and relinquished control of nature and quality of germane products in connection with their copyright."). "[I]t is well established that the loss of goodwill and reputation,

if proven, can constitute irreparable harm." *Life Spine, Inc.,* 8 F.4th at 546; *see also* 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2948.1 (3d ed. 2002 & April 2021 Supp.) ("Injury to reputation or goodwill is not easily measurable in monetary terms, and so often is viewed as irreparable.").

Amoiss.com argues that because it ceased selling the accused product and sworn to not sell it again in the future, there is no likelihood of irreparable harm. However, "cessation of an unlawful practice doesn't exonerate a defendant, since unless enjoined he might resume infringing." *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 762 (7th Cir. 2012). As such, "a bare promise by a party during litigation to discontinue past or ongoing misconduct 'does not justify denial of injunctive relief, since such unilateral action hardly suffices to ensure that the party will not, in the future, reverse course and resume its challenged activities.'" *Bose Corp. v. The P'ships Identified on Schedule A*, 2026 WL 2364450, at *4 (N.D. Ill. 2026) (quoting *3M Co. v. CovCare, Inc.*, 537 F. Supp. 3d 385, 404 (E.D.N.Y. 2021)). Given the Court will not rest on a bare promise, Friend has shown a likelihood of irreparable harm to warrant continued injunctive relief.

**iii. Public Interest**

A preliminary injunction would serve the public interest. Given the similarity between the allegedly infringing shirt and Friend's artwork, Friend has demonstrated a likelihood of confusion from amoiss.com's use of Friend's artwork. The Court finds that the public interest would be served by an injunction to prevent such confusion. *See Ty, Inc. v. GMA Accessories, Inc.*, 959 F. Supp. 936, 945 (N.D. Ill.) ("[T]he public should

not be deceived into participating in 'competition' by purchasing one product, thinking it is a different product. Confusion in the marketplace and of consumers inevitably results from copyright infringement."), *aff'd*, 132 F.3d 1167 (7th Cir. 1997).

"[T]he public interest is served by upholding copyright protections against those who would seek to misappropriate protected works." *In re Aimster Copyright Litig.*, 252 F. Supp. 2d at 665. "[C]opyright laws embody a policy of encouraging creativity[;]" a public interest. *Id.* at 648. To encourage artists such as Friend, granting a preliminary injunction is favored. *See id.* In sum, the public's interest in avoiding confusion in the marketplace and in encouraging creativity for artists such as Friend weighs in favor of preliminary injunction.

**iv. Balance of Harms**

However, the balance of harms is not supportive of a preliminary injunction, in the form Friend has proposed. The Court must "balance[ ] the respective irreparable harms that may result to each party if an injunction is granted or denied." *Ty, Inc. v. Jones Grp., Inc.,* 237 F.3d 891, 902 (7th Cir. 2001). "The strength of the moving party's likelihood of success on the merits affects the balance of harms. The more likely it is that the moving party will win its case on the merits, the less the balance of harms need weigh in its favor." *Planned Parenthood of Ind., Inc. v. Comm'r of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012) (cleaned up).

Amoiss.com contends the hardship imposed by renewing the freeze of its restrained account is disproportionately high. Amoiss.com says it only made $38.48

from the infringing product, an amount so minimal that freezing a large account would impose great hardship. Amoiss.com's restrained account identified by Friend in the previous TRO contains $17,625.67. Amoiss.com provides screenshots of its store account, which display one sale of the infringing shirt and its price, and a declaration that its assets, other than the $38.48, are not connected to the alleged infringement.

An asset freeze is available where a plaintiff seeks an equitable remedy, as Friend seeks here such as accounting and profits. *Lorillard Tobacco Co. v. Montrose Wholesale Candies*, 2005 WL 3115892, at *13 (N.D. Ill. 2005). However, the Court shares amoiss.com's concerns that a freeze of $17,625.67 is too far reaching and may very well reach beyond Friend's equitable remedy entitlement.

Friend argues that amoiss.com has the burden to present evidence exempting assets from an asset freeze, and amoiss.com provided insufficient evidence. However, in the cases relied on by Friend, the defendants had moved for modification of an existing asset freeze, rather than the plaintiff moving for preliminary injunction. *See Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015); *Antsy Labs, LLC*, 2022 WL 17176498, at *4; *Johnson & Johnson v. Advanced Inventory Mgmt., Inc.*, 2020 WL 8260381, at *2 (N.D. Ill. 2020). In this case, the TRO expired, there is no current asset freeze in place, and Friend is the moving party for this preliminary injunction. Therefore, it is Friend's burden to identify the proceeds it seeks to enjoin with a sufficient degree of specificity. *See Stanley Black & Decker, Inc. v.*

*P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 2026 WL 2454301, at *5 (N.D. Ill. 2026). Friend has not done so and instead seeks a blanket asset freeze.

Friend contends that although amoiss.com claims it only made $38.48 in profit, this is unreliable and without a full transaction log for the account, the whole account should be frozen. However, "it is not reasonable to freeze any and all of defendant-storefronts' assets—on the theory that the amount of their profits is unknown—when, as far as the Court knows, [Plaintiff] has made no effort to calculate those profits." *WHAM-O Holding, Ltd. et al. v. The Individuals, Corps., Ltd. Liab. Cos., P'ships and Unincorporated Ass'ns Identified in Schedule A*, Case No. 24-cv-12523 (N.D. Ill. Feb. 20, 2025), Dkt. # 38, at 6 (Alexakis, J.). *See also Stanley Black & Decker, Inc.,* 2026 WL 2454301, at *5 (finding the asset restraint reasonable for a preliminary injunction when the plaintiff presented evidence of the defendants' revenue from infringing products). With some discovery, Friend could ascertain the profits and ask the Court to impose a propositional asset restraint, if warranted. This is the more appropriate path. *See Takayoshi v. The Individuals, Corps., Ltd. Liab. Cos., P'ships and Unincorporated Ass'ns Identified on Schedule A Hereto*, Case No. 19-cv-5317 (N.D. Ill. Aug. 29, 2019), Dkt. # 42, at 4 ("[T]he appropriate scope of prejudgment restraint must be limited only to what is reasonably necessary to secure the (future) equitable relief.") (Chang, J.).

Despite Friend's likelihood of success on the merits, among other considerations, Friend has not identified amoiss.com's proceeds from the infringement it seeks to enjoin

with sufficient specificity. The asset restraint sought on the entire restrained account is too burdensome given the lack of evidence provided. Because the harm of an overbroad asset restraint is significant, the balance of harms weighs against a preliminary injunction, but only in the form Friend has proposed. A limited asset restraint would tip the balance back in Friend's favor. As such, the Court will grant the motion for preliminary injunction, but the asset restraint will be limited to $38.48—for now.

Should discovery uncover relevant, contradictory evidence of additional profits, Friend may move to modify the asset restraint with more specific evidence.

For all of these reasons, Friends's motion for preliminary injunction against amoiss.com is granted in part and denied in part.

**b. Amoiss.com's Request for Dismissal**

As a separate matter, in opposing Friend's motion, amoiss.com argues the claims against it should be dismissed for insufficient service of process and improper joinder. Both arguments are unpersuasive.

**i. Insufficient Service of Process**

Amoiss.com argues that under the Hague Service Convention and *Kangol LLC v. Hangzhou Chuanyue Silk Imp. & Exp. Co.*, it was not properly served, and thus there is no personal jurisdiction, injunctive relief cannot be granted, and the case should be dismissed. *See* 177 F.4th 793, 800–02 (7th Cir. 2026).

Under Rule 65(a), "[t]he court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). Notice, not formal service of process,

is required. *See H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 842, 846 (7th Cir. 2012); *Netflix, Inc. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 2026 WL 2676795, at *3 (N.D. Ill. 2026); *Stanley Black & Decker, Inc.*, 2026 WL 2454301, at *5.

Here, Friend filed her complaint and moved for service by email on May 14, 2026. The Court granted that motion on May 15, 2026, and Friend sent out service of process the same day to the e-mail addresses associated with Defendants' accounts at the Amazon, Temu, SHEIN, and PayPal marketplaces.[1] On May 28, 2026, Friend moved for the entry of a preliminary injunction. Amoiss.com appears to have received those emails, given that it then entered its appearance and sought leave to file an opposition to the preliminary injunction on June 10, 2026. On June 12, 2026, amoiss.com filed its opposition. Given these actions, amoiss.com clearly had notice of Friend's motion for preliminary injunction and Rule 65(a) was satisfied. *See Stanley Black & Decker, Inc.*, 2026 WL 2454301, at *5 (where counsel for defendants appeared and had opportunity to oppose the preliminary injunction, the Court found adequate notice was present).

---

[1] The Court granted the motion for electronic service on May 15, 2026, and the Seventh Circuit Court of Appeals issued its opinion in *Kangol LLC* clarifying the standard for service under Hague Convention on May 29, 2026. *See* 177 F.4th 793. Given *Kangol*'s holding and that the motion was granted without the benefit of adversarial presentation, the Court is willing to entertain argument on the issue of service if properly raised in a motion to dismiss. For purposes of the instant motion, what matters is notice, which aomiss.com received.

As to improper service and personal jurisdiction beyond the preliminary injunction, amoiss.com may raise those issues in a motion to dismiss. *See id.* (directing defendants to raise improper service under the Hague Convention in a motion to dismiss, not at the preliminary injunction stage).

**ii. Improper Joinder**

Under Rule 20(a)(2), defendants may be joined if, (1) the claims asserted against them arise "out of the same transaction, occurrence, or series of transactions or occurrences;" and (2) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Here, Friend bears the burden of demonstrating joinder is proper under Rule 20(a)(2). *See Damian v. EIN CAP, Inc.*, 2023 WL 2561586, at *2 (N.D. Ill. 2023). The Court has wide discretion in determining joinder of parties and joinder is strongly encouraged to promote judicial efficiency. *Id.*; *see also Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000) ("The purpose of Rule 20(a) in permitting joinder . . .is to enable economies in litigation[.]").

Friend alleges all 34 named Defendants are operating under the same series of occurrences. She argues amoiss.com is part of "a cluster of sellers all gravitating toward the same small portfolio of copyrighted works owned by Plaintiff." Dkt. # 68, at 7. However, this kind of similar infringement by multiple defendants, does not necessarily make each instance part of the same occurrence.[2] Here, there are numerous distinct

---

[2] This case is distinguishable from *Bose Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, where the Court found with many small injuries originating from numerous unrelated defendants, the defendants create a "swarm," and joinder was proper. 334 F.R.D. 511,

defendants, and even though the harm (copyright infringement) may look similar, Friend must allege something more. "While the law of joinder does not necessarily require temporal overlap or specific knowledge of other defendants, it does require more than mere allegations that two or more unrelated defendants stole the same product in the same way without ever interacting with one another." *Malibu Media, LLC v. Reynolds*, 2013 WL 870618, at *13 (N.D. Ill. 2013); *see Chrome Hearts LLC*, 2026 WL 1382792, at *5. "[C]ommitting the same type of violation in the same way does not link defendants together for the purposes of joinder." *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 998 (D.C. Cir. 2014); *see also Roadget Bus. Pte. Ltd. v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, 735 F. Supp. 3d 981, 985 (N.D. Ill. 2024). This is all Friend has alleged, and thus joinder of amoiss.com was improper.

However, the relief amoiss.com seeks—dismissal of Friend's claims with prejudice for improper joinder—is not appropriate. *See UWM Student Ass'n*, 888 F.3d at 857. Instead, the Court shall address the violation of Rule 20(a) through severance. *See Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012); *Bose Corp. v. P'ships Identified on Schedule A*, 2026 WL 2364450, at *6 (N.D. Ill. 2026)

---

517 (N.D. Ill. 2020). However, where defendants appear and challenge joinder, they distinguish themselves from the swarm and should be severed. *Chrome Hearts LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 2026 WL 1382792, at *4 (N.D. Ill. 2026). This is the case here where amoiss.com has distinguished itself from the swarm as a distinct entity with no connection to the other defendants.

("Severance is the better course here because dismissal would lift the preliminary injunction."). Amoiss.com's request for dismissal for improper joinder is denied.

## CONCLUSION

Plaintiff Alison Friend's motion for preliminary injunction against Defendant amoiss.com [28] is denied to the extent seeks an overbroad asset restraint but granted in all other respects. Friend is directed to file a revised proposed preliminary injunction order with an asset restraint provision limited to profits from sales of the infringing product, $38.48, by October 30, 2026. Friend may file a future motion to amend the preliminary injunction's asset restraint provision if limited discovery uncovers relevant evidence of additional profits.

Because the Court finds joinder of Defendant amoiss.com was improper, the Court will sever the claims against Defendant amoiss.com into a separate action. In doing so, Friend will be required to pay a new filing fee. The Court will transfer documents in this action to that new matter. Before issuing the severance order, however, the Court will wait to see if Plaintiff and amoiss.com can resolve this matter. By November 6, 2026, the parties shall file a joint status report on whether this matter can be resolved prior to the Court requiring the Clerk to open a new case.

It is so ordered.

Charles P. Kocoras
United States District Judge

Date: October 22, 2026

*Bose Corp. v. P'ships et al.*, No. 26-cv-00011, Dkt. 115 (N.D. Ill. Aug. 14, 2026) (Memorandum Opinion and Order)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BOSE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS IDENTIFIED ON SCHEDULE A,<br><br>Defendants. | Case No. 1:26-cv-00011<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Bose Corporation ("Bose") brings an action for violations of the Lanham Act, 15 U.S.C. § 1114, *et seq.*, and the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"), 815 ILCS § 510, *et seq*. by various Defendants. Defendant ChuangTuTu ("ChuangTuTu") moves to dissolve the preliminary injunction entered against it and dismiss for misjoinder. [78]. For the reasons explained, the motion [78] is granted in part.

### I. Background[1]

Bose manufactures and sells a variety of audio equipment, including headphones and earbuds, along with merchandise related to the Bose brand (collectively, the "Bose Products"). [13-1] ¶ 5. Bose is the owner and rights holder of several federally

[1]The facts herein are taken from Bose's Complaint [1] [2], motion for entry of a temporary restraining order [12] [13], motion for preliminary injunction [24], response brief [88], ChuangTuTu's opening brief [79], reply brief [90], and the exhibits, declarations, and attachments accompanying those filings. The Court makes "factual determinations on the basis of a fair interpretation of the evidence before the court." *Darryl H. v. Coler*, 801 F.2d 893, 898 (7th Cir. 1986). Yet these findings are preliminary and "do not bind the district court as the case progresses." *Mich. v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 782 (7th Cir. 2011).

registered trademarks, including “Bose” (the “Bose Trademark”), and maintains the exclusive rights to develop, manufacture, distribute, license, promote, offer for sale, and sell the Bose Products in connection with the Bose Trademark. *Id.* ¶¶ 6–7.

ChuangTuTu[2] is a Chinese company that sells products on Amazon, some of which reference “Bose” in their product listing titles (the “ChuangTuTu Products”). [80] ¶¶ 4–5; [13-4] at 24–33. Below is a screenshot of a ChuangTuTu Product as it appeared on ChuangTuTu’s Amazon storefront on September 9, 2025:




[13-4] at 28.

On January 5, 2026, Bose filed this action alleging, among other things, that ChuangTuTu used the Bose Trademark in commerce without authorization. [2] ¶¶ 46–56. On January 23, 2026, Bose moved *ex parte* for a temporary restraining order

[2]Technically speaking, ChuangTuTu is the name of the Amazon storefront, and Changsha Shi Chuang Tu E-commerce Co., Ltd is the company that operates the storefront. [80] ¶ 3. For simplicity’s sake, the Court will refer to the defendant here as “ChuangTuTu.”

("TRO") [12] [13], which this Court granted on January 26, 2026. [17]. On February 18, 2026, Bose moved to convert the TRO into a preliminary injunction, [24], which this Court entered with respect to ChuangTuTu on March 18, 2026. [49].

On April 28, 2026, ChuangTuTu moved to dissolve the preliminary injunction and dismiss for improper joinder. [78].

## II. Dissolution of the Preliminary Injunction

Courts consider the same factors for dissolving a preliminary injunction as those applied when granting or denying one in the first place. *Innovation Indus., LLC v. Partnerships Identified on Schedule A*, 807 F. Supp. 3d 844, 849 (N.D. Ill. 2025). "To obtain a preliminary injunction, a plaintiff must show that it is likely to succeed on the merits, and that traditional legal remedies would be inadequate, such that it would suffer irreparable harm without the injunction." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021). Once the plaintiff has made this showing, the Court balances "the harm of denying an injunction to the plaintiff against the harm to the defendant of granting one." *Id.* The Court also considers the public interest. *Id.*

ChuangTuTu contends that Bose failed to satisfy these requirements and thus the preliminary injunction must be dissolved. For the reasons below, the Court disagrees.

### A. Likelihood of Success on the Merits

To prevail on a Lanham Act trademark infringement claim[3], a plaintiff must establish that (1) it has a protectable trademark; (2) the defendant is not authorized

[3]Bose also brings false designation of origin and IUDTPA claims. As a preliminary injunction only requires a likelihood of success on at least one claim, *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1096 (7th Cir. 2008), the Court does not reach those claims.

to use the mark; and (3) the defendant's use of the mark is likely to cause confusion among consumers. *Luxottica Grp. S.p.A. v. Light in the Box Ltd.*, No. 16-cv-05314, 2016 WL 11940344, at *1 (N.D. Ill. Sept. 6, 2016).

The first two elements are satisfied. Registration of the Bose Trademark is *prima facie* evidence of its validity and Bose has not authorized ChuangTuTu to use the Bose Trademark. [13-1] ¶¶ 6, 13; *Walgreen Co. v. Walgreen Health Sols., LLC*, No. 23-cv-17067, 2024 WL 4278101, at *4 (N.D. Ill. Sept. 24, 2024). ChuangTuTu does not contest either of these elements.

The third element is also satisfied. The Seventh Circuit employs a seven factor test[4] to determine whether consumers are likely to be confused: "(1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and (7) the intent of the defendant to 'palm off' his product as that of another." *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No single factor is dispositive, and courts may assign varying weight to each of the factors depending on the facts presented. *Id.*

The first factor asks whether "the viewer of an accused mark would be likely to associate the product or service with which it is connected with the source of products

[4]The Court recognizes that where, as here, a defense of nominative fair use is raised, application of the traditional multi-factor test for likelihood of confusion is difficult because many factors often "are either unworkable or not suited or helpful as indicators of confusion in this context." *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 154 (4th Cir. 2012) (citation omitted). Without guidance from the Seventh Circuit, however, this Court will not depart from the standard seven factor test.

Case: 1:26-cv-00751 Document #: 51 Filed: 03/16/26 Page 5 of 13 PageID #:856

or services with which an earlier mark is connected." *Id.* at 930 (citation omitted). "The court should therefore consider whether the customer would believe that the trademark owner sponsored, endorsed or was otherwise affiliated with the product." *Id.* (cleaned up). The Court finds that a reasonable customer would affiliate the ChuangTuTu Products with Bose. In the challenged Amazon listing titles, the "Bose" mark appears as a noun at the leading position of each title. [13-4] at 24–33. Because consumers ordinarily read the leading noun in a product title as the brand of the item being sold, a consumer encountering these listings would understand Bose to be affiliated with the ChuangTuTu Products. This factor therefore favors Bose.

The second factor asks whether the parties' products "are the kind the public might very well attribute to a single source (the plaintiff)." *AutoZone*, 543 F.3d at 931 (citation omitted). The ChuangTuTu Products relate to headphones and earbuds. [13-4] at 24–33. Bose sells headphones and earbuds. [13-1] ¶ 5. A reasonable consumer, therefore, may believe that Bose produced the ChuangTuTu Products. This factor too favors Bose.

The third factor asks "whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties." *AutoZone*, 543 F.3d at 932 (citation omitted). ChuangTuTu sells the ChuangTuTu Products online. [80] ¶ 5. Bose sells the Bose Products online and through authorized retailers. [13-1] ¶ 8. Thus, both parties target the same customer base: people looking to purchase products related to headphones and earbuds online. The third factor favors Bose.

As to the fourth factor "[t]he more widely accessible and inexpensive the products ... the more likely that consumers will exercise a lesser degree of care and discrimination in their purchases." *AutoZone*, 543 F.3d at 933 (citation omitted). The ChuangTuTu Products are widely accessible for anyone to purchase on Amazon and are sold for less than $10. [13-4] at 24–33. This factor also favors Bose.

For the fifth factor, "[t]he stronger the mark, the more likely it is that encroachment on it will produce confusion." *AutoZone*, 543 F.3d at 933 (citation omitted). Bose is globally recognized brand that spends over $10 million dollars annually marketing and promoting Bose Products that bear the Bose Trademark. [13-1] ¶¶ 4, 8, 9, 10. This factor too favors Bose.

The sixth factor asks whether there is any evidence of actual consumer confusion. Neither party presents evidence of actual confusion. This factor is neutral.

The seventh factor asks whether the defendant attempted to pass off its product as having come from the plaintiff. *Sorensen v. WD-40 Co.*, 792 F.3d 712, 731 (7th Cir. 2015). Passing off is a type of fraud in which the defendant "tr[ies] to get sales from a competitor by making consumers think that they are dealing with that competitor, when actually they are buying from the passer off." *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 940 (7th Cir. 1986). Though ChuangTuTu admits that it uses the Bose Trademark to describe its products' compatibility with certain Bose Products, the Court cannot say that this, standing alone, rises to the level of an intent to deceive consumers into believing Bose is the seller of their products. As Bose presents no other evidence of intent, the Court will not consider this factor. *Sands,*

*Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 961 (7th Cir. 1992) ("[a] defendant's intent is relevant to the issue of likelihood of confusion only if he intended to palm off his products as those of another, thereby profiting from confusion.") (quotations omitted).

In sum, five factors weigh in Bose's favor, and no factor weighs in ChuangTuTu's favor. On balance, therefore, the Court finds that Bose has shown a likelihood of success on its trademark infringement claim.

ChuangTuTu nevertheless maintains that Bose cannot show a likelihood of success because the doctrine of "nominative fair use" bars Bose's claim. This doctrine is an affirmative defense. *Tireboots by Universal Canvas, Inc. v. Tiresocks, Inc.*, No. 20-cv-7404, 2021 WL 5833986, at *3 (N.D. Ill. Dec. 9, 2021) (J. Rowland).[5] This means to dissolve Bose's preliminary injunction based on such a defense, it is ChuangTuTu—not Bose—who bears the burden of showing likelihood of success. *Anderson v. Larry*, No. 21-cv-944, 2021 WL 4745390, at *15 (N.D. Ill. Oct. 12, 2021).

ChuangTuTu has not met its burden. The Seventh Circuit has not formally endorsed the doctrine of nominative fair use. [75] at 12. But assuming that the defense is available, to prevail on it, ChuangTuTu "must show that: 1) the product in question is not readily identifiable without use of the trademark; 2) only so much of the mark is used as reasonably necessary to identify the product; and 3) the user of

[5]Most judges in this district treat nominative fair use as an affirmative defense. [75] at n.4 (collecting cases). It appears only one judge has found otherwise. *Data Mgmt. Ass'n Int'l v. Enter. Warehousing Sols., Inc.,* No. 20 C 04711, 2020 WL 7698368, at *2 (N.D. Ill. Dec. 28, 2020) (J. Tharp). Without any authority from the Seventh Circuit, this Court, like it did in *Tireboots*, adopts the majority approach and treats nominative fair use as an affirmative defense.

the mark did nothing that would suggest sponsorship by the trademark holder." *Slep-Tone Ent. Corp. v. Coyne,* 41 F. Supp. 3d 707, 717 (N.D. Ill. 2014). At a minimum, ChuangTuTu fails prong two: it provides no evidence indicating why the ChuangTuTu Products need to incorporate the Bose Trademark as nouns in their product listing titles—the exact location where source-identifying information is generally found. Indeed, if ChuangTuTu wished to reference its products' compatibility with certain Bose Products, it could use the Bose Trademark as an adjective or disclose that information in the "Compatible Devices" section of its products' description. [88] at 8. ChuangTuTu offers no evidence for why it is "reasonably necessary" for the Bose Trademark to appear as a noun in its product listing titles to "identify the product." *Slep-Tone*, 41 F. Supp. 3d at 717. Without such evidence, ChuangTuTu has failed to demonstrate likelihood of success.

In sum, Bose has demonstrated a likelihood of success on the merits of its trademark infringement claim, and ChuangTuTu has failed to demonstrate likelihood of success on the merits of its fair use defense.

**B. Irreparable Harm**

Bose has also sufficiently demonstrated irreparable harm. For preliminary injunctions based on Lanham Act trademark infringement claims, the plaintiff is "entitled to a rebuttable presumption of irreparable harm upon a finding … of likelihood of success on the merits." 15 U.S.C. § 1116(a); *AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 805 (7th Cir. 2002) (there is a "presumption that trademark dilution or infringement threatens irreparable injury for which there

is no adequate remedy at law."). As Bose has demonstrated a likelihood of success on the merits of its trademark infringement claim, it is entitled to the presumption here.

ChuangTuTu makes two arguments in opposition. The first is that under *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006), there is no longer an automatic presumption of irreparable harm in trademark cases. While this may be true for patents and copyrights, *see Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012), the Seventh Circuit has continued to apply the presumption in trademark cases. *See Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 741 (7th Cir. 2013). Even so, courts in this district have expressed doubt on whether the presumption is still viable in trademark actions. *See, e.g.*, *Mkt. Track, LLC v. Efficient Collaborative Retail Mktg., LLC,* No. 14 C 4957, 2015 WL 3637740, at *23 n.20 (N.D. Ill. June 11, 2015) (collecting cases). Given, however, the Seventh Circuit's post-*eBay* reliance on the presumption and because the Seventh Circuit has not addressed or overturned its precedents applying the presumption in trademark cases, this Court will continue to apply the presumption here. *Brithric Enters., LLC v. Bay Equity LLC*, No. 20-cv-04696, 2021 WL 1208957, at *10 (N.D. Ill. Mar. 31, 2021) (doing the same).

ChuangTuTu also avers that there is no likelihood of future irreparable harm because it has promised, via a sworn declaration, that it will not sell the ChuangTuTu Products in the future, use the Bose Trademark, or imply that its products are affiliated with Bose. [80] ¶¶ 19–22. Yet a bare promise by a party during litigation to discontinue past or ongoing misconduct "does not justify denial of injunctive relief,

since such unilateral action hardly suffices to ensure that the party will not, in the future, reverse course and resume its challenged activities." *3M Co. v. CovCare, Inc.*, 537 F. Supp. 3d 385, 404 (E.D.N.Y. 2021) (citation omitted); *see also Flava Works*, 689 F.3d at 762 ("cessation of an unlawful practice doesn't exonerate a defendant, since unless enjoined he might resume infringing."). There is no evidence, for instance, that ChuangTuTu no longer holds an inventory of ChuangTuTu Products, has ceased procuring ChuangTuTu Products, or has lost the ability to list the ChuangTuTu Products on its Amazon storefront. There is likewise no evidence that ChuangTuTu will not assist other entities in selling the ChuangTuTu Products. Given how easily ChuangTuTu could restore its prior Amazon listings—and how easily any affiliated entity could create new ones—there is a reasonable basis to conclude that infringement may resume.

Accordingly, Bose has adequately demonstrated irreparable harm.

### C. Balance of Harms

The balance of harms supports maintenance of the preliminary injunction. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Nirvana, L.L.C. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 21-cv-01983, 2022 WL 22886568, at *2 (N.D. Ill. Mar. 1, 2022) (citing *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994)). This is because a defendant "who adopts the mark of another for similar goods acts at his own peril, since he has no claim to the

profits or advantages thereby derived." *Id.* (citing *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992)).

In opposition, ChuangTuTu asserts that the balance of harms favors dissolution because the injunction froze approximately $15,000 in assets, far more than any profits it earned. [80] ¶¶ 15–17. The Court too shares these concerns. Given that the basis for Bose's asset restraint request is disgorgement of *profits* from the ChuangTuTu Products, [13] at 12, Bose is only entitled to a restraint on profits from those products. The Court, however, can remedy this issue by modifying[6] the asset restraint. As such, the Court assigns this harm little to no weight.

In sum, while ChuangTuTu identifies harm that would befall it if the preliminary injunction were not dissolved, that harm, given the Court's remedy, is not sufficient to outweigh the harm that Bose would suffer absent the preliminary injunction.

**D. Public Interest**

Lastly, the Court finds that maintenance of the preliminary injunction serves the public interest. Bose has demonstrated a likelihood of confusion from ChuangTuTu's use of the Bose Trademark, and the Court finds that the public interest would be served by an injunction to prevent such confusion. *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000) (finding that "the public interest is served by the injunction because enforcement of the trademark laws prevents consumer

[6]ChuangTuTu submits a declaration explaining that the net proceeds on the ChuangTuTu Products after Amazon's expenses were $6,082. [91] ¶ 7. It supports this with evidence. [91-1]. ChuangTuTu also avers that it incurred an extra $2.4 per unit in manufacturing, shipping, and distribution costs. [91] ¶ 9. This is not supported by evidence. And the math doesn't add up. ChuangTuTu sold 2,881 units of ChuangTuTu Products. [91] ¶ 3. 2,881 x $2.4 is $6,914.4. This exceeds the net proceeds of $6,082 and means ChuangTuTu is losing money. The Court, thus, will modify the asset restraint to cover only $6,082.

confusion.”). ChuangTuTu’s opposition is effectively a repeat of its argument on the previous factors: it has stopped selling the ChuangTuTu Products and its use of the Bose Trademark was to indicate compatibility with certain Bose Products. Putting aside that these are more of a private harm borne by ChuangTuTu than an effect on the public interest, they are predicated on arguments that, for the reasons explained, the Court has found unpersuasive.

### III. Improper Joinder

ChuangTuTu also moves to dismiss for improper joinder. Under Rule 20, a plaintiff may join multiple defendants in a single action if (1) the claims against them are asserted “with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences,” and (2) a “question of law or fact common to all defendants” exists. Fed. R. Civ. P. 20(a)(2). When applying Rule 20, “[a] district judge necessarily has considerable discretion.” *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018).

Bose has failed to establish that its claims against ChuangTuTu arise out of the same transaction, occurrence, or series of transactions or occurrences as its claims against other defendants. Its opposition brief does not even attempt to point to specific evidence supporting joinder. [88] at 12. At best, the evidence presented establishes nothing more than separate, parallel instances of infringement by different defendants. This is insufficient. *Viking Arm AS v. P’ships & Unincorporated Ass’ns Identified on Schedule A*, No. 24-cv-1566, 2024 WL 2953105, at *1 (N.D. Ill. June 6, 2024) (“It is well established … that simply committing the same type of

violation in the same way does not link defendants together for the purpose of joinder.") (cleaned up).

The remedy for improper joinder "is severance or dismissal without prejudice." *UWM Student Ass'n*, 888 F.3d at 863. Severance is the better course here because dismissal would lift the preliminary injunction. *See Mansoori v. Patel*, No. 17-cv-08846, 2022 WL 683667, at *2 (N.D. Ill. Mar. 8, 2022) ("Even dismissal without prejudice is an improper remedy if it would result in gratuitous injury to the plaintiff.") (citation omitted).

## IV. Conclusion

For the stated reasons, ChuangTuTu's motion [78] is granted in part. The Court will not dissolve the preliminary injunction against ChuangTuTu but modifies the asset restraint to $6,082. The Court will sever the claims against ChuangTuTu's into a separate action. In doing so, Bose will be required to pay a new filing fee. The Court will transfer documents in this action to that new matter. Before issuing the severance order, however, the Court will wait to see if Bose and ChuangTuTu can resolve this matter. By 8/28/26, Bose and ChuangTuTu shall file a status report on whether this matter can be resolved prior to the Court requiring the Clerk to open a new case.

E N T E R:

Dated: August 14, 2026

Mary M Rowland

MARY M. ROWLAND
United States District Judge

*Peanuts Worldwide LLC v. Yingsheji Jiatingyongpinyouxiangongsi*, No. 21-cv-05863, Dkt. 69 (N.D. Ill. Jan. 24, 2022) (Order)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PEANUTS WORLDWIDE LLC,<br><br>Plaintiff,<br><br>v.<br><br>YINGSHEJI JIATINGYONGPINYOUXIANGONGSI, et al.,<br><br>Defendants. | ) | No. 21-cv-05863<br><br>Judge Andrea R. Wood |

## ORDER

Plaintiff's motion for entry of a preliminary injunction [33] as to Defendant Yingsheji Jiatingyongpinyouxiangongsi is granted, with the modification discussed herein. Enter Preliminary Injunction Order. Speifically, the preliminary injunction against Defendant Yingsheji Jiatingyongpinyouxiangongsi shall include a provision lifting the freeze on the funds in its Amazon account upon the deposit by Defendant Yingsheji Jiatingyongpinyouxiangongsi of $59.98, cash or certified funds, with the Clerk of Court consistent with the procedures in Fed. R. Civ. P. 67 and Local Rule 67.1. Defendant Yingsheji Jiatingyongpinyouxiangongsi's motion for leave to file document under seal [40] is granted. See the accompanying Statement for details.

## STATEMENT

Plaintiff Peanuts Worldwide LLC publishes the long running Peanuts comic strip, which features iconic characters such as Snoopy and Charlie Brown. Plaintiff has several registered trademarks and copyrights related to the Peanuts comic strip and makes available a wide array of licensed Peanuts products such as clothing, playsets, and stuffed toys. According to Plaintiff, the success of the Peanuts brand has resulted in significant counterfeiting. Thus, it has brought the present action against 197 fully interactive e-commerce stores that allegedly offer for sale and sell products using infringing and counterfeit versions of Plaintiff's registered trademarks in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), unauthorized copies of its copyrighted designs in violation of 17 U.S.C. §§ 106, 501, or both.

This Court previously entered a temporary restraining order ("TRO") against all Defendants that, among other things, froze funds held in their e-commerce accounts and prohibited them from using, reproducing, selling, and shipping products bearing any of Plaintiff's trademarks or copyrighted designs. (Dkt. No. 27.) Shortly after Plaintiff moved to convert the TRO into a preliminary injunction (Dkt. No. 33), Defendant Yingsheji Jiatingyongpinyouxiangongsi ("Yingsheji") entered an appearance and filed its opposition to the entry of a preliminary injunction against it. (Dkt. No. 41.) The Court enter the preliminary

injunction against the other Defendants on December 21, 2021. (Dkt. No. 55.) Having now fully considered the briefing and oral argument from the parties, the Court grants Plaintiff's motion for a preliminary injunction against Yingsheji as well, but with a significant limitation.

**I.**

Shortly after commencing the present action, Plaintiff filed an *ex parte* motion for a TRO. According to Plaintiff, Defendants' e-commerce stores offer for sale and sell unauthorized Peanuts products to customers in Illinois and employ various tactics to evade Plaintiff's efforts at enforcing its intellectual property rights. Plaintiff argued that it was necessary for the Court to enter the TRO without providing prior notice to Defendants because otherwise Defendants would likely try to evade liability by moving the funds in their e-commerce accounts to bank accounts outside the Court's jurisdiction. The Court granted Plaintiff's motion for a TRO and, among other things, ordered the various online marketplace platforms that host Defendants' e-commerce stores to locate the accounts and funds connected to Defendants' stores and to restrain and enjoin any transfer or disposition of the funds in those accounts.

When Plaintiff moved to convert the TRO into a preliminary injunction, Yingsheji appeared in the action to oppose entry of a preliminary injunction against it.[1] According to its opposition papers, Yingsheji is a Chinese company with three employees. It operates a store on Amazon that sells a variety of products but focuses primarily on kitchen products. According to Yingsheji, it sells only one unauthorized Peanuts product: a Halloween decoration featuring various Peanuts characters and sold under a product name that uses the "Peanuts" trademark. In a declaration submitted in support of its opposition, Yingsheji's representative, Junjie Deng, states that it has only made two sales of that product—one of which was to an account associated with the address for Plaintiff's counsel. The unauthorized Peanuts product was sold at a retail price of $29.99, meaning Yingsheji's total revenue from selling the product was $59.98. This represents a small fraction of Yingsheji's revenue from its other sales in 2021.[2]

As a result of the TRO entered against it, the balance in the account associated with Yingsheji's Amazon store has been frozen. Yingsheji asserts that this freeze has caused it substantial hardship, as it cannot pay its three employees or replenish its inventory for sales of products unrelated to Plaintiff's intellectual property. Further, it claims that the freeze of the tens of thousands of dollars in its account pales in comparison to its $59.98 in sales of the unauthorized Peanuts product. Yingsheji also states that it is no longer selling the product and has removed the listing for the product from its Amazon store. Thus, Yingsheji requests that this Court deny Plaintiff's motion for a preliminary injunction or, at minimum, lift the freeze on its account.

---

[1] In addition to Yingsheji, one other Defendant has appeared to oppose the preliminary injunction but that Defendant's opposition is not addressed here. The Court granted Plaintiff's motion for entry of a preliminary injunction as to the remaining Defendants who have not appeared in the case. (Dkt. No. 45.) The preliminary injunction entered against the non-appearing Defendants substantially mirrors the previously entered TRO. (Dkt. No. 55.)

[2] Yingsheji provides its total revenue, as well as other confidential financial information, in a sealed attachment to the declaration of its corporate representative.

Case: 1:21-cv-06663 Document #: 51 Filed: 01/26/22 Page 68 of 109 PageID #:1868

II.

A party seeking a preliminary injunction has the burden of showing: (1) a likelihood of success on the merits; (2) lack of an adequate remedy at law; and (3) irreparable harm will result if the injunction is not granted. *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). If the moving party establishes these threshold factors, the Court then balances the harm to the non-moving party if preliminary relief is granted against the harm to the moving party if relief is denied, and further considers the consequences to the public interest of granting or denying relief. *Id.* This equitable balancing process involves a "sliding scale" analysis, "weighting harm to a party by the merit of [its] case," *Cavel International, Inc. v. Madigan*, 500 F.3d 544, 547 (7th Cir. 2007), with the aim "to minimize the costs of a wrong decision," *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "The strength of the moving party's likelihood of success on the merits affects the balance of harms." *Planned Parenthood of Ind., Inc. v. Comm'r of the Ind. State Dep't of Health*, 699 F.3d 962, 972 (7th Cir. 2012).

Having already found that Plaintiff satisfied the three threshold factors in granting its motion for a TRO, the Court finds further support for that conclusion in Yingsheji's opposition to Plaintiff's preliminary injunction. Indeed, Yingsheji concedes that Plaintiff will likely succeed on its copyright infringement claim, as the Peanuts Halloween decoration it sold depicted various characters from the Peanuts comic strip. And while Yingsheji pushes back on Plaintiff's claim of trademark infringement, the Court finds that Plaintiff has shown a sufficient likelihood of success on its trademark claims as well. That is because Yingsheji advertised the unauthorized Peanuts product using the Peanuts trademark. *See, e.g.*, *Ent. One UK Ltd. v. 2012Shiliang*, 384 F. Supp. 3d 941, 949 (N.D. Ill. 2019) ("[A] protected mark need not appear ***on*** an item to render it counterfeit; rather, the Lanham Act only requires that the protected mark be used 'in connection with' the sale." (quoting 15 U.S.C. § 1114(1)(a))). Especially considering that the Peanuts trademark was used to sell an item featuring Peanuts characters, it is likely that a customer would incorrectly believe that Yingsheji was selling one of Plaintiff's products. *See Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 957 (7th Cir. 1992) (7th Cir. 1992) ("The 'keystone' of trademark infringement is 'likelihood of confusion' as to source, affiliation, connection or sponsorship of goods or services among the relevant class of customers and potential customers."). And the Seventh Circuit has recognized that trademark and copyright infringement both can cause irreparable injury for which there is no adequate legal remedy. *See, e.g.*, *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001); *Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 620 (7th Cir. 1982).

Turning to the balancing of harms, the Court finds that Yingsheji faces little harm from the preliminary injunction insofar as the injunction prohibits Yingsheji from selling or offering for sale unauthorized Peanuts products. Yingsheji has represented to this Court that it has removed the product from its store and does not intend to sell any unauthorized Peanuts product in the future. Moreover, the public interest is served by preventing Yingsheji from making future sales of unauthorized Peanuts products. While the Court finds that Plaintiff is entitled to injunctive relief against Yingsheji, it nonetheless has discretion to determine the appropriate scope of the injunction. *Russian Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 307 (7th Cir. 2010). In particular, the Court must ensure that the injunction is "broad enough to be effective" but not

"more burdensome to the defendant than necessary to accord complete relief." *CFPB v. Consumer First Legal Grp., LLC*, 6 F.4th 694, 712 (7th Cir. 2021) (internal quotation marks omitted).

Here, Yingsheji contends that the freeze on the funds in its Amazon account is extremely burdensome and not necessary to provide complete relief to Plaintiff. Although the Court "may not issue an injunction freezing assets in an action for money damages," where, as here, a suit seeks equitable relief, a restraint on assets may be proper. *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002). "To exempt assets from an asset freeze, the burden is on the party seeking relief to present documentary proof that particular assets are not the proceeds of counterfeiting activities." *Luxottica USA LLC v. The P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 14 c 9061, 2015 WL 3818622, at *5 (N.D. Ill. June 18, 2015) (internal quotation marks omitted).

The Court finds that Yingsheji has provided adequate documentary proof that all but $59.98 of the assets in its Amazon account are unrelated to the infringing activity at issue in this action. Specifically, Yingsheji has provided this Court with delaration from a corporate representative attesting to the numbers in a spreadsheet listing sales figures for all the products offered for sale by its Amazon seller account in 2021. The spreadsheet also includes pictures of the products to demonstrate that none of the other products it offered for sale infringed any of Plaintiff's trademarks or copyrights. Yingsheji's documentary evidence confirms that it made only $59.98 in sales of the unauthorized Peanuts product as opposed to the much greater sales of other, non-infringing products.

By contrast, Plaintiff has presented no evidence in support of keeping the asset freeze in place as to Yingsheji beyond that offered in support of the original TRO, which contains no information specific to Yingsheji's sales of infringing products. Plaintiff's lack of evidence is particularly notable given that the TRO entered by this Court authorized Plaintiff to conduct broad expedited discovery, including discovery concerning "the nature of Defendants' operations and all associated sales" and "a full accounting of Defendants' sales and listing history." (TRO § 2(b), Dkt. No. 27.) Whereas Yingsheji has met its burden of providing documentary proof that all but $59.98 of the funds in its Amazon account are not the proceeds of counterfeiting activity, Plaintiff offers nothing in the rebuttal. Consequently, the Court cannot conclude that leaving the asset freeze in place over the entirety of the funds in Yingsheji's account is necessary to provide Plaintiff with complete relief. Importantly, a freeze is not warranted simply to preserve sufficient funds to satisfy whatever money damages award Plaintiff might ultimately obtain from Yingsheji. *See United States v. Sriram*, 147 F. Supp. 2d 914, 948 (N.D. Ill. 2001) ("Rule 65 does not authorize an injunction to freeze assets merely because a plaintiff fears that by the time a judgment is obtained the assets will have been dissipated."). Moreover, the balance of harms from an injunction containing an asset freeze tilts overwhelmingly toward Yingsheji, as it is left without funds to pay its employees and continue its business operation.

Because an injunction containing a freeze of Yingsheji's assets is not necessary to afford Plaintiff complete relief, the Court will grant Plaintiff's motion for a preliminary injunction without the provision freezing the funds in the account associated with Yingsheji's Amazon store. Given that the $59.98 traceable to Yingsheji's infringing activity constitutes a small fraction of the funds in its account, the Court believes it will be more efficient to have Yingsheji simply

deposit that amount with the Clerk rather than to maintain a freeze over that sum in Yingsheji's account. Thus, the Court orders Yingsheji to deposit $59.98 with the Clerk.

Dated: January 24, 2021

Andrea R. Wood
United States District Judge

*Skechers U.S.A., Inc. II v. P'ships et al.*, No. 24-cv-07333, Dkt. 144 (N.D. Ill. Dec. 10, 2025) (Minute Entry)

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF NextGen 1.8 (rev. 1.8.4)**
**Eastern Division**

Skechers U.S.A., Inc. II

Plaintiff,

v.

Case No.: 1:24−cv−07333
Honorable Franklin U. Valderrama

The Partnerships and Unincorporated Associations d/b/a The Domain Names Identified on Schedule A, et al.

Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, December 10, 2025:

MINUTE entry before the Honorable Franklin U. Valderrama: This is a Schedule A trademark infringement case. On September 4, 2024, the Court entered a preliminary injunction, which included an asset restraint on Defendant's account. On November 5, 2025, Defendant filed a motion to amend the asset restraint of $62,752.69 [134], which is before the Court. Defendant argues that only one unit of the accused product was sold, totaling $45.97, and that as a result, the Court reduce the asset restraint from $62,752.69 to $45.97. In support, Defendant submits evidence of a single sale of the allegedly infringing product, totaling $45.97 in revenue. See R. 134, Ex. A. Plaintiff opposes Defendant's motion, arguing that Defendant has failed to submit sufficient evidence to demonstrate that its profit is less than the currently frozen assets. Plaintiff asks the Court to either stay the motion pending discovery or, in the alternative, deny the motion. In considering the motion, the Court must balance equities in considering whether an asset freeze continues to be warranted. See Johnson & Johnson v. Advanced Inventory Management, Inc., 2020 WL 8260381, at *2 (N.D. Ill. July 20, 2020). At this posture, the burden is on "the party seeking relief" –here, Defendant—"to present documentary proof that particular assets [are] not the proceeds of counterfeiting activities." Monster Energy Company v. Wensheng, 136 F.Supp.3d 897, 910 (N.D. Ill. 2015). In the face of unambiguous or unpersuasive evidence, courts in this jurisdiction routinely decline to modify asset restraints. See Johnson & Johnson, 2020 WL 8260381, at *3 (collecting cases). Considering the evidence presented and weighing the equities warranting the asset restraint, the Court agrees with Plaintiff that Defendant fails to submit sufficient evidence demonstrating that the asset freeze of $62,752.69 is unwarranted. Namely, Defendant submits the record of a single sale of the allegedly infringing product. But as Plaintiff points out, this evidence fails to account for any "transaction-level proof demonstrating that the universe of counterfeiting profits is less than what is currently frozen." R. 136 at 8. Indeed, the single screenshot provided by Defendant does not establish that the sale contained therein is the only sale of an allegedly infringing product. Defendant responds that it "provided to Plaintiff" sufficient evidence demonstrating that the total profit defendant received totals $45.97. R. 139 at 2-3.

However, providing documentation to Plaintiff does not equate to providing it as evidence before the Court. Nor shall the Court consider evidence submitted for the first time in Defendant's reply brief. See, e.g. Thompson v. AT&T Services, Inc., 2018 WL 4567714, at *6 (Sep. 24, 2018) (citing Bernardo v. J.D. Nicholas & Assocs., Inc., 2014 WL 4913423, at *3 (N.D. Ilk Sept. 30, 2014)). Therefore, because Defendant has not carried its evidentiary burden as to the modification of the asset restraint, the Court denies its motion without prejudice [134]. Defendant may refile its motion after the close of discovery. Plaintiff's motions to stay [136], to strike Defendant's reply [140], and for leave to file a sur-reply [141] are terminated as moot. The Court grants Plaintiff's motion for leave to file under seal [138]. Mailed notice. (jcm)

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

*Skechers U.S.A., Inc. II v. P'ships et al.*, No. 24-cv-04541, Dkt. 168 (N.D. Ill. Dec. 13, 2024) (Minute Entry)

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF NextGen 1.8 (rev. 1.8.1)**
**Eastern Division**

Skechers U.S.A., Inc. II

Plaintiff,

v.

Case No.: 1:24−cv−04541
Honorable Thomas M. Durkin

The Partnerships and Unincorporated Associations d/b/a The Domain Names Identified on Schedule A, et al.

Defendant.

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Friday, December 13, 2024:

MINUTE entry before the Honorable Thomas M. Durkin: At R. 39, the Abrahamstore Defendants move to modify the asset restraint and oppose entry of the preliminary injunction. At R. 160, additional Defendants move to vacate or modify the preliminary injunction. The Court will hold a joint hearing on these two motions. Prior to the hearing, Plaintiff is entitled to collect limited and expedited discovery relevant to the issues in these motions. By 12/20/2024, the parties shall submit a joint status report setting forth the following: 1) an agreed schedule to complete any outstanding briefing on these motions; 2) an agreed schedule to complete any discovery required in advance of the hearing; and 3) the anticipated length of the hearing. Based on the information set forth in the joint status, the Court will then set a hearing date. As described above, Plaintiff's motion at R. [158] for a stay on R. 39 to conduct discovery is granted. Mailed notice.(ecw, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

*Skechers U.S.A., Inc. II v. P'ships et al.*, No. 24-cv-00596, Dkt. 93 (N.D. Ill. June 25, 2024) (Minute Entry)

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF NextGen 1.7.1.1**
**Eastern Division**

Skechers U.S.A., Inc. II

Plaintiff,

v.

Case No.: 1:24−cv−00596
Honorable Jeremy C. Daniel

The Partnerships and Unincorporated Asociations, et al.

Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, June 25, 2024:

MINUTE entry before the Honorable Jeremy C. Daniel: Motion hearing held. The plaintiff's motion to stay defendants' motion to dismiss and to vacate or modify the preliminary injunction in order to conduct discovery [85] is granted. The following briefing schedule reflects that stay, which is intended to allow the parties to obtain any discovery necessary to respond to the pending motions [71 and 72]: the plaintiff shall respond to those motions on or before August 6, 2024; any replies are due on or before August 20, 2024. The parties are reminded that discovery has been referred to the Magistrate Judge, so they must address any discovery schedules or disputes with the Magistrate Judge. The plaintiff's motion for prejudgment asset restraint [73] is under advisement. Mailed notice(vcf, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

*Le Feuvre v. Liunian888*, No. 2:26-cv-01210, Dkt. 51 (W.D. Pa. July 13, 2026) (Motion for Admission Pro Hac Vice of Jian Wang)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

LE FEUVRE, )
Plaintiff, )
)
vs. ) Civil Action No. 2:26-cv-01210-WSS
)
LIUNIAN888 et al, )
Defendants. )

**MOTION FOR ADMISSION PRO HAC VICE OF JIAN WANG**

Jian Wang, undersigned counsel for Defendants ICECEC.COM, NOUNUO.COM, SHELERY.COM, FUNIYA.COM, VERYMOON.COM, YELLOWF.COM, AND AOXIKA.COM, hereby moves that Jian Wang be admitted to appear and practice in this Court in the above-captioned matter as counsel pro hac vice for Defendants ICECEC.COM, NOUNUO.COM, SHELERY.COM, FUNIYA.COM, VERYMOON.COM, YELLOWF.COM, AND AOXIKA.COM in the above-captioned matter pursuant to LCvR 83.2 and LCvR 83.3, LCrR 83.2 and this Court's Standing Order Regarding Pro Hac Vice Admissions dated May 31, 2006 (Misc. No. 06-151).

In support of this motion, undersigned counsel attaches the Affidavit for Admission Pro Hac Vice of Jian Wang filed herewith, which, it is averred, satisfies the requirements of the foregoing Local Rules and Standing Order.

Dated: July 13, 2026

Respectfully submitted,

_*/s/ Jian Wang*_________

Jian Wang (NY Bar ID No. 6315865)
The Law Office of X. Lyu, PLLC
3636 Prince St, Ste 309A
Flushing, NY 11354
(347) 966-1976
jwang@lyulawpllc.com
Counsel for Defendants
ICECEC.COM
NOUNUO.COM
SHELERY.COM
FUNIYA.COM
VERYMOON.COM

YELLOWF.COM and
AOXIKA.COM

**CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all registered counsel of record.

Dated: July 13, 2026

Respectfully submitted,

_*/s/ Jian Wang*________

Jian Wang (NY Bar ID No. 6315865)
The Law Office of X. Lyu, PLLC
3636 Prince St, Ste 309A
Flushing, NY 11354
(347) 966-1976
jwang@lyulawpllc.com
Counsel for Defendants

ICECEC.COM
NOUNUO.COM
SHELERY.COM
FUNIYA.COM
VERYMOON.COM
YELLOWF.COM and
AOXIKA.COM

*Anderson Design Grp., Inc. v. P'ships et al.*, No. 25-cv-11640, Dkt. 55 (N.D. Ill. Apr. 24, 2026) (Memorandum Opinion and Order)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANDERSON DESIGN GROUP, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,<br><br>Defendants. | Case No. 25-cv-11640<br><br>Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Anderson Design Group, Inc. ("Anderson Design Group") brings this action for copyright infringement. Defendants OP poster, Heartwarming Art Painting, reborn Tong, The Arts House Sc, RCposter, EJJ Decorative Painting Expert, khaki poster, JQ WallArtHaven, LJHPainting Shop, BJX Digital oil painting expert, KSF decorative painting, FFD Decorative paintings and posters, YCX PixelPalette, poster heaven, SCN decorative painting, Fantastic Wall Decoration, Bieautiful poster, and WY Digital oil painting poster (together, the "Group A Defendants") move to dismiss for misjoinder. [45].

For the reasons stated, the Court holds the Motion to Dismiss [45] in abeyance pending limited discovery as to the relationships among the Group A Defendants.

## I. Background

Anderson Design Group is the owner of United States Copyright Registration No. VA 2-429-051 (the "Anderson Design Group Work"). [1] ¶¶ 5, 10; [1-1]. Anderson

Design Group alleges that the Group A Defendants are foreign entities who sell pirated derivative works of the Anderson Design Group Work. *Id.* ¶ 20. Anderson Design Group maintains that such actions constitute copyright infringement. *Id.*

On September 25, 2025, Anderson Design Group filed this action naming 181 Defendants. [1] [2]. Since then, most Defendants have been terminated, [25] [39] [44], with only the Group A Defendants remaining.[50].

On December 10, 2025, the Group A Defendants moved to dismiss, pursuant to Rule 20(a)(2), for improper joinder.[1] [45]. Though they are represented by the same defense counsel, the Group A Defendants maintain they are "different and not affiliated to each other" and therefore forcing them to litigate in a single action together is improper. *Id.* at 4, 8.

## II. Analysis

This case presents an unusual set of facts. Ordinarily, joint representation of multiple defendants by the same defense counsel does not automatically imply coordination for purposes of joinder. But the scale here is difficult to ignore. By this Court's count, counsel for the Group A Defendants represents roughly 290 Schedule A defendants across this case and at least ten[2] other cases in this district. And in at

[1]As all other Defendants (*i.e.*, non-Group A Defendants) have been terminated from this action, the Court does not consider improper joinder with respect to those other Defendants.

[2]*Susan Florence Comish v. The P'ships et al.*, No. 25-cv-07049 (N.D. Ill. 2025); *Susan Florence Comish v. The P'ships et al.*, No. 25-cv-07393 (N.D. Ill. July 24, 2025); *Angela Isabel Porter v. The P'ships et al.*, No. 25-cv-08071 (N.D. Ill. Sept. 29, 2025); *Elaine Kay Maier v. The P'ships et al.*, No. 25-cv-07534 (N.D. Ill. 2025); *Greg Alexander v. The P'ships et al.*, No. 25-cv-07026 (N.D. Ill. Sept. 4, 2025); *Laurie Snow Hein v. the P'ships et al.*, 1:25-cv-12608 (N.D. Ill. Dec. 15, 2025); *Michele Natale d/b/a Michael*

least eight of those other cases, nearly identical motions to dismiss for misjoinder have been filed. It is highly unlikely that 290 unaffiliated defendants independently reached the same counsel and then aligned on a joint defense strategy. The more plausible explanation is that some central entity is coordinating these filings and directing counsel on behalf of those defendants.

Counsel's own admissions confirm this. In the case before Judge Durkin, counsel for the Group A Defendants acknowledged that he communicates with a "single representative" for all of the Schedule A defendants he represents in that case. *Hein*, 1:25-cv-12608, [39] at 3:16–4:3. Though no such admission has been made here, when considered alongside the lockstep conduct across the eight cases, it suggests that the Group A Defendants are also being coordinated via a central entity. That arrangement is inconsistent with the notion that the Group A Defendants are unaffiliated.

Given the unique circumstances presented, the Court believes that limited discovery into the relationships among the Group A Defendants is the most prudent course of action. If discovery reveals a relationship among all of the Group A Defendants, this case can proceed with them together. If it instead reveals coordination among distinct groups of the Group A Defendants, the Court can sever those groups into separate cases. And, of course, if the Group A Defendants' assertion

---

*Christmas Art v. The P'ships et al.*, No. 25-cv-11164 (N.D. Ill. Dec. 10, 2025); *Elan Harris v. The P'ships et al.*, No. 25-cv-12180 (N.D. Ill. Dec. 15, 2025); *Caroline Valsaint v. The P'ships et al.*, No. 25-cv-12919 (N.D. Ill. Dec. 15, 2025); *Catherine Frances Raynor v. The P'ships et al.*, No. 25-cv-11809 (N.D. Ill. Dec. 10, 2025).

that they are "not affiliated with each other" holds true, the Court can pursue other remedies.

## III. Conclusion

For the stated reasons, the Court will hold the Group A Defendants' Motion to Dismiss [45] in abeyance pending limited expedited discovery as to the relationships among the Group A Defendants. The Court grants Anderson Design Group 60 days to complete this discovery. By May 1, 2026, Anderson Design Group and the Group A Defendants shall submit a joint status report containing agreed upon dates for serving and answering written discovery and the parameters of such discovery.

E N T E R:

Dated: April 24, 2026

MARY M. ROWLAND
United States District Judge

*Elizabeth's Studio LLC v. Mianyangjiajunjianzhujixieshebeizulinyouxiangongsi*, No. 2:26-cv-01259, Dkt. 46 (W.D. Pa. July 20, 2026) (Motion to Vacate the Preliminary Injunction and to Dismiss)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ELIZABETH'S STUDIO LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>mianyangjiajunjianzhujixieshebeizulinyouxiangongsi, et al.,<br><br>*Defendants*. | Case No. 2:26-cv-01259-CCW<br><br>**Judge Christy Criswell Wiegand** |

**DEFENDANTS AOMISS.COM, LUDITU.COM, VEOWN.COM, AND VBLAX.COM'S MOTION TO VACATE THE PRELIMINARY INJUNCTION AND TO DISMISS THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND MISJOINDER**

# TABLE OF CONTENTS

**Page**


**INTRODUCTION** .......... 1

**ARGUMENT** .......... 3

I. THE CLAIMS AGAINST DEFENDANTS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION AND IMPROPER JOINDER .......... 3

A. Legal Standard .......... 3

B. Plaintiff Fails to Establish Personal Jurisdiction Over Defendants .......... 4

C. Defendants Are Improperly Joined with Other Named Defendants .......... 7

II. THE JURISDICTION-RELATED ALLEGATION OFFERED BY PLAINTIFF WARRANTS LIMITED DISCOVERY .......... 8

III. THE PRELIMINARY INJUNCTION SHOULD BE VACATED .......... 10

A. Legal Standard .......... 10

B. The Court Lacks Personal Jurisdiction Rendering the Injunction Void .......... 10

C. Plaintiff Fails to Establish Irreparable Harm .......... 11

**CONCLUSION** .......... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Control Screening LLC v. Tech. Application & Prod. Co. (Tecapro), HCMC-Vietnam*, 687 F.3d 163 (3d Cir. 2012) .......... 11

*D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94 (3d Cir. 2009) .......... 5

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006) .......... 12

*Estee Lauder Cosms. Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 334 F.R.D. 182 (N.D. Ill. 2020) .......... 7

*Flipside Wallets LLC v. Brafman Group, Inc.*, No. 19-5356, 2020 WL 1330742 (E.D. Pa. Mar. 19, 2020) .......... 5

*Forcel Media Limited v. DecYI, et al.*, No. 2:25-cv-750, 2025 WL 1665586 (W.D. Pa. June 12, 2025) .......... 6, 7, 8

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021) .......... 3

*Guidecraft, Inc. v. OJCommerce, LLC*, 2019 WL 2373440 (W.D. Pa. May 20, 2019) .......... 5

*Malibu Media, LLC v. Surgent*, No. 12-3905, 2013 WL 1704289 (D.N.J. Apr. 19, 2013) .......... 8

*Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026 (3d Cir.1997) .......... 9

*Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217 (3d Cir.1992) .......... 9

*Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324 (3d Cir.2009) .......... 9

*Nifty Home Prods., Inc. v. Ladynana US*, No. 23-1332, 2024 WL 4987245 (3d Cir. 2024) .......... 5

*O'Connor v. Sandy Lane Hotel*, 496 F.3d 312 (3d Cir. 2007) .......... 3

*Philip Morris USA Inc. v. Scott*, 561 U.S. 1301 (2010) .......... 11

*Pinker v. Roche Holdings Ltd.*, 292 F.3d 361 (3d Cir.2002) .......... 9

*Ramsay v. Nat'l Bd. Of Med. Exam'rs*,
968 F.3d 251 (3d Cir. 2020) .......... 10

*Sampson v. Murray*,
415 U.S. 61 (1974) .......... 11

*TD Bank N.A. v. Hill*,
928 F.3d 259 (3d Cir. 2019) .......... 12, 13

*Toys "R" Us, Inc. v. Step Two, S.A.*,
318 F.3d 446 (3d Cir. 2003) .......... 4, 5, 8, 9

*Viking Arm AS v. P'hips & Unincorporated Ass'ns Identified on Schedule A*,
No. 24-1566, 2024 WL 2953105 (N.D. Ill. June 6, 2024) .......... 7

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .......... 10, 11

*Xie v. GUANHE Home Essentials*,
No. 2:25-CV-00265, 2025 WL 1039233 (W.D. Pa. Apr. 8, 2025) .......... 4, 5, 10, 11

**Statutes**

17 U.S.C. § 504 .......... 13

**Other Authorities**

Federal Rule of Civil Procedure 11(b)(3) .......... 2, 10

Federal Rule of Civil Procedure 12(b)(2) .......... 1, 13

Federal Rule of Civil Procedure 20(a)(2) .......... 7

Federal Rule of Civil Procedure 21 .......... 7

## INTRODUCTION

Defendants AOMISS.COM, LUDITU.COM, VEOWN.COM, and VBLAX.COM (collectively, "Defendants") respectfully move to dismiss the claims against them for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and to vacate the Preliminary Injunction entered against them. In the alternative, Defendants request that the Court find them improperly joined with the remaining defendants and sever the claims against them or drop them from this action pursuant to Rules 20 and 21.

This action rests on a Pennsylvania transaction that, according to Defendants' complete business records, never occurred. Plaintiff alleges that Defendants accepted an order from its representative at a Pennsylvania address, were willing to ship the accused product to Pennsylvania, and were willing to collect Pennsylvania sales tax. Dkt. 1 ¶ 3. That allegation supplies the principal asserted basis for personal jurisdiction and was used to obtain extraordinary injunctive relief against foreign defendants. Yet Defendants' Shoplazza order, payment, fulfillment, and shipping records contain no Pennsylvania order, no Pennsylvania purchaser, no payment associated with a Pennsylvania address, and no shipment or delivery to Pennsylvania. Declaration of Xinyu Zou ("Zou Decl.") ¶¶ 13–18, 60.

The actual records tell a materially different story. Each of the three accused listings generated only one order: three orders placed on the same date by the same purported purchaser, using the same Chicago, Illinois address. None was fulfilled or shipped, and Defendants' records show no other United States order for any Accused Product. *Id.* ¶¶ 19–51; Exs. 2-5. Plaintiff's purported Pennsylvania test-purchase exhibit does not show a completed transaction. It consists only of a public product page and a checkout screen into which someone entered a Pennsylvania address; it contains no order number, payment confirmation, tax receipt, shipping record, tracking

number, or proof of delivery. *Id.* ¶¶ 53–61; Ex. 6. The evidence therefore strongly indicates that the purported Pennsylvania transaction was simulated by entering forum information into a checkout page without completing an actual purchase.

These facts defeat personal jurisdiction. Defendants did not target Pennsylvania, knowingly transact with a Pennsylvania resident, or sell, fulfill, ship, or deliver an Accused Product into the forum. The unilateral entry of a Pennsylvania address by Plaintiff or its agent cannot manufacture the minimum contacts that due process requires. Nor may Plaintiff aggregate Defendants with numerous unrelated online sellers. Defendants share no ownership, accounts, personnel, inventory, business operations, or coordinated conduct with the remaining defendants. Zou Decl. ¶¶ 2-6, 63-74.

If the Court does not dismiss the claims on the present record, narrowly tailored jurisdictional discovery is necessary to determine whether Plaintiff's asserted test purchase ever existed. Plaintiff should be required to produce the complete order confirmation, payment record, sales-tax calculation, purchaser information, shipping and fulfillment records, tracking information, proof of delivery, and communications concerning the purported transaction. That discovery will resolve the jurisdictional issue and determine whether Plaintiff had evidentiary support for the allegations in Paragraph 3 when the Complaint was filed. If no completed transaction or delivery record exists, the Court may then consider whether Plaintiff's allegations violated Rule 11(b)(3) or warrant other appropriate sanctions.

The Preliminary Injunction independently cannot stand because Plaintiff has not shown likely irreparable harm. Defendants made no completed sale of an Accused Product to an ordinary consumer, shipped no product into Pennsylvania, and engaged in no continuing course of completed sales. Zou Decl. ¶¶ 42-51. Plaintiff identifies no lost customer, licensing opportunity,

market injury, reputational damage, or other imminent injury that could not be remedied through monetary relief. Because Plaintiff cannot establish personal jurisdiction, proper joinder, or likely irreparable harm, the Court should dismiss the claims against Defendants and vacate the Preliminary Injunction.

## ARGUMENT

### I. THE CLAIMS AGAINST DEFENDANTS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION AND IMPROPER JOINDER

#### A. Legal Standard

Under the due process clause of the United States Constitution, a court may have personal jurisdiction over a nonresident defendant if (i) the defendant has certain "minimum contacts" with the forum state, and (ii) the exercise of personal jurisdiction would not "offend traditional notions of fair play and substantial justice." *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358-59 (2021) (internal quotations and citations omitted). This inquiry focuses on the "nature and extent of a defendant's relationship to the forum State," which has led to the recognition of two types of personal jurisdiction—general ("all-purpose") jurisdiction, and specific ("case-linked") jurisdiction. *Id.*

Plaintiff recognizes that Defendants "reside in the People's Republic of China or other foreign jurisdictions." Dkt. 1 ¶ 31. The only issue at dispute here concerns specific personal jurisdiction.

In the Third Circuit, the courts will have specific jurisdiction, if (i) the defendant "purposefully directed its activities at the forum," (ii) the litigation "arises out of or relates to" those activities, and (iii) the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel*, 496 F.3d 312, 317 (3d Cir. 2007). In the context of e-commerce, "the mere operation of a commercially interactive web" is

insufficient to establish minimum contacts and therefore personal jurisdiction. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003). Plaintiff must show that the defendant purposefully availed itself of the privilege of conducing activities within the forum state "by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Xie v. GUANHE Home Essentials*, No. 2:25-CV-00265, 2025 WL 1039233, at *2 (W.D. Pa. Apr. 8, 2025) (internal quotations and citations omitted).

**B. Plaintiff Fails to Establish Personal Jurisdiction Over Defendants**

Plaintiff fails to establish personal jurisdiction because it relies on conclusory allegations of purposeful availment without any supporting evidence. The relevant allegation provides:

> "Personal jurisdiction over each Defendant satisfies constitutional due process because each Defendant has purposefully directed and expressly aimed its tortious activities at the Commonwealth of Pennsylvania and established sufficient minimum contacts with Pennsylvania by, among other things, be willing to accept an order for a product bearing Plaintiff's copyrighted designs from a representative of Plaintiff with a Pennsylvania address, be willing to ship the product to that representative in Pennsylvania, and be willing to collecting Pennsylvania sales tax. In addition, upon information and belief, each Defendant has sold additional products bearing Plaintiff's copyrighted designs to consumers within Pennsylvania not affiliated in any way with Plaintiff through the regular course of business, with the knowledge that Plaintiff is harmed in Pennsylvania as a result of its sales of infringing products to Pennsylvania residents. Plaintiff's claims arise out of and relate to Defendants' sales of infringing products bearing Plaintiff's copyrighted designs to Pennsylvania residents through the regular course of business."

Dkt. 1 ¶ 3.

These allegations fail to demonstrate any purposeful availment by Defendants. As a threshold matter, the mere maintenance of a commercial website—even one accessible to Pennsylvania residents—is insufficient to establish personal jurisdiction. As the court explained, "[t]he operation of an online storefront from which Pennsylvania residents can make purchases, if they so choose—standing alone—is insufficient to establish minimum contacts with Pennsylvania."

*Xie*, 2025 WL 1039233, at *4.

This conclusion is consistent with well-established precedent. *See Flipside Wallets LLC v. Brafman Group, Inc.*, No. 19-5356, 2020 WL 1330742, at *3 (E.D. Pa. Mar. 19, 2020) ("Even if [the defendant] knew or should have known that its products would end up in Pennsylvania through Amazon sales, that expectation is insufficient to establish specific jurisdiction."); *Guidecraft, Inc. v. OJCommerce, LLC*, 2019 WL 2373440, at *5 (W.D. Pa. May 20, 2019) (explaining that businesses using Amazon "glean customers thousands of miles away" but that "such reach does not meet the definition of purposeful availment as interpreted by the Third Circuit, and neither does it satisfy the fairness inquiry"); *see also D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) ("General allegations regarding the product's presence in the forum state, without evidence of deliberate targeting of the forum, were insufficient.").

Moreover, Plaintiff's reliance on a test purchase to show that Defendants' accused products were delivered into the forum state is likewise insufficient to establish personal jurisdiction. Even if Plaintiff alleges that each Defendant has been "willing to accept an order for a product bearing Plaintiff's copyrighted designs from a representative of Plaintiff with a Pennsylvania address, be willing to ship the product to that representative in Pennsylvania, and be willing to collecting Pennsylvania sales tax" Dkt. 1 ¶ 3, such allegations do not establish purposeful availment.

Courts have consistently held that jurisdiction cannot be created through unilateral, litigation-driven contacts initiated by the plaintiff. *See Nifty Home Prods., Inc. v. Ladynana US*, No. 23-1332, 2024 WL 4987245, at *3 (3d Cir. 2024) (single sales into the forum set up by plaintiff insufficient to establish purposeful availment); *Toys "R" Us, Inc.*, 318 F.3d at 454–55 (two sales orchestrated by the plaintiff insufficient to establish personal jurisdiction because these two sales "appear to be the kind of 'fortuitous,' 'random,' and 'attenuated' contacts that the Supreme Court

has held insufficient to warrant the exercise of jurisdiction"); *Forcel Media Limited v. DecYI, et al.*, No. 2:25-cv-750, 2025 WL 1665586, at *2 (W.D. Pa. June 12, 2025) ("If Forcel or its counsel or agents simply ordered these products to create personal jurisdiction, that doesn't work.").

Most importantly, Defendants have never sold, fulfilled, shipped, or delivered any Accused Product to Pennsylvania. Zou Decl. ¶¶ 13–18, 48. The complete Shoplazza records show only one order for each accused listing: a $29.03 order through aomiss.com, a $41.98 order through luditu.com, a $66.98 order through veown.com, and a $75.98 order through vblax.com. *Id.* ¶¶ 19–40; Exs. 2–5. The orders were placed between April 24 and April 28, 2026; two were never fulfilled, and the other two were shipped exclusively to Illinois. *Id.* ¶¶ 42–48. Other than those four orders, Defendants' records show no other United States order for any Accused Product. *Id.* ¶ 49. These records negate Plaintiff's allegation that Defendants sold accused products to Pennsylvania residents or otherwise directed the accused conduct toward Pennsylvania.

Plaintiff's purported test-purchase exhibit does not establish otherwise. Plaintiff's test-purchase exhibit shows only a public product page and a checkout screen into which someone entered a Pennsylvania address; it contains no completed order number, payment confirmation, fulfillment record, shipping confirmation, tracking number, carrier record, or proof of delivery. *Id.* ¶¶ 53-56; Ex 6. Defendants' actual backend records contain no corresponding Pennsylvania order. Zou Decl. ¶¶ 60. A visitor's unilateral entry of a Pennsylvania address into a checkout form—without completing a purchase or generating an order—cannot constitute conduct purposefully directed by Defendants toward Pennsylvania. At most, it demonstrates that Plaintiff or its agent accessed a generally available website and entered forum information of its own choosing.

Accordingly, Plaintiff has not carried its burden of establishing a *prima facie* basis for specific personal jurisdiction. The availability of Defendants' websites in Pennsylvania, combined

with a simulated checkout page and no completed Pennsylvania transaction, does not demonstrate purposeful availment. Because Defendants have no suit-related contact with Pennsylvania, the Complaint should be dismissed as to Defendants for lack of personal jurisdiction.

**C. Defendants Are Improperly Joined with Other Named Defendants**

Defendants should also be dismissed for improper joinder. Rule 20(a)(2) permits joinder of defendants only where the claims arise out of the same transaction, occurrence, or series of transactions or occurrences, and where a question of law or fact common to all defendants will arise in the action. Fed. R. Civ. P. 20(a)(2); *Viking Arm AS v. P'hips & Unincorporated Ass'ns Identified on Schedule A*, No. 24-1566, 2024 WL 2953105, at *1 (N.D. Ill. June 6, 2024) ("It is well established … that 'simply committing the same type of violation in the same way does not link defendants together for the purpose of joinder.'"). And under Rule 21, a court may, on just terms, add or drop a party at any time. Fed. R. Civ. P. 21.

This Court addressing Schedule A-style cases have consistently rejected attempts to join numerous unrelated defendants based solely on allegations that they independently infringed the same intellectual property. As the court explained in *Forcel Media Limited*, "it is not enough for a plaintiff to simply allege that multiple defendants have infringed the same patent or trademark to meet Rule 20's requirements," because "absent some sort of connection among the defendants, one defendant's alleged infringement does not arise out of the same transaction, occurrence, or series of transactions or occurrences as another defendant's unrelated infringement." 2025 WL 1665586, at *2-3 (quoting *Estee Lauder Cosms. Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 334 F.R.D. 182, 187 (N.D. Ill. 2020)).

Here, Plaintiff alleges no facts suggesting any relationship, coordination, or concerted activity among Defendants and the other named defendants. *See* Dkt. 1 ¶¶ 5, 18. There is no

allegation that Defendants shares suppliers, distribution channels, ownership, control, or any other nexus with any co-defendant. Zou Decl. ¶¶ 63-74. Instead, Plaintiff relies solely on the assertion that numerous unrelated parties allegedly sold similar products through the same online marketplace. That is precisely the type of "unrelated infringement" that courts have held insufficient to support joinder.

In view of this standard, and expressly relying on Judge Ranjan's holding in *Forcel Media*, the District Court should conclude that allowing joinder of "one hundred and fifty-three seemingly unrelated Defendants" in Schedule A-style cases "would undermine judicial economy, [is] not in the interest of justice, and [would] hamper[] the Court's ability to conduct meaningful review of the merits of the case." *Forcel Media*, 2025 WL 1665586, at *4. Moreover, "[e]ven where joinder is permissible under Rule 20, a court may exercise its discretion to sever or drop defendants if it concludes that doing so would further the interests of judicial economy without prejudice to any party." *Id*. (quoting *Malibu Media, LLC v. Surgent*, No. 12-3905, 2013 WL 1704289, at *2 (D.N.J. Apr. 19, 2013)).

In short, Plaintiff's attempt to aggregate dozens of unrelated defendants into a single action is a procedural shortcut that the Federal Rules do not permit. Defendants stand alone, accused of independent conduct with no connection to any co-defendant. Rule 20 requires more than similarity—it requires a shared transaction or occurrence, which is plainly absent here. Accordingly, Defendants is improperly joined and should be dismissed from this action.

## II. THE JURISDICTION-RELATED ALLEGATION OFFERED BY PLAINTIFF WARRANTS LIMITED DISCOVERY

While a plaintiff shoulders the burden of demonstrating sufficient jurisdictional facts, "courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" *Toys "R" Us*, 318 F.3d at 456 (quoting *Mass. Sch. of Law at Andover, Inc. v.*

*Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir.1997)). "[It] is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." *Id*. at 457 (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir.2002)). "If a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the parties] and the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained." *Id*. at 456 (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir.1992)). Jurisdictional discovery is "particularly appropriate where the defendant is a corporation." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir.2009). A court must determine whether certain discovery avenues, "if explored, might provide the 'something more' needed" to establish personal jurisdiction. *Toys "R" Us*, 318 F.3d at 456.

The Court should permit limited jurisdictional discovery concerning Plaintiff's purported Pennsylvania test purchase. Plaintiff expressly alleges that Defendants were "willing to accept an order for a product bearing Plaintiff's copyrighted designs from a representative of Plaintiff with a Pennsylvania address, be willing to ship the product to that representative in Pennsylvania, and be willing to collect[] Pennsylvania sales tax." Dkt. 1 ¶ 3. Defendants' backend records directly contradict that allegation: they reflect no Pennsylvania order, payment, shipment, or delivery. Zou Decl. ¶¶ 13-18, 48-61. Limited discovery should therefore require Plaintiff to produce the complete transaction record, including the order confirmation, payment receipt, sales-tax calculation, fulfillment and shipping records, tracking number, proof of delivery, purchaser identity, and communications concerning the purported test purchase.

That discovery is necessary not only to resolve the jurisdictional dispute, but also to determine whether Plaintiff possessed evidentiary support for its factual allegations when it filed

the Complaint. A publicly accessible checkout page into which a Pennsylvania address was entered does not establish that Defendants accepted an order, collected payment or sales tax, shipped a product, or completed a Pennsylvania transaction. If Plaintiff cannot produce an actual order record, payment confirmation, tracking information, or proof of delivery, its allegation in Paragraph 3 may lack the evidentiary support required by Rule 11(b)(3). Any such finding could warrant separate proceedings under Rule 11 and, to the extent the allegation was repeated in sworn testimony, may also raise concerns regarding false sworn statements. The Court should therefore authorize narrowly tailored jurisdictional discovery limited to the existence, authenticity, and completion of the purported Pennsylvania test purchase.

## III. THE PRELIMINARY INJUNCTION SHOULD BE VACATED

### A. Legal Standard

"A plaintiff seeking a preliminary injunction must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Id.* at 24 (citation omitted). The Supreme Court has made clear that such relief "may only be awarded upon a clear showing" that the plaintiff is entitled to it. *Id.* at 22.

### B. The Court Lacks Personal Jurisdiction Rendering the Injunction Void

As to the grant of preliminary injunction, "a sufficient degree of success for a strong showing exists if there is a reasonable chance or probability[] of winning." *Xie*, 2025 WL 1039233, at *2 (quoting *Ramsay v. Nat'l Bd. Of Med. Exam'rs*, 968 F.3d 251, 256 (3d Cir. 2020)). "Because Plaintiff will ultimately have to establish personal jurisdiction by a preponderance of the evidence,

the precise question before the Court now is whether Plaintiff has established 'a reasonable probability' that [Plaintiff] will be able to establish personal jurisdiction by a preponderance of the evidence." *Xie*, 2025 WL 1039233, at *2 (citing *Control Screening LLC v. Tech. Application & Prod. Co. (Tecapro), HCMC-Vietnam*, 687 F.3d 163, 167 (3d Cir. 2012)).

As personal jurisdiction does not exist over Defendants, any injunction entered against them cannot stand. It is well established that a court must have personal jurisdiction over a defendant before it may impose binding injunctive relief, and the absence of such jurisdiction renders any order void as to that party. Here, for the reasons set forth above, Plaintiff cannot demonstrate even a reasonable probability—let alone by a preponderance of the evidence—that personal jurisdiction exists over Defendants. Without this threshold showing, Plaintiff necessarily fails to establish a likelihood of success on the merits, which is a prerequisite to preliminary injunctive relief.

Accordingly, the Preliminary Injunction as applied to Defendants is legally unsustainable and must be vacated.

### C. Plaintiff Fails to Establish Irreparable Harm

Plaintiff bears the burden of showing that irreparable injury is likely absent injunctive relief. "Plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 24. Speculative or theoretical injury is insufficient. "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). Likewise, "[n]ormally the mere payment of money is not considered irreparable" because "money can usually be recovered from the person to whom it is paid." *Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1304 (2010).

In *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006), the Supreme Court rejected categorical rules that automatically grant injunctions upon a finding of copyright infringement and reaffirmed that courts must apply traditional equitable principles. *Id.* at 392–93. Indeed, the Third Circuit has recognized that, "after *eBay*, irreparable harm can no longer be presumed based on continued infringement and a likelihood of success on the merits." *TD Bank N.A. v. Hill*, 928 F.3d 259, 280 (3d Cir. 2019). The Third Circuit has held that "*eBay* abrogates our presumption of irreparable harm in copyright cases. The Copyright Act does not direct courts to depart from traditional principles of equity in adjudicating requests for injunctive relief…" *Id.* at 279.

Therefore, Plaintiff's bare allegation of copyright infringement, without concrete evidence of resulting harm, cannot satisfy its burden. The Third Circuit has made clear that irreparable harm in copyright cases "must be prove[n], not presumed," and that "[a] bare violation of a statutory right enshrined in the Copyright Act does not establish irreparable harm." *Id.* at 279–80. Plaintiff must instead demonstrate that the challenged conduct is likely to cause an injury that is both imminent and incapable of adequate compensation through monetary relief. *Id.*

Plaintiff cannot make that showing here. Defendants' complete Shoplazza records establish that no Accused Product was ever ordered, sold, fulfilled, shipped, or delivered to Pennsylvania. Zou Decl. ¶¶ 13–18, 48. Each accused listing generated only one order: three orders placed on the same date by the same purported purchaser using the same Illinois address. *Id.* ¶¶ 19-49. None of those orders was fulfilled, shipped, or delivered, and Defendants' records show no other United States order for any Accused Product. *Id.* ¶ 49. Plaintiff therefore identifies no dissemination of an Accused Product to an ordinary consumer, no lost sale or licensing opportunity, no damage to the market for the copyrighted work, no reputational injury, and no ongoing course of completed sales.

Nor does Plaintiff's purported Pennsylvania test-purchase exhibit establish irreparable

harm. The exhibit shows only a publicly accessible product page and a checkout screen into which someone entered a Pennsylvania address. Zou Decl. ¶¶ 53–46; Ex. 6. It contains no completed order number, payment confirmation, fulfillment record, shipping confirmation, tracking number, carrier record, or proof of delivery. Zou Decl. ¶¶ 57-58. Defendants' backend records contain no corresponding Pennsylvania transaction. *Id.* ¶ 60. Merely entering an address into a checkout form does not demonstrate that a sale occurred, that an accused product entered the marketplace, or that Plaintiff suffered any actual or threatened injury.

Any cognizable economic loss attributable to the accused listings would, in any event, be compensable through the remedies provided by the Copyright Act. *See* 17 U.S.C. § 504. As the Third Circuit explained, "the availability of adequate monetary damages belies a claim of irreparable injury." *TD Bank*, 928 F.3d at 281 (citation omitted). Plaintiff cannot preserve an extraordinary preliminary injunction by invoking infringement in the abstract while offering no evidence that Defendants' conduct caused, or is likely to cause, any noncompensable injury.

Accordingly, Plaintiff has failed to demonstrate that irreparable harm is likely absent continued injunctive relief. Because irreparable harm is an indispensable prerequisite to a preliminary injunction, the Preliminary Injunction should be vacated as to Defendants.

## **CONCLUSION**

For the foregoing reasons, Defendants AOMISS.COM, LUDITU.COM, VEOWN.COM, AND VBLAX.COM respectfully request that the Court dismiss the claims against them for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Alternatively, Defendants request that the Court find them improperly joined with the remaining defendants and sever the claims against them or drop them from this action pursuant to Rules 20 and 21.

Defendants further request that the Court vacate the Preliminary Injunction as applied to

them because Plaintiff cannot establish personal jurisdiction, a likelihood of success on the merits, or likely irreparable harm.

Should the Court determine that the present record does not permit immediate dismissal, Defendants request narrowly tailored jurisdictional discovery concerning the existence, authenticity, payment, fulfillment, shipment, and alleged delivery of Plaintiff's purported Pennsylvania test purchase, together with such other and further relief as the Court deems just and proper.

Dated: July 20, 2026.

**THE LAW OFFICE OF X. LYU, PLLC**

By: */s/ Jian Wang*
Jian Wang, NYSBA No. 6315865
36-36 Prince St., Ste 309A
Flushing, New York 11354
Phone: (212) 812-8253
Email: jwang@lyulawpllc.com
*PRO HAC VICE*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 20, 2026, the foregoing document was filed electronically with the Clerk of the Court for the United States District Court for the Western District of Pennsylvania using the Court's Electronic Case Filing System, which will send notification to all attorneys of record in this case.

I certify that all parties in this case are represented by counsel who are CM/ECF participants.

By: */s/ Jian Wang*
Jian Wang

*Friend v. P'ships et al.*, No. 26-cv-05581, Dkt. 110 (N.D. Ill. Nov. 10, 2026) (Order)

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ALISON FRIEND,

Plaintiff,

v.

THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

Defendants.

Case No.: 1:26-cv-05581

Judge Charles P. Kocoras

Magistrate Judge Beth W. Jantz

**ORDER**

Consistent with the Court's October 22, 2026 order [103] (the "Order") in Case No. 26-cv-5581, the Clerk of Court is directed to open a new case entitled Alison Friend v. aomiss.com.

1. The claims against Defendant No. 22 aomiss.com are severed under Fed. R. Civ. P. 21. They are not dismissed or dropped. The severed action, *Alison Friend v. aomiss.com*, is a continuation of this action as to aomiss.com, is deemed commenced on May 14, 2026, and shall proceed before this Court and Magistrate Judge Jantz as a related case. Plaintiff's claims against aomiss.com remain pending without interruption.

2. The Clerk shall docket in the severed action copies of the following filings from this action: the Complaint [1] and Schedule A [2]; the Temporary Restraining Order [18] and the Order Extending the Temporary Restraining Order [27]; the Surety Bond [22]; Plaintiff's Motion for Preliminary Injunction and supporting memorandum [28], [29]; the attorney appearances for aomiss.com [42], [43]; aomiss.com's motion for leave to file its opposition [44] and the minute entries at [46] and [47]; aomiss.com's Response [49] and the Declaration of Xinyu Zou and its exhibits [50]; Plaintiff's Reply and its exhibits [68]; the Court's Order [103]; and the Preliminary

Injunction Order [108]. All other filings in this action concerning aomiss.com will be deemed part of the record of the severed action.

3. The preliminary injunction as to aomiss.com [108], including the asset restraint of $38.48, and the bond posted by Plaintiff [22] will remain in full force and effect in the severed action until further order of the Court, and severance would not constitute a final disposition of Plaintiff's claims against aomiss.com. Plaintiff's ability to move to modify the asset restraint, should discovery uncover additional profits, will likewise carry into the severed action.

5. Payment of the filing fee is an administrative step in opening the severed docket and is not a condition of the continued pendency of Plaintiff's claims or of the orders identified above. Within seven (7) days after the Clerk assigns a case number to the severed action, Plaintiff will pay the filing fee and file in that action an amended complaint limited to her claims against aomiss.com. The amended complaint would relate back to May 14, 2026, however, Plaintiff should effect service consistent with the holding in *Kangol LLC v. Hangzhou Chuanyue Silk Imp. & Exp. Co.*, 177 F.4th 793, 800–02 (7th Cir. 2026). Defendant aomiss.com would answer or otherwise respond within the time provided by Federal Rule of Civil Procedure 15(a)(3).

6. Upon the docketing of the severed action and of the filings identified in Paragraph 2, the Clerk shall terminate aomiss.com as a party to this action.

It is so ordered.

ENTERED:

Charles P. Kocoras

Charles P. Kocoras
United States District Judge

November 10, 2026